**Fill in this information to identify your case:**

| Debtor 1 | RODNEY FAMA | | |
|---|---|---|---|
| | First Name | Middle Name | Last Name |
| Debtor 2 | | | |
| (Spouse, if filing) | First Name | Middle Name | Last Name |

United States Bankruptcy Court for the: DISTRICT OF NEW JERSEY

(State)

Case number 20-12070
(If known)

**FILED**

JEANNE A. NAUGHTON, CLERK

APR 15 2020

U.S. BANKRUPTCY COURT
TRENTON, NJ

BY _____ DEPUTY

## Official Form 427

### Cover Sheet for Reaffirmation Agreement

12/15

Anyone who is a party to a reaffirmation agreement may fill out and file this form. Fill it out completely, attach it to the reaffirmation agreement, and file the documents within the time set under Bankruptcy Rule 4008.

| Part 1: | Explain the Repayment Terms of the Reaffirmation Agreement |
|---|---|

**1. Who is the creditor?**

Snap-on Credit

Name of the creditor

**2. How much is the debt?**

On the date that the bankruptcy case is filed $7226.40

To be paid under the reaffirmation agreement $7226.40

$48.09 per week until paid in full

**3. What is the Annual Percentage Rate (APR) of interest? (See Bankruptcy Code § 524(k)(3)(E).)**

Before the bankruptcy case was filed 19.80%

Under the reaffirmation agreement 19.80%

☒ Fixed rate
☐ Adjustable rate

**4. Does collateral secure the debt?**

☐ No
☒ Yes. Describe the collateral. ___ Tools of Trade

Current market value $_____

**5. Does the creditor assert that the debt is nondischargeable?**

☒ No
☐ Yes. Attach an explanation of the nature of the debt and the basis for contending that the debt is nondischargeable.

**6. Using information from Schedule I: Your Income (Official Form 106I) and Schedule J: Your Expenses (Official Form 106J), fill in the amounts.**

| | Income and expenses reported on Schedules I and J | | Income and expenses stated on the reaffirmation agreement | |
|---|---|---|---|---|
| 6a. Combined monthly income from line 12 of Schedule I | $7,359.86 | 6e. Monthly income from all sources after payroll deductions | $7,359.86 |
| 6b. Monthly expenses from line 22c of line 12 of Schedule J | -$8407.89 | 6f. Monthly expenses | -$8407.89 |
| 6c. Monthly payments on all reaffirmed debts not listed on Schedule J | -$ 0 | 6g. Monthly payments on all reaffirmed debts not included in monthly expenses | -$ 0 |
| 6d. Scheduled net monthly income Subtract lines 6b and 6c from 6a. If the total is less than 0, put the number in brackets | (-$1048.03) | 6h. Present net monthly income Subtract lines 6f and 6g from 6e. If the total is less than 0, put the number in brackets | (-$1048.03) |

Debtor 1   RODNEY FAMA
          First Name   Middle Name   Last Name

Case number *(if known)* 20-12070

**7. Are the income amounts on lines 6a and 6e different?**

☑ No
☐ Yes. Explain why they are different and complete line 10.

**8. Are the expense amounts on lines 6b and 6f different?**

☑ No
☐ Yes. Explain why they are different and complete line 10.

**9. Is the net monthly income in line 6h less than 0?**

☐ No
☑ Yes. A presumption of hardship arises (unless the creditor is a credit union).
Explain how the debtor will make monthly payments on the reaffirmed debt and pay other living expenses
Complete line 10.

Will cut back on other expenses

**10. Debtor's certification about lines 7-9**

If any answer on lines 7-9 is Yes, the debtor must sign here.

If all the answers on lines 7-9 are No, go to line 11.

I certify that each explanation on lines 7-9 is true and correct.

X _Rodney Fama_                    X _____
Signature of Debtor 1                Signature of Debtor 2 (Spouse Only in a Joint Case)

**11. Did an attorney represent the debtor in negotiating the reaffirmation agreement?**

☐ No
☑ Yes. Has the attorney executed a declaration or an affidavit to support the reaffirmation agreement?
    ☑ No
    ☐ Yes

---

| Part 2: | Sign Here |
|---------|-----------|

Whoever fills out this form must sign here.

I certify that the attached agreement is a true and correct copy of the reaffirmation agreement between the parties identified on this *Cover Sheet for Reaffirmation Agreement.*

X _Heather Petro_                    Date 4/8/2020
Signature                                MM / DD / YYYY

_Heather Petro_
Printed Name

Check one:

☐ Debtor or Debtor's Attorney
☑ Creditor or Creditor's Attorney

B2400A/B ALT (Form 2400A/B/ ALT) (12/15)

☑ **Presumption of Undue Hardship**
☐ **No presumption of Undue Hardship**
(Check box as directed in Part D: Debtor's Statement
in Support of Reaffirmation Agreement.)

## United States Bankruptcy Court
### DISTRICT OF NEW JERSEY

In re: <u>RODNEY FAMA</u>
      Debtor

Case No.  <u>20-12070</u>
Chapter  <u>7</u>

## REAFFIRMATION AGREEMENT

*[Indicate all documents included in this filing by checking each applicable box.]*

☒ Part A:  Disclosures, Instructions, and
    Notice to Debtor (Pages 1-5)
☒ Part B:  Reaffirmation Agreement
☒ Part C:  Certification by Debtor's
    Attorney

☒ Part D:  Debtor's Statement in Support of
    Reaffirmation Agreement
☒ Part E:  Motion for Court Approval

*[**Note**: Complete Part E only if the debtor was not represented by an attorney during the course of negotiating this agreement. **Note also**: If you complete Part E, you must prepare and file Form 2400C ALT – Order on Reaffirmation Agreement.]*

**Name of Creditor:** <u>Snap-on Credit LLC Account Number 1620</u>

☐ *[Check this box if]* Creditor is a Credit Union as defined in §19(b)(1)(a)(iv) of the Federal Reserve Act

## PART A: DISCLOSURE STATEMENT, INSTRUCTIONS AND NOTICE TO DEBTOR

### 1. DISCLOSURE STATEMENT

*Before Agreeing to Reaffirm a Debt, Review These Important Disclosures:*

### SUMMARY OF REAFFIRMATION AGREEMENT
This summary is made pursuant to the requirements of the Bankruptcy Code.

### AMOUNT REAFFIRMED

    a.  The amount of debt you have agreed to reaffirm:     <u>$7226.40</u>

*The amount of debt you have agreed to reaffirm includes all fees and costs (if any) that have accrued as of the date of this disclosure. Your credit agreement may obligate you to pay additional amounts which may come due after the date of this disclosure. Consult your credit agreement.*

B 2400A/B ALT (Form 2400A/B) (12/15)                                              2

## ANNUAL PERCENTAGE RATE

*[The annual percentage rate can be disclosed in different ways, depending on the type of debt.]*

a. If the debt is an extension of "credit" under an "open end credit plan," as those terms are defined in § 103 of the Truth in Lending Act, such as a credit card, the creditor may disclose the annual percentage rate shown in (i) below or, to the extent this rate is not readily available or not applicable, the simple interest rate shown in (ii) below, or both.

(i) The Annual Percentage Rate disclosed, or that would have been disclosed, to the debtor in the most recent periodic statement prior to entering into the reaffirmation agreement described in Part B below or, if no such periodic statement was given to the debtor during the prior six months, the annual percentage rate as it would have been so disclosed at the time of the disclosure statement: ___ %.

*--- And/Or ---*

(ii) The simple interest rate applicable to the amount reaffirmed as of the date this disclosure statement is given to the debtor: ___%. If different simple interest rates apply to different balances included in the amount reaffirmed, the amount of each balance and the rate applicable to it are:

$ ___ @ ___ %;
$ ___ @ ___ %;
$ ___ @ ___ %;

b. If the debt is an extension of credit other than under than an open end credit plan, the creditor may disclose the annual percentage rate shown in (I) below, or, to the extent this rate is not readily available or not applicable, the simple interest rate shown in (ii) below, or both .

(i) The Annual Percentage Rate under §128(a)(4) of the Truth in Lending Act, as disclosed to the debtor in the most recent disclosure statement given to the debtor prior to entering into the reaffirmation agreement with respect to the debt or, if no such disclosure statement was given to the debtor, the annual percentage rate as it would have been so disclosed: ___%.

*--- And/Or ---*

(ii) The simple interest rate applicable to the amount reaffirmed as of the date this disclosure statement is given to the debtor: 19.80%. If different simple interest rates apply to different balances included in the amount reaffirmed, the amount of each balance and the rate applicable to it are:

**B2400A/B ALT (Form 2400A/B ALT) (12/15)**                                                3

$ ___ @ ___ %;
$ ___ @ ___ %;
$ ___ @ ___ %;

   c. If the underlying debt transaction was disclosed as a variable rate transaction on the most recent disclosure given under the Truth in Lending Act:

   The interest rate on your loan may be a variable interest rate which changes from time to time, so that the annual percentage rate disclosed here may be higher or lower.

   d. If the reaffirmed debt is secured by a security interest or lien, which has not been waived or determined to be void by a final order of the court, the following items or types of items of the debtor's goods or property remain subject to such security interest or lien in connection with the debt or debts being reaffirmed in the reaffirmation agreement described in Part B.

<u>Item or Type of Item</u>                    <u>Original Purchase Price or Original Amount of Loan</u>
See Credit Sales Contract(s)                  See Credit Sales Contract(s)

*<u>Optional</u>---At the election of the creditor, a repayment schedule using one or a combination of the following may be provided:*

**<u>Repayment Schedule:</u>**

Your first payment in the amount of $_____ is due on _____ (date), but the future payment amount may be different.  Consult your reaffirmation agreement or credit agreement, as applicable.

*--- Or ---*

Your payment schedule will be:_____(number) payments in the amount of $_____ each, payable (monthly, annually, weekly, etc.) on the _____ (day) of each _____ (week, month, etc.), unless altered later by mutual agreement in writing.

*--- Or ---*

A reasonably specific description of the debtor's repayment obligations to the extent known by the creditor or creditor's representative.

Your payment schedule will be weekly payments in the amount of $48.09 each week, payable on the same day of each week, commencing *the same month this agreement is signed,* and continuing until paid in full to Snap-on Credit LLC, unless altered later by mutual agreement in writing.

B2400A/B ALT (Form 2400A/B ALT) (12/15)                                        **4**

## 2. INSTRUCTIONS AND NOTICE TO DEBTOR

**Reaffirming a debt is a serious financial decision.** The law requires you to take certain steps to make sure the decision is in your best interest. If these steps are not completed, the reaffirmation agreement is not effective, even though you have signed it.

1. Read the disclosures in this Part A carefully. Consider the decision to reaffirm carefully. Then, if you want to reaffirm, sign the reaffirmation agreement in Part B (or you may use a separate agreement you and your creditor agree on).

2. Complete and sign Part D and be sure you can afford to make the payments you are agreeing to make and have received a copy of the disclosure statement and a completed and signed reaffirmation agreement.

3. If you were represented by an attorney during the negotiation of your reaffirmation agreement, the attorney must have signed the certification in Part C.

4. If you were not represented by an attorney during the negotiation of your reaffirmation agreement, you must have completed and signed Part E.

5. The original of this disclosure must be filed with the court by you or your creditor. If a separate reaffirmation agreement (other than the one in Part B) has been signed, it must be attached.

6. If the creditor is not a Credit Union and you were represented by an attorney during the negotiation of your reaffirmation agreement, your reaffirmation agreement becomes effective upon filing with the court unless the reaffirmation is presumed to be an undue hardship as explained in Part D. If the creditor is a Credit Union and you were represented by an attorney during the negotiation of your reaffirmation agreement, your reaffirmation agreement becomes effective upon filing with the court.

7. If you were not represented by an attorney during the negotiation of your reaffirmation agreement, it will not be effective unless the court approves it. The court will notify you and the creditor of the hearing on your reaffirmation agreement. You must attend this hearing in bankruptcy court where the judge will review your reaffirmation agreement. The bankruptcy court must approve your reaffirmation agreement as consistent with your best interests, except that no court approval is required if your reaffirmation agreement is for a consumer debt secured by a mortgage, deed of trust, security deed, or other lien on your real property, like your home.

B2400A/B ALT (Form 2400A/B ALT) (12/15)                                          5

# YOUR RIGHT TO RESCIND (CANCEL) YOUR REAFFIRMATION AGREEMENT

You may rescind (cancel) your affirmation agreement at any time before the bankruptcy court enters a discharge order, or before the expiration of the 60-day period that begins on the date your reaffirmation agreement is filed with the court, whichever occurs later. To rescind (cancel) your reaffirmation agreement, you must notify the creditor that your reaffirmation agreement is rescinded (or canceled).

## Frequently Asked Questions:

What are your obligations if you reaffirm the debt? A reaffirmed debt remains your personal legal obligation. It is not discharged in your bankruptcy case. That means that if you default on your reaffirmed debt after your bankruptcy case is over, your creditor may be able to take your property or your wages. Otherwise, your obligations will be determined by the reaffirmation agreement which may have changed the terms of the original agreement. For example, if you are reaffirming an open end credit agreement, the creditor may be permitted by that agreement or applicable law to change the terms of that agreement in the future under certain conditions.

Are you required to enter into a reaffirmation agreement by any law? No, you are not required to reaffirm a debt by any law. Only agree to reaffirm a debt if it is in your best interest. Be sure you can afford the payments you agree to make.

What if your creditor has a security interest or lien? Your bankruptcy discharge does not eliminate any lien on your property. A "lien" is often referred to as a security interest, deed of trust, mortgage or security deed. Even if you do not reaffirm and your personal liability on the debt is discharged, because of the lien your creditor may still have the right to take the property securing the lien if you do not pay the debt or default on it. If the lien is on an item of personal property that is exempt under your State's law or that the trustee has abandoned, you may be able to redeem the item rather than reaffirm the debt. To redeem, you make a single payment to the creditor equal to the amount of the allowed secured claim, as agreed by the parties or determined by the court.

NOTE: When this disclosure refers to what a creditor "may" do, it does not use the word "may" to give the creditor specific permission. The word "may" is used to tell you what might occur if the law permits the creditor to take the action. If you have questions about your reaffirming a debt or what the law requires, consult with the attorney who helped you negotiate this agreement reaffirming a debt. If you don't have an attorney helping you, the judge will explain the effect of your reaffirming a debt when the hearing on the reaffirmation agreement is held.

B2400A/B ALT (Form 2400A/B ALT) (12/15)                                      6

## PART B: REAFFIRMATION AGREEMENT.

I (we) agree to reaffirm the debts arising under the credit agreement described below.

1. Brief description of credit agreement: Credit Sales Contract for tools of trade.

1. Description of any changes to the credit agreement made as part of this reaffirmation agreement:  None

SIGNATURE(S):

Borrower:                                          Accepted by creditor:

RODNEY FAMA
_Rodney Fama_                                       _Snap-on Credit LLC_
(Print Name)                                        (Printed Name of Creditor)
                                                    950 Technology Way, Suite 301 Libertyville, IL 60048
_Rodney Fama II_                                    1-877-777-8455, option 5. 1-847-573-2180 fax
(Signature)                                         (Address of Creditor)

Date: _3/2/2020_                                    _____
                                                    (Signature)

Co-borrower, if also reaffirming these debts:       Heather Petro Paralegal

_____                               (Printed Name and Title of Individual
(Print Name)                                        Signing for Creditor)

_____                               Date of creditor acceptance:
(Signature)
                                                    _4/8/2020_
Date:_____

**B2400A/B ALT (Form 2400A/B ALT) (12/15)**                                        7

## PART C: CERTIFICATION BY DEBTOR'S ATTORNEY (IF ANY).

*[To be filed only if the attorney represented the debtor during the course of negotiating this agreement.]*

I hereby certify that (1) this agreement represents a fully informed and voluntary agreement by the debtor; (2) this agreement does not impose an undue hardship on the debtor or any dependent of the debtor; and (3) I have fully advised the debtor of the legal effect and consequences of this agreement and any default under this agreement.

☐ *[Check Box, if applicable and the creditor is not a Credit Union.]* A presumption of undue hardship has been established with respect to this agreement. In my opinion, however, the debtor is able to make the required payment.

Printed Name of Debtor's Attorney:  WARREN BRUMEL _____

Signature of Debtor's Attorney: _____

Date: _____

**B2400A/B ALT (Form 2400A/B ALT) (12/15)**                                                    8

## PART D: DEBTOR'S STATEMENT IN SUPPORT OF REAFFIRMATION AGREEMENT

*[Read and complete sections 1 and 2, **OR**, if the creditor is a Credit Union and
the debtor is represented by an attorney, read the Section 3. Sign the appropriate
signature line(s) and date your signature. If you complete sections 1 and 2
**and** your income less monthly expenses does not leave enough to make the
payments under this reaffirmation agreement, check the box at the top of page
1 indicating "Presumption of Undue Hardship." Otherwise check the box at
the top of page 1 indicating "No Presumption of Undue Hardship"]*

1. I believe this reaffirmation agreement will not impose an undue hardship on my
dependents or me. I can afford to make the payments on the reaffirmed debt because my
monthly income (take home pay plus any other income received) is $ 9459.86 and my actual
current monthly expenses including monthly payments on post-bankruptcy debt and other
reaffirmation agreements total $ 8407.89, leaving $ 1048.03 to make the required payments
on this reaffirmed debt.

I understand that if my income less my monthly expenses does not leave enough to
make the payments, this reaffirmation agreement is presumed to be an undue hardship on me
and must be reviewed by the court. However, this presumption may be overcome if I explain
to the satisfaction of the court how I can afford to make the payments here: _I will cut_
_back on other expenses_ _____ .

_____**(Use additional page if needed for a full explanation.)**_____

2. I received a copy of the Reaffirmation Disclosure Statement in Part A and a
completed and signed reaffirmation agreement.

Signed: _Rodney Fama_____
       RODNEY FAMA

_____
(Joint Debtor, if any)

Date: _3/2/2020_____

                                  --- Or ---

*[If the creditor is a Credit Union and the debtor is represented by an attorney]*

2. I believe this reaffirmation agreement is in my financial interest. I can afford to
make the payments on the reaffirmed debt. I received a copy of the Reaffirmation Disclosure
Statement in Part A and a completed and signed reaffirmation agreement.

Signed: _____
       (Debtor)

_____
(Joint Debtor, if any)

Date: _____



RETAIL INSTALLMENT CONTRACT
## CREDIT SALE CONTRACT OR ADD-ON RIDER

This Credit Sale Contract or Add-On Rider ("Credit Sale Contract" or "Agreement") provides the terms that the buyer named below (referred to as "you" "your," "Customer", or "Buyer") agrees to purchase the tools, equipment and other merchandise listed under "Property Description" or on attached invoice or appendix from an authorized Snap-on Tools Company LLC Franchisee, Authorized Seller or Snap-on sales representative ("Seller"). **BUYER REPRESENTS AND WARRANTS THAT THE PROPERTY PURCHASED UNDER THIS AGREEMENT IS TO BE USED BY BUYER PRIMARILY FOR COMMERCIAL OR BUSINESS PURPOSES AND NOT PRIMARILY FOR PERSONAL, FAMILY OR HOUSEHOLD PURPOSES.**

SEE APPENDIX A, INVOICE NO. 11211834096 DATED 11/26/2018 FOR "PROPERTY DESCRIPTION"

Contract Date: 11/26/2018
Customer Number:

### ITEMIZATION OF TOTAL CREDIT SALE PRICE (Time Price Disclosure)

| | | | |
|---|---|---|---|
| 1. | **Total cash sale price** (including tax, if any): | | $3536.88 |
| 2. | Amount of down payment and/or trade-in | | |
| | a.  Down Payment (if any) | $0.00 | |
| | b.  Trade-in (Description of trade-in items are on the attached invoice or Appendix A) | $0.00 | |
| | c.  Total Down Payment (2a + 2b): | | $0.00 |
| 3. | Net Sale (Total cash sale price – Total Down Payment) | | $3536.88 |
| 4. | Rebate Applied | $300.00 | |
| 5. | Unpaid balance of total cash sale price: (Net Sale less any Rebate)) | | $3236.88 |
| 6. | Security Interest Charge/other costs | | |
| | a.  Public officials and/or process costs: | $55.55 | |
| | b.  Florida Document Stamp Tax : (Florida Residents Only) | $0.00 | |
| | c.  Processing Fee: | $0.00 | |
| | d.  Total Security Interest Charge (6a+6b+6c) | | $55.55 |
| 7. | Subtotal Principal Balance (new sale amount financed): (Unpaid balance of total cash sale price + Total Security Interest Charge) | | $3292.43 |
| 8. | Unpaid Balance: (Current net total amount due under prior Credit Sale Contracts, Add-on Rider(s), and/or prior Extended Credit Purchase Money Security Agreements) Beginning Date on 1st Credit Sale Contract 01/28/2013 | | $4637.02 |
| 9. | Other Charges (specify): | | $0.00 |
| 10. | Current Total Balance Financed/Due: (Subtotal Principal Balance + Unpaid Balance + Other charges) (Note: finance charges will not be charged on accrued but unpaid finance charges. See Section 2 below.) | | $7929.45 |
| 11. | Amount of Finance Charge (estimated, time price differential): | | $4573.95 |
| 12. | TOTAL OF PAYMENTS (estimated) (New Amount Financed + Amount of Finance Charge) | | $12503.40 |
| 13. | TOTAL CREDIT SALE PRICE (estimated) (Total of Payments + Total Down Payment) | | $12503.40 |

### YOUR PAYMENT SCHEDULE WILL BE:
**Number of Payments** 260

**Payments Due Each**   WEEK

**Payment Amount**      $48.09

**1st Payment Due Date** 12/03/2018

**ANNUAL PERCENTAGE RATE**   19.80%
The cost of your credit as a yearly rate

**Amount Financed**   $7929.45
(sum of 7, 8, and 9) The amount of credit provided to you or on your behalf:

**FINANCE CHARGE**   $4573.95
The estimated dollar amount the credit will cost you

**Total of Payments**   $12503.40
(sum of 10 and 11) The estimated amount you will have paid after you make all the payments on time

**Total Credit Sale Price**   $12503.40
(sum of 2c and 12)
The total estimated cost of your purchase on credit

**Insurance:** Credit life insurance and credit disability insurance are <u>not</u> required to obtain credit. You may obtain property insurance from anyone you want who is acceptable to Seller's assignee, Snap-on Credit LLC. Insurance, if any is included in this contract, does not provide coverage for personal liability or property damage caused to others.

**Security:** You are giving a security interest in (a) the goods or property purchased under this Agreement; and (b) if permitted by law all other goods or property bearing any Snap-on® trademark, or distributed by or through Snap-on Incorporated or an affiliate.

**Late charge:** If a payment is late, you will be charged up to $10.00 but no more than the maximum amount permitted under applicable law.  No more than one late payment fee shall be imposed per month.

**NSF charge:** If you make a payment by check or debit and that payment is denied by your bank for insufficient funds or any other reason, then you will owe not only the payment but also an NSF charge of up to $25, but not more than the maximum amount permitted under applicable law.

**Prepayment:** If you pay off early, you will not pay a penalty and you may be entitled to a refund of part of the finance charge if paid within the Same As Cash period outlined below.  See Section 2 of Additional Terms and Conditions for details. Your finance charges are calculated based on your average daily outstanding balance due.

**Add-On Rider:** If you have an unpaid balance on any Prior Agreement, Credit Sale Contract or Add-On Rider(s), then this Agreement is also an Add-On Rider to the prior Agreement(s). See below for additional information about any Add-On Rider.

**SEE BELOW AND ON ADDITIONAL PAGES for additional terms and information about nonpayment, default, repayment in full before the scheduled date, and prepayment refunds and penalties.**

**IMPORTANT: READ BEFORE SIGNING. THE TERMS OF THIS AGREEMENT SHOULD BE READ CAREFULLY BECAUSE ONLY THOSE TERMS IN WRITING ARE ENFORCEABLE. NO OTHER TERMS OR ORAL PROMISES NOT CONTAINED IN THIS WRITTEN CONTRACT MAY BE LEGALLY ENFORCED. YOU MAY CHANGE THE TERMS OF THIS AGREEMENT ONLY BY ANOTHER WRITTEN AGREEMENT SIGNED BY YOU AND THE SELLER (COLLECTIVELY REFERRED TO IN THIS AGREEMENT AS "SELLER") OR, IF ASSIGNED, WITH SNAP-ON CREDIT LLC ("SNAP-ON CREDIT") OR ITS ASSIGNS.**

## ADDITIONAL TERMS

**1. Offer of Cash Sale or Payment Over Time.** Seller has offered you a choice of buying the Property for a stated cash price payable immediately or buying the Property for a Total Credit Sale Price which permits you to purchase the Property now, but pay in installments over an extended period of time. The Total Credit Sale Price will be more or less, depending on when you pay and the amount you pay each time, and the Total Credit Sale Price is more than the cash sale price because it includes a finance charge to compensate the Seller for waiting before collecting the full purchase price.

**2. Payment Terms.** *You agree to pay to Seller or Seller's assignee the Amount Financed plus finance charges applied to the outstanding balance thereof at the annual percentage rate set forth on page one during the time any balance under this Agreement remains unpaid. You agree to make equal weekly payments (or such other periodic payment schedule if specifically agreed in writing) (in cash, check or money order) as set forth under "Your payment schedule will be" on the first page of this Agreement until all amounts due under this Agreement are paid (provided that the final payment will be in the amount of the unpaid balance of the Amount Financed plus accrued but unpaid finance charges).* You may prepay the balance of the Amount Financed without penalty at any time; and doing so will reduce the amount of finance charge you would otherwise be required to pay. Unless you prepay the entire outstanding balance of the Amount Financed, however, the amount you are required to pay each week will remain the same, with any adjustments being reflected in the last payment and in the number of payments. "Same As Cash" benefit: this phrase means that although finance charges apply and begin accrual at contract inception, provided you pay the entire Unpaid Balance above within ninety (90) days in good funds from the Contract Date and are not otherwise in default, the finance charge will be waived and any amounts you paid representing finance charges will be refunded and applied against your account or returned to you per our overpayment practices; some promotions may feature alternate Same as Cash periods.  If you make an overpayment when you prepay the entire outstanding balance of the Amount Financed, we will not be required to refund amounts less than: $3.00, unless a lesser amount is required by law, in which case such required amounts shall be refunded (for example, in Minnesota all amounts will be refunded, and in Illinois and North Carolina, any amounts over $1.00 will be refunded).  If you pay the amount due under this Agreement late, the finance charge will continue to accrue monthly on the unpaid average daily balance of your account until paid in full. In that event, your last payment or past due payments may be increased to pay the full balance due. Payments received will be applied in order of maturity. If you elect to defer your payments, you will not be charged late fees, but finance charges will continue to accrue on the unpaid balance, and you will owe additional finance charges that may not be reflected in the estimate on the first page. You and your Seller may agree to transfer to the Amount Financed any balance you may owe Seller as a result of prior purchases pursuant to your truck account or revolving account ("RA") credit that Seller has extended to you. You represent, warrant and agree that: (a) you voluntarily entered into this contract with Seller for the full amount of the Amount Financed plus estimated time finance charges accruing on it instead of paying in full on the sale date; (b) all information supplied and statements made by you in any application for credit before or at the same time as the execution of this Agreement are and will be correct, complete and genuine, (c) you only owe the Seller for any purchases being transferred from RA and have no other liens and encumbrances on the RA tools and equipment being pledged as security under this Agreement, and (d) any items used as a trade-in are free of all liens or other encumbrances, are fully paid for, and you possess good and marketable title to it. The Unpaid Balance under any prior Agreement, including accrued but unpaid finance charges, is used to calculate your payment amount; however, you will pay finance charges only on the outstanding principal balance (cash price) of the Amount Financed at the contract rate until paid in full.

**3. Allocation of Payments.** Your payments will be allocated first to any additional charges, costs and expenses, and then to any finance charge incurred as of that time, and then to the payment of the cash price of each purchase (and to the extent required by law, such shall be deemed to be allocated in the order in which the purchase was made under prior agreements (Credit Sale Contract or Add-On Riders) first and then this Agreement, with the payments being applied to the oldest purchase first; lowest-priced same day purchases paid off first). Down payments and trade-ins will be applied to the cash price of all items purchased on the same day, and to the extent required by law, such will be credited based upon the lowest-priced purchase first.

**4.** If this is an ADD-ON RIDER: **You agree to purchase the additional Property listed in the "Property Description" referred to above, Appendix A, any attachment(s) and any invoice(s) and to pay for such Property as well as the Property purchased under the prior Agreement(s) according to the payment terms listed in _this_ Agreement which modifies the prior agreement terms. If the prior Agreement(s) to which this Add-On Rider relates has/have been assigned to Snap-on Credit LLC ("Snap-on Credit"), then this Add-On Rider is also assigned to Snap-on Credit subject to its acceptance) and all references to Seller are to Snap-on Credit as Seller's Assignee with respect to subsequent payments for items acquired under its contract. To the extent that You have committed or engaged in the commission of an Event of Default, then in consideration of Seller's allowing you to enter into this ADD-ON RIDER, and in consideration of other good and valuable consideration, the sufficiency and receipt of which You hereby acknowledge, to the extent allowed by law You waive, forfeit, and agree to forever forego any and all claims and causes of action –past or present – against Seller and its successors and assigns, including but not limited to Snap-on Credit LLC." You also acknowledge that You actively and with full understanding participated in negotiating the material terms, including but not limited to this Paragraph 4, of this ADD-ON RIDER after opportunity for full consultation with, and review by, Your counsel.**

**5. Grant of Security Interest.** As security for your obligations under this Agreement, or any other agreement with Seller or Seller's assignee, you hereby grant Seller a purchase money security interest in each item of Property you purchase under this Agreement until that item is paid for. As further security for your obligations under this Agreement, in all states except where prohibited by applicable law for agreements of this type, you hereby grant Seller a security interest in each other item of tools, goods and equipment previously purchased or hereafter acquired from a Snap-on Seller, and any and all goods and equipment manufactured or distributed by Snap-on Incorporated or bearing Snap-on Incorporated trademarks or logos, together with all proceeds (including insurance proceeds), accessions, attachments, additions, substitutions and replacements to and of such items (the foregoing and the Property are collectively referred to as "Collateral"). If this Agreement is assigned to Snap-on Credit pursuant to Section 6 below, and if the Amount Financed includes a transfer of RA balance owed to Seller, then Seller hereby assigns to Snap-on Credit any purchase money security interest that Seller may have in any merchandise reflected in the RA balance so transferred. In such case, Snap-on Credit shall continue to hold a purchase money security interest in such merchandise after such transfer. You agree not to remove any Collateral from the state where the original sale was made without the written consent of Seller or Snap-on Credit, if this Agreement is assigned to Snap-on Credit. You agree not to sell, dispose of or encumber any Collateral until your entire balance due is paid in full. To the extent permitted by and subject to applicable law, you agree and hereby grant to Seller and Snap-on Credit or its agent or assigns the power of attorney and right to sign on your behalf and file or record such financing statements or other documents as may be necessary to perfect or maintain the security interest granted by you under this Agreement. Once you have accepted delivery of any Property under this contract, and it is later returned or repossessed for any reason, the value of the property may be depreciated in part or entirely depending on its nature, useful life and length and nature of use.

**6. Assignment by Seller.** (a) Seller reserves the right to cancel this contract if Seller is not able to assign this contract to another party for funding (b) Seller may assign this Agreement for value to **Snap-on Credit LLC, 950 Technology Way, Suite 301, Libertyville, IL 60048.** If Seller assigns this Agreement to Snap-on Credit, then after such assignment (i) Snap-on Credit or its assigns shall have all the rights and remedies of Seller under this Agreement and all of your obligations, agreements, representations and warranties shall be deemed to have been made to Snap-on Credit with the same effect as if Snap-on Credit were an original party to this Agreement; and (ii) Seller will not have any power or authority to exercise any such rights or remedies, give any consents under Section 5 or change or modify this Agreement or any related document in any way. (c) If this Agreement is assigned to Snap-on Credit, you agree to deliver your payments to Snap-on Credit. *The Seller is not Snap-on Credit's agent for any purpose.* If you make payments to your Seller, the Seller will be acting as your agent. In that capacity, the Seller has agreed with Snap-on Credit to remit payments under this Agreement to Snap-on Credit on a regular basis. You will be credited with payment on the date Snap-on Credit receives payment from the Seller; finance charges and any late penalties may continue to accrue until Snap-on Credit receives the payment. Payments received by Snap-on Credit after 10:00 a.m. CST will be credited on the next business day.  Alternatively, you may make any payments (by check or money order payable to Snap-on Credit, directly to Snap-on Credit at the address provided to you by Snap-on Credit, in which case you will be credited with payment on the date Snap-on Credit receives the payment (Note: for your protection do not mail cash). Snap-on Credit may require you to make payments directly to it. Snap-on Credit's business days are Monday through Friday, excluding holidays.

**7. Property Insurance.** So long as Seller or its assigns has a security interest in any Collateral, you will obtain and keep in force fire and other casualty Insurance on the Collateral in an amount and form and written by insurers satisfactory to Seller, with loss payable to Seller or Seller's assignee. If you fail to do so, Seller or its assigns may, at their option, purchase such insurance, in which event you must pay the cost thereof to Seller or its assigns on demand. However, any failure by Seller to obtain and keep in force such insurance, after your failure to do so, shall not release you from any obligations or liability under this Agreement or any prior agreements. *Any insurance procured by Seller under this section will not include insurance for property damage to others.*

**8. Additional Charges.** To the extent permitted by and subject to applicable law, you agree to pay the additional charges listed below. Failure to impose a fee or charge in certain instances does not constitute a waiver or prohibit the Seller or any assignee from insisting on strict compliance with this Agreement by you

C96_1_1_EECFD82J_20180217.C96

at any time. **(a) Security Interest Charges.** You will be assessed a Security Interest Charge to cover (1) fees and charges paid to public officials for determining the existence of or for perfecting, releasing or satisfying the security interest you granted under this Agreement, (2) the costs payable for any outside service retained to provide searches and filings for perfecting and verifying the security interest and (3) in certain states (depending on state rate limits and rate calculations) we may also charge an amount to recoup a portion of our production and management costs related to maintaining security interest transactions, not to exceed the greater of $15.00 or the maximum amount allowed by law. **(b) Late Charges.** If you fail to make payments under this Agreement within 10 days after the date due (or in the case of weekly payments, if you fail (and have continued to fail) to make 5 or more weekly payments within ten days of the date due), you may be assessed a Late Charge on those missed payments of the lesser of: $10.00 or the maximum permitted by applicable law – (where in the case of weekly payments the law requires the application of a percentage, any percentage of late charges will be assessed monthly on the tenth of each month and the late charge on those missed payments will be capped on a single monthly equivalent (weekly payment amount *4.33333), so long as five or more payments continue to remain outstanding). **(c) NSF Check Charges.** If your check is not honored by your bank because of non-sufficient funds, a closed account, or any other reason, you may be assessed an NSF Check Charge of the lesser of $25.00 or the maximum permitted by law. **(d) Legal Fees.** In addition to the full amount owed and any court costs, if allowed by law: any matter arising out of your default under this Agreement is referred to an attorney to collect the amount you owe or to repossess any Collateral, you agree to pay all costs and expenses (including all reasonable attorneys' fees and court costs) incurred by us in enforcing any of the terms of this Agreement or any of our rights against you; under no circumstance shall Legal Fees be assessed to Minnesota residents. **(e) Extension fees.** In the event we provide you a contract term modification or payment extension at your request or as part of another type of payment arrangement, we reserve the right to charge a onetime extension fee of the lesser of $30.00 or the maximum amount allowed by law to offset a portion of our costs associated with such change. **(f) Electronic Payments.** If you choose to pay your payments via a phone payment or internet payment service we offer or designate, you agree to pay a convenience fee for each payment up to the maximum amount allowed by law, but not more than $10. **(g) Other Considerations.** We reserve the right to charge additional fees as appropriate in the event the parties agree to other contract modifications.

**9. Events of Default.** The occurrence of any one of the following events constitutes a default under this Agreement: (a) You do not pay at least the minimum payment due or you otherwise become delinquent on any other obligation to Seller, or, or if this Agreement is assigned, to such assignee; (b) you file or consent to the filing of bankruptcy or similar proceedings against you or you become insolvent, or your financial condition deteriorates significantly and it appears likely that you will not be able to repay Seller for any reason; (c) you die, become imprisoned for 30 days or more or are declared legally incompetent; (d) you at any time give Seller information that is inaccurate, misleading or incomplete; (e) you pledge, lend, abandon or otherwise encumber or dispose of the Property without Seller's prior consent (unless it is an exchange or warranty event with your Seller or Snap-on Tools) or (f) you fail to comply with any terms or conditions of this Agreement.

**10. Acceleration; Remedies.** Seller, or if assigned, Seller's assignee will have all the rights and remedies of a secured creditor under the Uniform Commercial Code and any other applicable laws. In addition, if any one of the events of default occurs, subject to any right you may have under applicable law to receive notice of and to cure such default, at Seller's option Seller may (a) declare the entire unpaid balance due under this Agreement immediately due and payable; provided, however, we may charge post-default interest on amounts due at a rate that is the lesser of (i) 5% per annum and (ii) the maximum rate permitted by applicable law. until all amounts due under this Agreement are paid in full; and (b) repossess any Collateral in which Seller still retains a security interest, and without limiting the foregoing, in the event this or any other transaction is assigned, any Collateral in which assignee still retains a security interest but only in the manner and to the extent permitted by applicable law. If Seller resells any repossessed Collateral, Seller agrees to pay you any surplus remaining (after deduction of the costs of repossession and sale and other costs, including reasonable attorneys' fees, to the extent permitted by law) and you agree to pay Seller any deficiency in accordance with the Uniform Commercial Code and any other applicable laws. Seller may accept late or partial payments or any payments marked as being payment in full or as being settlement for any dispute without prejudicing any of Seller's rights under or in any way amending this Agreement. Seller's failure or delay at any time to exercise any of Seller's contract, legal or equitable rights shall not be deemed a waiver of these rights nor of the right to exercise Seller's rights at any other time. If Snap-on Credit becomes the secured party under this Agreement, you agree that it is commercially reasonable for repossessed Collateral to be sold at public or private sales (in any state or county selected by Snap-on Credit) to Seller or others in lots or pieces (with or without the Collateral being physically present) at used tool prices. The term "Buyer" and "Seller" as used in this Agreement also mean "customer" or "debtor" and "secured party" respectively and include heirs, executors, or administrators, successors and permitted assigns of those parties.

**11. Continuing Authority to Review.** You hereby authorize Seller, or if assigned, Seller's assignee, to obtain and review credit information about you from any credit reporting agency or any other source during the time this Agreement remains in effect for purposes of increasing or modifying the amount of credit available to you, regardless of whether you submit a written application for same, or for collecting amounts owed by you under this Agreement.

**12. Governing Law.** THIS AGREEMENT SHALL BE GOVERNED BY THE LAWS OF THE STATE OF ILLINOIS, THE ASSIGNEE'S STATE WITHOUT REGARD TO ITS CONFLICTS OF LAWS RULES OR PROVISIONS; PROVIDED, HOWEVER, IN THE EVENT THIS AGREEMENT OR ANY OF ITS PROVISIONS CANNOT BE ENFORCED PURSUANT TO ILLINOIS LAW, THEN THE LAWS OF THE STATE YOUR RESIDENCE SHALL GOVERN. If used in U.S. Territories or Commonwealths, this Agreement is not to be governed by the United Nations Convention on Contracts for the International Sale of Goods.

**13. Jury Trial Waiver and Class Waiver.** YOU AND SELLER WAIVE ALL RIGHTS TO A TRIAL BY JURY. YOU AGREE THAT YOU, THE BUYER, MAY ONLY BRING CLAIMS AGAINST SELLER OR ANY ASSIGNEE IN YOUR INDIVIDUAL CAPACITY AND NOT AS A PLAINTIFF OR CLASS MEMBER IN ANY PURPORTED CLASS OR REPRESENTATIVE PROCEEDING.

**14. Transfer of Agreement.** Seller reserves the right to sell or transfer this Agreement in whole or in part to another entity or person without prior notice to you. You, however, cannot transfer this Agreement or rights and obligations under this Agreement to any other entity or person.

**15. Finance Charge Savings Clause.** – Notwithstanding any other provision in this Agreement, the aggregate finance charge rate utilized with respect to any of the obligations, including all charges or fees in connection therewith deemed includable in the finance charge shall not exceed the maximum lawful rate. If the finance charge under this Agreement at any time exceeds the maximum allowed by law, the outstanding amount of the Amount Financed shall bear finance charges at the maximum lawful rate until the total finance charges due and total amount financed are paid in full at such rate. The parties intend to conform to any applicable laws limiting finance charges on this type of Agreement. Accordingly, if Seller contracts for, charges, or receives any consideration which constitutes interest in excess of maximum allowed by law, then any such excess shall be cancelled automatically and, if previously paid, shall at such Lender's option be applied to the outstanding amount remaining due hereunder or be refunded to Buyer

**16. Satisfaction/Complaints.** We hope you have a pleasant experience with Snap-on. If you have any compliments or complaints regarding this transaction or any related events, please contact customerservice@snaponcredit.com or call 877-777-8455

**17. Severability; Entire Agreement.** If any term, provision or section of this Agreement is held void, voidable, invalid or unenforceable under any statute or court decision, or any governmental rule or regulation, the remainder of the Agreement shall remain effective, and any such ineffectiveness shall not affect the validity or enforceability of this Agreement in any other jurisdiction. This Agreement, any previous Credit Sale Contract, Add-On Riders and, any written addenda or riders hereto signed by both parties constitutes the entire agreement between the parties regarding the subject matter of this Agreement.

==================================================================================================================

C96_1_1_EECFD82J_20180217.C96

**Notice to California Residents.** California Finance Lenders License No. 603-6880. For California residents, NSF Fees are limited to a maximum of $15.00 and Late Charges are limited to a maximum of $10.00.

**Notice to Connecticut Residents.** Attorneys' fees, which are permitted under Sections 8 and 10 of this Agreement, may not exceed 15% of the amount due plus court costs, and may only be collected or sought from Connecticut Residents when the contract is referred to an attorney, not a salaried employee of the holder of the contract, for collection. Late charges may not exceed the lesser of 5% of the past due installment (whether weekly or monthly) or $10.00.

**Notice to District of Columbia Residents.** Seller certifies that the information contained in the contract complies with the District of Columbia Municipal Regulations, Title 16, Chapter 3.

**Notice to Florida Residents.** The state of Florida assess a documentary stamp tax on secured transactions. That amount is calculated as the tax rate is $.35 per $100 (or portion thereof) and is based on the amount of the indebtedness or obligation secured, even if the indebtedness is contingent.

**Notice to Maryland Residents.** Agreement is pursuant to Subtitle 10 (Credit Grantor Closed End Contract Provisions) of Md. Code Ann., Fin. Inst. §12-100 et seq.

**Notice to Minnesota Residents.** under no circumstance shall Legal Fees be assessed under your contract.

**Notice to South Dakota Residents.** Any concerns regarding improprieties may be reported to the South Dakota Div. of Banking, 1601 N. Harrison Avenue, Suite 1, Pierre, SD 57501 or call 605-773-3421.

THIS DOCUMENT CONSISTS OF THE FINANCIAL TERMS ON PAGE 1, THE ADDITIONAL TERMS IN SECTIONS 1 THROUGH 17, THE IMPORTANT CREDIT NOTICE AFTER 17, THIS PAGE, AND ANY ATTACHED APPENDIX A

**IMPORTANT: READ BEFORE SIGNING. THE TERMS OF THIS AGREEMENT SHOULD BE READ CAREFULLY BECAUSE ONLY THOSE TERMS SET FORTH IN THIS AGREEMENT ARE ENFORCEABLE. NO OTHER TERMS OR ORAL PROMISES NOT CONTAINED IN THIS WRITTEN CONTRACT MAY BE LEGALLY ENFORCED. YOU MAY CHANGE THE TERMS OF THIS AGREEMENT ONLY BY ANOTHER WRITTEN AGREEMENT SIGNED BY YOU AND THE SELLER OR SNAP-ON TOOLS COMPANY LLC OR ITS AFFILIATE THROUGH THEIR SALES REPRESENTATIVE (COLLECTIVELY REFERRED TO IN THIS AGREEMENT AS "SELLER") OR, IF ASSIGNED, WITH SNAP-ON CREDIT LLC ("SNAP-ON CREDIT") OR ITS ASSIGNS.**

**BUYER ACKNOWLEDGES RECEIPT OF PRODUCT AND A COPY OF THIS AGREEMENT**

BUYER REPRESENTS AND WARRANTS THAT THE PROPERTY PURCHASED UNDER THIS AGREEMENT IS TO BE USED PRIMARILY FOR COMMERCIAL OR BUSINESS PURPOSES AND NOT PRIMARILY FOR PERSONAL, FAMILY OR HOUSEHOLD PURPOSES.

**NOTICE TO BUYER**

DO NOT SIGN THIS CONTRACT (CREDIT SALE CONTRACT OR ADD-ON RIDER) BEFORE YOU READ IT OR IF IT CONTAINS ANY BLANK SPACES.

YOU ARE ENTITLED TO A COMPLETELY FILLED-IN COPY OF THE CONTRACT WHEN YOU SIGN IT.

UNDER THE LAW, YOU HAVE THE FOLLOWING RIGHTS, AMONG OTHERS:
   (a) TO PAY OFF IN ADVANCE THE FULL AMOUNT DUE AND OBTAIN A PARTIAL REFUND OF ANY UNEARNED
      FINANCE CHARGE;
   (b) TO REDEEM THE PROPERTY IF REPOSSESSED FOR A DEFAULT;
   (c) TO REQUIRE, UNDER CERTAIN CONDITIONS, RESALE OF THE PROPERTY IF REPOSSESSED.

| | |
|---|---|
| CIC Live Signature<br>CASLER TOOLS LLC by KENNETH CASLER<br>09:15:39 AM 11-26-2018 (-05'00' GMT)<br>I, CASLER TOOLS LLC by KENNETH CASLER, am signing to certify the authenticity of this document. | CIC Live Signature<br>RODNEY FAMA<br>09:15:17 AM 11-26-2018 (-05'00' GMT)<br>I, RODNEY FAMA, am signing this document to confirm that I have fully reviewed it and agree to its terms. |
| SELLER (SECURED PARTY) | BUYER (DEBTOR)<br>**RODNEY FAMA**<br>**25 MANORBLVD.**<br>**MONROE, NJ  08831** |

**CASLER TOOLS LLC by KENNETH CASLER**
64 Central Ave.
Pompton Lakes, NJ  07442

Seller assigns for value all right, title and interest in this Agreement to **Snap-on Credit LLC**, subject to acceptance by Snap-on Credit LLC. By providing the information on the unpaid balance due under any prior Agreement, Credit Sale Contract or any Add-On Rider(s) above for this transaction, Snap-on Credit LLC consents to the rescheduling of payments under the Credit Sale Contract and any Add-On Rider(s) previously assigned to Snap-on Credit LLC.
Snap-on Credit LLC - 950 Technology Way, Suite 301 - Libertyville, IL 60048 - (877)777-8455

## APPENDIX A
### "Property Description"

INVOICE DATE  11/26/2018                INVOICE NUMBER  11211834096            DEBTOR NUMBER

Seller                                                    Buyer (Debtor)
CASLER TOOLS LLC by KENNETH CASLER       RODNEY FAMA

| | | | | | |
|---|---|---|---|---|---|
| New Sale Subtotal | $ 1995.00 | Total R/A Transfer | $ 1089.84 | Shipping/Handling $ | 0.00 |
| Tax Applied | $ 152.04 | Total | $ 3,236.88 | S/H Tax | $ 0.00 |
| Subtotal Including Tax | $ 2147.04 | | | | |

| Line | QTY | PRODUCT NO. SERIAL NO. | DESCRIPTION | EACH | COMMENTS | LC | LINE TOTAL |
|---|---|---|---|---|---|---|---|
| 1 | 1 | T812M | M8-1.25 DBL HEX TAP | 9.45 | 0.00 | 7 | 9.45 |
| 2 | 1 | T508M | M5-.80 DBL HEX TAP | 6.10 | 0.00 | 7 | 6.10 |
| 3 | 1 | T407M | M4-.70 DBL HEX TAP | 7.05 | 0.00 | 7 | 7.05 |
| 4 | 1 | T305M | M3-.50 DBL HEX TAP | 7.65 | 0.00 | 7 | 7.65 |
| 5 | 1 | T113 | 8-32 MACH SCRW THR TAP | 6.10 | 0.00 | 7 | 6.10 |
| 6 | 1 | T111A | 4-40 MACH SCRW THR TAP | 6.10 | 0.00 | 7 | 6.10 |
| 7 | 1 | T102 | 3/8IN-16NC NAT CRSE THR TAP | 12.35 | 0.00 | 7 | 12.35 |
| 8 | 1 | T101 | 5/16IN-18NC NAT CRSE THR TAP | 10.85 | 0.00 | 7 | 10.85 |
| 9 | 1 | FC72 | 3/8DR 72T STD CMPT RAT | 91.95 | 0.00 | 7 | 91.95 |
| 10 | 1 | REX25B | 25PC MLTSPL EXT SET | 99.00 | 0.00 | 7 | 99.00 |
| 11 | 1 | BJP1 | BALL JOINT PRESS MASTER SET | 615.00 | 0.00 | 7 | 615.00 |
| 12 | 1 | SHIP1 | SHIPPING CHARGES | 6.90 | 0.00 | 7 | 6.90 |
| 13 | 1 | MTTL800 | TEST LEAD KIT DELUXE MODULAR | 182.00 | 0.00 | 7 | 182.00 |
| 14 | 1 | PWCS7CF | 7IN SM GAU WIRE STRPR CRMP CUT | 48.00 | 0.00 | 7 | 48.00 |
| 15 | 1 | PHP1A | 10IN OFFEST HOSE PINCH PLIERS | 35.00 | 0.00 | 7 | 35.00 |
| 16 | -1 | ECREBATE | EC INSTANT REBATE | 300.00 | 0.00 | 8 | -300.00 |
| 17 | 1 | EESC320 | SOLUS EDGE | 3895.00 | 1600.00 | 10 | 2295.00 |



RETAIL INSTALLMENT CONTRACT
**CREDIT SALE CONTRACT OR ADD-ON RIDER**

This Credit Sale Contract or Add-on Rider ("Credit Sale Contract" or "Agreement") provides the terms that the buyer named below (referred to as "you" "your," or "Buyer") agrees to purchase the tools, equipment and other merchandise listed under "Property Description" or on attached invoice or appendix from an authorized Snap-on Tools Company LLC Franchisee, Authorized Dealer or Snap-on sales representative ("Dealer"). **BUYER REPRESENTS AND WARRANTS THAT THE PROPERTY PURCHASED UNDER THIS AGREEMENT IS TO BE USED PRIMARILY FOR COMMERCIAL OR BUSINESS PURPOSES AND NOT PRIMARILY FOR PERSONAL, FAMILY OR HOUSEHOLD PURPOSES.**

SEE APPENDIX A, INVOICE NO. 12131725165 DATED 12/13/2017
FOR "PROPERTY DESCRIPTION"

Dealer Number: 41440
Contract Date:  12/13/2017
Debtor Number:

## ITEMIZATION OF TOTAL CREDIT SALE PRICE
(Time Price Disclosure)

1. **Total cash sale price** (including tax, if any):  $961.88
2. Amount of down payment and/or trade-in
   a.  Down Payment  $0.00
   b.  Trade-in (Description of trade-in items  $0.00
        are on the attached invoice or Appendix A)
   c.  Total Down Payment (2a + 2b):  $0.00
3. Unpaid balance of total cash sale price:  $961.88
   (Total cash sale price − total down payment)
4. Security Interest Charge
   a.  Public officials and/or process costs:  $55.55
   b.  Florida Document Stamp Tax:  $0.00
        (Florida Residents Only)
   c.  Processing Fee:  $0.00
   d.  Total Security Interest Charge (4a+4b+4c)  $55.55
5. Subtotal Principal Balance (new sale amount financed):  $1017.43
   (Unpaid balance of total cash sale price + Total
   Security Interest Charge)
6. Unpaid Balance:  $5033.37
   (Current  net total amount due under prior Credit Sale Contracts,
   Add-on Rider(s), and/or prior Extended Credit Purchase
   Money Security Agreements)
   Beginning Date on 1st Credit Sale Contract 01/28/2013
7. Other Charges (specify):  $0.00
8. New Amount Financed:  $6050.80
   (Subtotal Principal Balance + Unpaid Balance +
   Other charges) (Note: finance charges will not be charged
   on accrued but unpaid finance charges. See Section 2 below.)
9. Amount of Finance Charge (estimated, time price differential):  $2346.68
10. TOTAL OF PAYMENTS (estimated)  $8397.48
    (New Amount Financed + Amount of Finance Charge)
11. TOTAL CREDIT SALE PRICE (estimated)  $8397.48
    (Total of Payments + Total Down Payment)

## YOUR PAYMENT SCHEDULE WILL BE:

**Number of Payments** 182

**Payments Due Each**  WEEK

**Payment Amount**  $46.14

**1st Payment Due Date** 12/20/2017

**ANNUAL PERCENTAGE RATE**  19.80%
The cost of your credit as a yearly rate

**Amount Financed**  $6050.80
(sum of 5, 6, and 7) The amount of credit
provided to you or on your behalf

**FINANCE CHARGE**  $2346.68
The estimated dollar amount
the credit will cost you

**Total of Payments**  $8397.48
(sum of 8 and 9) The estimated amount
you will have paid after you make
all the payments on time

**Total Credit Sale Price**  $8397.48
(sum of 2c and 10)
The total estimated cost of
your purchase on credit

**Insurance:** Credit life insurance and credit disability insurance are **not** required to obtain credit. You may obtain property insurance from anyone you want who is acceptable to Dealer's assignee, Snap-on Credit LLC. Insurance, if any is included in this contract, does not provide coverage for personal liability or property damage caused to others.

**Security:** You are giving a security interest in (a) the goods or property purchased under this Agreement; and (b) if permitted by law all other goods or property bearing any Snap-on® trademark, or distributed by or through Snap-on Incorporated or an affiliate.

**Late charge:** If a payment is late, you will be charged $10.00 but no more than the maximum amount permitted under applicable law.

**NSF charge:** If you make a payment by check or debit and that payment is denied by your bank for insufficient funds or any other reason, then you will owe not only the payment but also an NSF charge of $25, but not more than the maximum amount permitted under applicable law.

**Prepayment:** If you pay off early, you will not pay a penalty and you may be entitled to a refund of part of the finance charge. Your finance charges are calculated based on your average daily outstanding balance due.

**Add-On Rider:** If you have an unpaid balance on any Prior Agreement, Credit Sale Contract or Add-on Rider(s), then this Agreement is also an Add-On Rider to the prior Agreement(s). See below for additional information about any Add-On Rider.

**SEE BELOW AND ON ADDITIONAL PAGES** for additional terms and information about nonpayment, default, repayment in full before the scheduled date, and prepayment refunds and penalties.

**IMPORTANT: READ BEFORE SIGNING. THE TERMS OF THIS AGREEMENT SHOULD BE READ CAREFULLY BECAUSE ONLY THOSE TERMS IN WRITING ARE ENFORCEABLE. NO OTHER TERMS OR ORAL PROMISES NOT CONTAINED IN THIS WRITTEN CONTRACT MAY BE LEGALLY ENFORCED. YOU MAY CHANGE THE TERMS OF THIS AGREEMENT ONLY BY ANOTHER WRITTEN AGREEMENT SIGNED BY YOU AND THE FRANCHISEE, DEALER OR SNAP-ON TOOLS COMPANY LLC OR ITS AFFILIATE THROUGH THEIR SALES REPRESENTATIVE (COLLECTIVELY REFERRED TO IN THIS AGREEMENT AS "DEALER") OR, IF ASSIGNED, WITH SNAP-ON CREDIT LLC ("SNAP-ON CREDIT") OR ITS  ASSIGNS.**

## ADDITIONAL TERMS

**1. Offer of Cash Sale or Payment Over Time.** Dealer has offered you a choice of buying the Property for a stated cash price payable immediately or buying the Property for a Total Credit Sale Price which permits you to purchase the Property now, but pay in installments over an extended period of time. The Total Credit Sale Price will be more or less, depending on when you pay and the amount you pay each time, and the Total Credit Sale Price is more than the cash sale price because it includes a finance charge to compensate the Dealer for waiting before collecting the full purchase price.

**2. Payment Terms.** *You agree to pay to Dealer or Dealer's assignee the Amount Financed plus finance charges applied to the outstanding balance thereof at the annual percentage rate set forth on page one during the time any balance under this Agreement remains unpaid. You agree to make equal weekly payments (or such other periodic payment schedule if specifically agreed in writing) (in cash, check or money order) as set forth under "Your payment schedule will be" on the first page of this Agreement until all amounts due under this Agreement are paid (provided that the final payment shall be in the amount of the unpaid balance of the Amount Financed plus accrued but unpaid finance charges).* You may prepay the balance of the Amount Financed without penalty at any time; and doing so will reduce the amount of finance charge you would otherwise be required to pay. Unless you prepay the entire outstanding balance of the Amount Financed, however, the amount you are required to pay each week will remain the same, with any adjustments being reflected in the last payment and in the number of payments. If you make an overpayment when you prepay the entire outstanding balance of the Amount Financed, we will not be required to refund amounts less than $1.00. If you pay the amount due under this Agreement late, the finance charge will continue to accrue monthly on the unpaid average daily balance. In that event, your last payment may be increased to pay the full balance due. Dealer may offer a deferred first payment due date; however, the estimated Finance Charge and the number and amount of payments on the first page of this Agreement are based on payments beginning immediately after the date of this Agreement. If you elect to defer your payments, you will not be charged late fees, but finance charges will continue to accrue on the unpaid balance, and you will owe additional finance charges that may not be reflected in the estimate on the first page. "Same As Cash" benefit: this phrase means that although finance charges apply and begin accrual at contract inception, provided you pay the entire Unpaid Balance above within ninety (90) days in good funds from the contract date and are not otherwise in default, the finance charge will be waived and any amounts you paid representing finance charges will be refunded and applied against your account or returned to you; some promotions may feature alternate Same as Cash periods. You and your Dealer may agree to transfer to the Amount Financed any balance you may owe Dealer as a result of prior purchases pursuant to your truck account or revolving account ("RA") credit that Dealer has extended to you. You represent, warrant and agree that: (a) you voluntarily entered into this contract with Dealer for the full amount of the Amount Financed plus estimated time finance charges accruing on it instead of paying in full on the sale date; (b) all information supplied and statements made by you in any application for credit before or at the same time as the execution of this Agreement are and will be correct, complete and genuine, (c) you only owe the dealer for any prior purchases being transferred from RA and have no other liens and encumbrances on the RA tools and equipment being pledged as security under this Agreement, and (d) any items used as a trade-in are free of all liens or other encumbrances, are fully paid for, and you possess good and marketable title to it. The Unpaid Balance under any prior Agreement, including accrued but unpaid finance charges, is used to calculate your payment amount; however, you will pay finance charges only on the outstanding principal balance (cash price) of the Amount Financed at the contract rate until paid in full.

**3. Allocation of Payments.** Your payments will be allocated first to any additional charges, costs and expenses, and then to any finance charge in the order it is incurred, and then to the payment of the cash price of each purchase in the order in which the purchase was made under prior agreements (Credit Sale Contract or Add-On Riders) first and then this Agreement, with the payments being applied to the oldest purchase first; lowest-priced same day purchases paid off first. Down payments and trade-ins will be applied to the cash price of all items purchased on the same day, credited based upon the lowest-priced purchases first.

**4.** If this is an ADD-ON RIDER: **You agree to purchase the additional Property listed in the "Property Description" referred to above, Appendix A, any attachment(s) and any invoice(s) and to pay for such Property as well as the Property purchased under the prior Agreement(s) according to the payment terms listed in this Agreement which modifies the prior agreement terms. If the prior Agreement(s) to which this Add-On Rider relates has/have been assigned to Snap-on Credit LLC ("Snap-on Credit"), then this Add-On Rider is also assigned to Snap-on Credit subject to its acceptance) and all references to Dealer are to Snap-on Credit as Dealer's Assignee with respect to subsequent payments for items acquired under any contract. To the extent that You have committed or engaged in the commission of an Event of Default, then in consideration of Seller's allowing you to enter into this ADD-ON RIDER, and in consideration of other good and valuable consideration, the sufficiency and receipt of which You hereby acknowledge, to the extent allowed by law You waive, forfeit, and agree to forever forego any and all claims and causes of action -- past, present or future -- against Seller and its successors and Assigns, including but not limited to Snap-on Credit LLC." You also acknowledge that You actively and with full understanding participated in negotiating the material terms, including but not limited to this Paragraph 4, this ADD-ON RIDER after full consultation with, and review by, Your counsel.**

**5. Grant of Security Interest.** As security for your obligations under this Agreement, or any other agreement with Dealer or Dealer's assignee, you hereby grant Dealer a purchase money security interest in each item of Property you purchase under this Agreement until that item is paid for. As further security for your obligations under this Agreement, in all states except where prohibited by applicable law for agreements of this type, you hereby grant Dealer a security interest in each other item of tools, goods and equipment previously purchased or hereafter acquired from a Snap-on Dealer, and any and all goods and equipment manufactured or distributed by Snap-on Incorporated or bearing Snap-on trademarks or logos, together with all proceeds (including insurance proceeds), accessions, attachments, additions, substitutions and replacements to and of such items (the foregoing and the Property are collectively referred to as "Collateral"). If this Agreement is assigned to Snap-on Credit pursuant to Section 6 below, and if the Amount Financed includes a transfer of RA balance owed to Dealer, then Dealer hereby assigns to Snap-on Credit any purchase money security interest that Dealer may have in any merchandise reflected in the RA balance so transferred. In such case, Snap-on Credit shall continue to hold a purchase money security interest in such merchandise after such transfer. You agree not to remove any Collateral from the state where the original sale was made without the written consent of Dealer or Snap-on Credit, if this Agreement is assigned to Snap-on Credit. You agree not to sell, dispose of or encumber any Collateral until your entire balance due is paid in full. To the extent permitted by and subject to applicable law, you agree and hereby grant to Dealer and Snap-on Credit or its agent or assigns the power of attorney and right to sign on your behalf and file or record such financing statements or other documents as may be necessary to perfect or maintain the security interest granted by you under this Agreement.

**6. Assignment by Dealer.** (a) Dealer may assign this Agreement for value to **Snap-on Credit LLC, 950 Technology Way, Suite 301, Libertyville, IL 60048.** If Dealer assigns this Agreement to Snap-on Credit, then after such assignment (1) Snap-on Credit or its assigns shall have all the rights and remedies of Dealer under this Agreement and all of your obligations, agreements, representations and warranties shall be deemed to have been made to Snap-on Credit with the same effect as if Snap-on Credit were an original party to this Agreement; and (2) Dealer will not have any power or authority to exercise any such rights or remedies, give any consents under Section 5 or change or modify this Agreement or any related document in any way. (b) If this Agreement is assigned to Snap-on Credit, you agree to deliver your payments to Dealer or directly to Snap-on Credit. *The Dealer is not Snap-on Credit's agent for any purpose.* If you make payments to your Dealer, the Dealer will be acting as your agent. In that capacity, the Dealer has agreed with Snap-on Credit to remit payments under this Agreement to Snap-on Credit on a regular basis. You will be credited with payment on the date Snap-on Credit receives payment from the Dealer. Payments received by Snap-on Credit after 10:00 a.m. CST will be credited on the next business day. Snap-on Credit will credit you and waive additional finance charges and late charges on any installment regardless of when payment is received from the dealer *if you have proof of your timely payment to the Dealer* (such as a valid receipt or canceled check). Alternatively, you may make any payments (by debit, check or money order payable to Snap-on Credit, and not cash) directly to Snap-on Credit at the address provided to you by Snap-on Credit, in which case you will be credited with payment on the date Snap-on Credit receives the payment. Snap-on Credit may require you to make payments directly to it. Snap-on Credit's business days are Monday through Friday, excluding holidays.

**7. Property Insurance.** So long as Dealer or its assigns has a security interest in any Collateral, you will obtain and keep in force fire and other casualty Insurance on the Collateral in an amount and form and written by insurers satisfactory to Dealer, with loss payable to Dealer or Dealer's assignee. If you fail to do so, Dealer or its assigns may, at their option, purchase such insurance, in which event you must pay the cost thereof to Dealer or its assigns on demand. However, any failure by Dealer to obtain and keep in force such insurance, after your failure to do so, shall not release you from any obligations or liability under this Agreement or any prior agreements. *Any insurance procured by Dealer under this section will not include insurance for property damage to others.*

**8. Additional Charges.** To the extent permitted by and subject to applicable law, you agree to pay the additional charges listed below. Failure to impose a fee or charge in certain instances does not constitute a waiver or prohibit the Dealer or any assignee from insisting on strict compliance with this Agreement by you at any time. **(a) Security Interest Charges.** You will be assessed a Security Interest Charge to cover (1) fees and charges paid to public officials for determining the existence of or for perfecting, releasing or satisfying the security interest you granted under this Agreement, (2) the costs payable for any outside service retained to provide searches and filings for perfecting and verifying the security interest and (3) in certain states (depending on state rate limits and rate calculations) we may also charge an amount to recoup a portion of our production and management costs related to maintaining security

C96_1_1_EECFD82I_20140921.C96

interest transactions, not to exceed the greater of $15.00 or the maximum amount allowed by law. **(b) Late Charges.** If you fail to make payments under this Agreement within 10 days after the date due, you may be assessed a Late Charge of the lesser of: $10.00 or the maximum permitted by applicable law. **(c) NSF Check Charges.** If your check is not honored by your bank because of non-sufficient funds, a closed account, or any other reason, you may be assessed an NSF Check Charge of the lesser of $25.00 or the maximum permitted by law. **(d) Legal Fees.** In addition to the full amount owed and any court costs, if any matter arising out of your default under this Agreement is referred to an attorney to collect the amount you owe or to repossess any Collateral, you agree to pay all costs and expenses (including all reasonable attorneys' fees and court costs) incurred by us in enforcing any of the terms of this Agreement or any of our rights against you. **(e) Extension fees.** In the event we provide you a contract term modification or payment extension at your request or as part of another type of payment arrangement, we reserve the right to charge a onetime extension fee of the lesser of $30.00 or the maximum amount allowed by law to offset a portion of our costs associated with such change. **(f) Electronic Payments.** If you choose to pay your payments via a phone payment or internet payment service we offer or designate, you agree to pay a fee for each such payment of the lesser of $10 or less, the maximum amount allowed by law. **(g) Other Considerations.** We reserve the right to charge additional fees as appropriate in the event the parties agree to other contract modifications.

**9.    Events of Default.** The occurrence of any one of the following events constitutes a default under this Agreement: (a) You do not pay at least the minimum payment due or you otherwise become delinquent on any other obligation to Dealer or to Snap-on Credit or its assigns, or if this Agreement is assigned, to such assignee; (b) you file or consent to the filing of bankruptcy or similar proceedings against you or you become insolvent, or your financial condition deteriorates significantly and it appears likely that you will not be able to repay Dealer for any reason; (c) you die, become imprisoned or are declared legally incompetent; (d) you at any time give Dealer information that is inaccurate, misleading or incomplete; or (e) you fail to comply with any terms or conditions of this Agreement.

**10.    Acceleration; Remedies.** Dealer, or if assigned, Dealer's assignee will have all the rights and remedies of a secured creditor under the Uniform Commercial Code and any other applicable laws. In addition, if any one of the events of default occurs, subject to any right you may have under applicable law to receive notice of and to cure such default, at Dealer's option Dealer may (a) declare the entire unpaid balance due under this Agreement immediately due and payable; and (b) repossess any Collateral in which Dealer still retains a security interest, and without limiting the foregoing, in the event this or any other transaction is assigned, any Collateral in which assignee still retains a security interest but only in the manner and to the extent permitted by applicable law. If Dealer resells any repossessed Collateral, Dealer agrees to pay you any surplus remaining (after deduction of the costs of repossession and sale and other costs, including reasonable attorneys' fees, to the extent permitted by law) and you agree to pay Dealer any deficiency in accordance with the Uniform Commercial Code and any other applicable laws. Dealer may accept late or partial payments or any payments marked as being payment in full or as being settlement for any dispute <u>without</u> prejudicing any of Dealer's rights under or in any way amending this Agreement. Dealer's failure or delay at any time to exercise any of Dealer's contract, legal or equitable rights shall not be deemed a waiver of these rights nor of the right to exercise Dealer's rights at any other time. If Snap-on Credit becomes the secured party under this Agreement, you agree that it is commercially reasonable for repossessed Collateral to be sold at public or private sales (in any state or county selected by Snap-on Credit) to dealers or others in lots or pieces (with or without the Collateral being physically present) at used tool prices. In the event you do not pay all amounts due under this contract and you are unreachable, or in the event of settlement or other events, IRS regulations may require Dealer or an assignee to file a 1099-C form for informational purposes showing the remaining unpaid amounts due under your original contract regardless of any dispute. The mere filing of such 1099-C does not itself constitute a forgiveness or adjustment of any amounts due. The term "Buyer" and "Dealer" as used in this Agreement also mean "debtor" and "secured party" respectively and include heirs, executors, or administrators, successors and permitted assigns of those parties.

**11.    Continuing Authority to Review.** You hereby authorize Dealer, or if assigned, Dealer's assignee, to obtain and review credit information about you from any credit reporting agency or any other source during the time this Agreement remains in effect or for six (6) months thereafter for purposes of increasing or modifying the amount of credit available to you, regardless of whether you submit a written application for same. .

**12.    Governing Law.** THIS AGREEMENT SHALL BE GOVERNED BY THE LAWS OF THE STATE OF ILLINOIS, THE ASSIGNEE'S STATE WITHOUT REGARD TO ITS CONFLICTS OF LAWS RULES OR PROVISIONS; PROVIDED, HOWEVER, IN THE EVENT THIS AGREEMENT OR ANY OF ITS PROVISIONS CANNOT BE ENFORCED PERSUANT TO ILLINOIS LAW, THEN THE LAWS OF THE STATE YOUR RESIDENCE SHALL GOVERN. If used in U.S. Territories or Commonwealths, this Agreement is not to be governed by the United Nations Convention on Contracts for the International Sale of Goods.

**13.    Jury Trial Waiver and Class Waiver.** YOU AND DEALER WAIVE ALL RIGHTS TO A TRIAL BY JURY.  YOU AGREE THAT YOU, THE BUYER, MAY ONLY BRING CLAIMS AGAINST DEALER OR ANY ASSIGNEE IN YOUR INDIVIDUAL CAPACITY AND NOT AS A PLAINTIFF OR CLASS MEMBER IN ANY PURPORTED CLASS OR REPRESENTATIVE PROCEEDING.

**14.    Transfer of Agreement.** Dealer reserves the right to sell or transfer this Agreement in whole or in part to another entity or person without prior notice to you. You, however, cannot transfer this Agreement or rights and obligations under this Agreement to any other entity or person.

**15.    Finance Charge Savings Clause.** – Notwithstanding any other provision in this Agreement, the aggregate finance charge rate utilized with respect to any of the obligations, including all charges or fees in connection therewith deemed includable in the finance charge shall not exceed the maximum lawful rate. If the finance charge under this Agreement at any time exceeds the maximum allowed by law, the outstanding amount of the Amount Financed shall bear finance charges at the maximum lawful rate until the total finance charges due and total amount financed are paid in full at such rate. The parties intend to conform to any applicable laws limiting finance charges on this type of Agreement. Accordingly, if Dealer contracts for, charges, or receives any consideration which constitutes interest in excess of maximum allowed by law, then any such excess shall be cancelled automatically and, if previously paid, shall at such Lender's option be applied to the outstanding amount remaining due hereunder or be refunded to Buyer

**16.    Severability; Entire Agreement.** If any term, provision or section of this Agreement is held void, voidable, invalid or unenforceable under any statute or court decision, or any governmental rule or regulation, the remainder of the Agreement shall remain effective, and any such ineffectiveness shall not affect the validity or enforceability of this Agreement in any other jurisdiction. This Agreement, any previous Credit Sale Contract, Add-On Riders and, any written addenda or riders hereto signed by both parties constitutes the entire agreement between the parties regarding the subject matter of this Agreement.
=====================================================================================================================

C96_1_1_EECFD82I_20140921.C96

**Notice to Maryland Residents.** Agreement is pursuant to Subtitle 10 (Credit Grantor Closed End Contract Provisions) of Md. Code Ann., Fin. Inst. §12-100 *et seq.*

**Notice to California Residents.** California Finance Lenders License No. 603-6880. For California residents, NSF Fees are limited to a maximum of $15.00 and Late Charges are limited to a maximum of $10.00

**Notice to District of Columbia Residents.** Seller certifies that the information contained in the contract complies with the District of Columbia Municipal Regulations, Title 16, Chapter 3.

**Notice to Connecticut Residents.** Attorneys' fees, which are permitted under Sections 8 and 10 of this Agreement, may not exceed 15% of the amount due plus court costs, and may only be collected or sought from Connecticut Residents when the contract is referred to an attorney, not a salaried employee of the holder of the contract, for collection. Late charges may not exceed the lesser of 5% of the past due installment (whether weekly or monthly) or $10.00.

**Notice to South Dakota Residents.** Any concerns regarding improprieties may be reported to the South Dakota Div. of Banking, 1601 N. Harrison Avenue, Suite 1, Pierre, SD 57501 or call 605-773-3421.

THIS DOCUMENT CONSISTS OF THE FINANCIAL TERMS ON PAGE 1, THE ADDITIONAL TERMS IN SECTIONS 1 THROUGH 16, THIS PAGE, AND ANY ATTACHED APPENDIX A

**IMPORTANT: READ BEFORE SIGNING. THE TERMS OF THIS AGREEMENT SHOULD BE READ CAREFULLY BECAUSE ONLY THOSE TERMS SET FORTH IN THIS AGREEMENT ARE ENFORCEABLE. NO OTHER TERMS OR ORAL PROMISES NOT CONTAINED IN THIS WRITTEN CONTRACT MAY BE LEGALLY ENFORCED. YOU MAY CHANGE THE TERMS OF THIS AGREEMENT ONLY BY ANOTHER WRITTEN AGREEMENT SIGNED BY YOU AND THE DEALER OR SNAP-ON TOOLS COMPANY LLC OR ITS AFFILIATE THROUGH THEIR SALES REPRESENATIVE (COLLECTIVELY REFERRED TO IN THIS AGREEMENT AS "DEALER") OR, IF ASSIGNED, WITH SNAP-ON CREDIT LLC ("SNAP-ON CREDIT") OR ITS ASSIGNS.**

**BUYER ACKNOWLEDGES RECEIPT OF PRODUCT AND A COPY OF THIS AGREEMENT**

<u>NOTICE TO BUYER</u>

DO NOT SIGN THIS CONTRACT (CREDIT SALE CONTRACT OR ADD-ON RIDER) BEFORE YOU READ IT OR IF IT CONTAINS ANY BLANK SPACES.

YOU ARE ENTITLED TO A COMPLETELY FILLED-IN COPY OF THE CONTRACT WHEN YOU SIGN IT.

UNDER THE LAW, YOU HAVE THE FOLLOWING RIGHTS, AMONG OTHERS:
(a) TO PAY OFF IN ADVANCE THE FULL AMOUNT DUE AND OBTAIN A PARTIAL REFUND OF ANY UNEARNED FINANCE CHARGE;
(b) TO REDEEM THE PROPERTY IF REPOSSESSED FOR A DEFAULT;
(c) TO REQUIRE, UNDER CERTAIN CONDITIONS, RESALE OF THE PROPERTY IF REPOSSESSED.

---

CIC Live Signature
KENNETH CASLER
05:02:04 PM 12-13-2017 (-05'00' GMT)
I, KENNETH CASLER, am signing to certify the authenticity of this document.

DEALER (SECURED PARTY)

**KENNETH CASLER**

64 Central Ave.

Pompton Lakes, NJ  07442

---

CIC Live Signature
RODNEY FAMA
05:02:12 PM 12-13-2017 (-05'00' GMT)
I, RODNEY FAMA, am signing this document to confirm that it has been reviewed.

BUYER (DEBTOR)

**RODNEY FAMA**

25 MANON BLVD.

MONROE, NJ  08831

---

Dealer assigns for value all right, title and interest in this Agreement to **Snap-on Credit LLC**, subject to acceptance by Snap-on Credit LLC. By providing the information on the unpaid balance due under any prior Agreement, Credit Sale Contract or any Add-On Rider(s) above for this transaction, Snap-on Credit LLC consents to the rescheduling of payments under the Credit Sale Contract and any Add-On Rider(s) previously assigned to Snap-on Credit LLC.
Snap-on Credit LLC - 950 Technology Way, Suite 301 - Libertyville, IL 60048 - (877)777-8455

**APPENDIX A**
**"Property Description"**

INVOICE DATE  12/13/2017             INVOICE NUMBER  12131725165        DEBTOR NUMBER

Dealer                              Buyer (Debtor)
KENNETH CASLER                     RODNEY FAMA

| | | | | | | |
|---|---|---|---|---|---|---|
| New Sale Subtotal | $ | 900.00 | Total R/A Transfer | $ | 0.00 | Shipping/Handling $ 0.00 |
| Tax Applied | $ | 61.88 | Total | $ | 961.88 | S/H Tax $ |
| Subtotal Including Tax | $ | 961.88 | | | | |

| Line | QTY | PRODUCT NO. SERIAL NO. | DESCRIPTION | EACH | COMMENTS | LC | LINE TOTAL |
|---|---|---|---|---|---|---|---|
| 1 | 1 | SOLUS UPDATE | 17.4 Solus Update | 999.00 | 99.00 | 10 | 900.00 |

C96_1_1_EECFD82I_20140921.C96



RETAIL INSTALLMENT CONTRACT
**CREDIT SALE CONTRACT OR ADD-ON RIDER**

This Credit Sale Contract or Add-on Rider ("Credit Sale Contract" or "Agreement") provides the terms that the buyer named below (referred to as "you" "your," and "Buyer") agrees to purchase the tools, equipment and other merchandise listed under "Property Description" or on attached invoice or appendix from an authorized Snap-on Tools Company LLC Franchisee, Authorized Dealer or Snap-on sales representative ("Dealer"). **BUYER REPRESENTS AND WARRANTS THAT THE PROPERTY PURCHASED UNDER THIS AGREEMENT IS TO BE USED PRIMARILY FOR COMMERCIAL OR BUSINESS PURPOSES AND NOT PRIMARILY FOR PERSONAL, FAMILY OR HOUSEHOLD PURPOSES.**

Dealer Number: 41440
Contract Date:  03/01/2017
Debtor Number:

SEE APPENDIX A, INVOICE NO. 03011719421 DATED 03/01/2017
FOR "PROPERTY DESCRIPTION"

## ITEMIZATION OF TOTAL CREDIT SALE PRICE
(Time Price Disclosure)

| | | | |
|---|---|---|---|
| 1. **Total cash sale price** (including tax, if any): | | | $ 1461.66 |
| 2. Amount of down payment and/or trade-in | | | |
| a. Down Payment | | $ 0.00 | |
| b. Trade-in (Description of trade-in items are on the attached invoice or Appendix A) | | $ 0.00 | |
| c. Total Down Payment (2a + 2b): | | | $ 0.00 |
| 3. Unpaid balance of total cash sale price: (Total cash sale price – total down payment) | | | $ 1461.66 |
| 4. Security Interest Charge | | | |
| a. Public officials and/or process costs: | | $ 0.00 | |
| b. Florida Document Stamp Tax: (Florida Residents Only) | | $ 0.00 | |
| c. Processing Fee: | | $ 0.00 | |
| d. Total Security Interest Charge (4a+4b+4c): | | | $ 0.00 |
| 5. Subtotal Principal Balance (new sale amount financed): (Unpaid balance of total cash sale price + Total Security Interest Charge) | | | $ 1461.66 |
| 6. Unpaid Balance: (Current net total amount due under prior Credit Sale Contracts, Add-on Rider(s), and/or prior Extended Credit Purchase Money Security Agreements) Beginning Date on 1st Credit Sale Contract 01/28/2013 | | | $ 4538.34 |
| 7. Other Charges (specify): | | | $ 0.00 |
| 8. New Amount Financed: (Subtotal Principal Balance + Unpaid Balance + Other charges) (Note: finance charges will not be charged on accrued but unpaid finance charges. See Section 2 below.) | | | $ 6000.00 |
| 9. Amount of Finance Charge (estimated, time price differential): | | | $ 2326.50 |
| 10. TOTAL OF PAYMENTS (estimated) (New Amount Financed + Amount of Finance Charge) | | | $ 8326.50 |
| 11. TOTAL CREDIT SALE PRICE (estimated) (Total of Payments + Total Down Payment) | | | $ 8326.50 |

## YOUR PAYMENT SCHEDULE WILL BE:

**Number of Payments** 182

**Payments Due Each**  WEEK

**Payment Amount**       $ 45.75

**1st Payment Due Date** 03/08/2017

**ANNUAL PERCENTAGE RATE**        19.80%
The cost of your credit as a yearly rate

**Amount Financed**        $ 6000.00
(sum of 5, 6, and 7) The amount of credit
provided to you or on your behalf

**FINANCE CHARGE**        $ 2326.50
The estimated dollar amount
the credit will cost you

**Total of Payments**       $ 8326.50
(sum of 8 and 9) The estimated amount
you will have paid after you make
all the payments on time

**Total Credit Sale Price**       $ 8326.50
(sum of 2c and 10)
The total estimated cost of
your purchase on credit

**Insurance:** Credit life insurance and credit disability insurance are <u>not</u> required to obtain credit. You may obtain property insurance from anyone you want who is acceptable to Dealer's assignee, Snap-on Credit LLC. Insurance, if any is included in this contract, does not provide coverage for personal liability or property damage caused to others.

**Security:** You are giving a security interest in (a) the goods or property purchased under this Agreement; and (b) if permitted by law all other goods or property bearing any Snap-on® trademark, or distributed by or through Snap-on Incorporated or an affiliate.

**Late charge:** If a payment is late, you will be charged $10.00 but no more than the maximum amount permitted under applicable law.

**NSF charge:** If you make a payment by check or debit and that payment is denied by your bank for insufficient funds or any other reason, then you will owe not only the payment but also an NSF charge of $25, but not more than the maximum amount permitted under applicable law.

**Prepayment:** If you pay off early, you will not pay a penalty and you may be entitled to a refund of part of the finance charge. Your finance charges are calculated based on your average daily outstanding balance due.

**Add-On Rider:** If you have an unpaid balance on any Prior Agreement, Credit Sale Contract or Add-on Rider(s), then this Agreement is also an Add-On Rider to the prior Agreement(s). See below for additional information about any Add-On Rider.

**SEE BELOW AND ON ADDITIONAL PAGES** for additional terms and information about nonpayment, default, repayment in full before the scheduled date, and prepayment refunds and penalties.

**IMPORTANT: READ BEFORE SIGNING. THE TERMS OF THIS AGREEMENT SHOULD BE READ CAREFULLY BECAUSE ONLY THOSE TERMS IN WRITING ARE ENFORCEABLE. NO OTHER TERMS OR ORAL PROMISES NOT CONTAINED IN THIS WRITTEN CONTRACT MAY BE LEGALLY ENFORCED. YOU MAY CHANGE THE TERMS OF THIS AGREEMENT ONLY BY ANOTHER WRITTEN AGREEMENT SIGNED BY YOU AND THE FRANCHISEE, DEALER OR SNAP-ON TOOLS COMPANY LLC OR ITS AFFILIATE THROUGH THEIR SALES REPRESENTATIVE (COLLECTIVELY REFERRED TO IN THIS AGREEMENT AS "DEALER") OR, IF ASSIGNED, WITH SNAP-ON CREDIT LLC ("SNAP-ON CREDIT") OR ITS ASSIGNS.**

C96_1_1_EECFD82I_20140921.C96

## ADDITIONAL TERMS

**1. Offer of Cash Sale or Payment Over Time.** Dealer has offered you a choice of buying the Property for a stated cash price payable immediately or buying the Property for a Total Credit Sale Price which permits you to purchase the Property now, but pay in installments over an extended period of time. The Total Credit Sale Price will be more or less, depending on when you pay and the amount you pay each time, and the Total Credit Sale Price is more than the cash sale price because it includes a finance charge to compensate the Dealer for waiting before collecting the full purchase price.

**2. Payment Terms.** *You agree to pay to Dealer or Dealer's assignee the Amount Financed plus finance charges applied to the outstanding balance thereof at the annual percentage rate set forth on page one during the time any balance under this Agreement remains unpaid. You agree to make equal weekly payments (or such other periodic payment schedule if specifically agreed in writing) (In cash, check or money order) as set forth under "Your payment schedule will be" on the first page of this Agreement until all amounts due under this Agreement are paid (provided that the final payment shall be in the amount of the unpaid balance of the Amount Financed plus accrued but unpaid finance charges).* You may prepay the balance of the Amount Financed without penalty at any time; and doing so will reduce the amount of finance charge you would otherwise be required to pay. Unless you prepay the entire outstanding balance of the Amount Financed, however, the amount you are required to pay each week will remain the same, with any adjustments being reflected in the last payment and in the number of payments. If you make an overpayment when you prepay the entire outstanding balance of the Amount Financed, we will not be required to refund amounts less than $1.00. If you pay the amount due under this Agreement late, the finance charge will continue to accrue monthly on the unpaid average daily balance. In that event, your last payment may be increased to pay the full balance due. Dealer may offer a deferred first payment due date; however, the estimated Finance Charge and the number and amount of payments on the first page of this Agreement are based on payments beginning immediately after the date of this Agreement. If you elect to defer your payments, you will not be charged late fees, but finance charges will continue to accrue on the unpaid balance, and you will owe additional finance charges that may not be reflected in the estimate on the first page. "Same As Cash" benefit: this phrase means that although finance charges apply and begin accrual at contract inception, provided you pay the entire Unpaid Balance above within ninety (90) days in good funds from the contract date and are not otherwise in default, the finance charge will be waived and any amounts you paid representing finance charges will be refunded and applied against your account or returned to you; some promotions may feature alternate Same as Cash periods. You and your Dealer may agree to transfer to the Amount Financed any balance you may owe Dealer as a result of prior purchases pursuant to your truck account or revolving account ("RA") credit that Dealer has extended to you. You represent, warrant and agree that: (a) you voluntarily entered into this contract with Dealer for the full amount of the Amount Financed plus estimated time finance charges accruing on it instead of paying in full on the sale date; (b) all information supplied and statements made by you in any application for credit before or at the same time as the execution of this Agreement are and will be correct, complete and genuine, (c) you only owe the dealer for any prior purchases being transferred from RA and have no other liens and encumbrances on the RA tools and equipment being pledged as security under this Agreement, and (d) any items used as a trade-in are free of all liens or other encumbrances, are fully paid for, and you possess good and marketable title to it. The Unpaid Balance under any prior Agreement, including accrued but unpaid finance charges, is used to calculate your payment amount; however, you will pay finance charges only on the outstanding principal balance (cash price) of the Amount Financed at the contract rate until paid in full.

**3. Allocation of Payments.** Your payments will be allocated first to any additional charges, costs and expenses, and then to any finance charge in the order it is incurred, and then to the payment of the cash price of each purchase in the order in which the purchase was made under prior agreements (Credit Sale Contract or Add-On Riders) first and then this Agreement, with the payments being applied to the oldest purchase first; lowest-priced same day purchases paid off first. Down payments and trade-ins will be applied to the cash price of all items purchased on the same day, credited based upon the lowest-priced purchases first.

**4.** If this is an ADD-ON RIDER: **You agree to purchase the additional Property listed in the "Property Description" referred to above, Appendix A, any attachment(s) and any invoice(s) and to pay for such Property as well as the Property purchased under the prior Agreement(s) according to the payment terms listed in this Agreement which modifies the prior agreement terms. If the prior Agreement(s) to which this Add-On Rider relates has/have been assigned to Snap-on Credit LLC ("Snap-on Credit"), then this Add-On Rider is also assigned to Snap-on Credit subject to its acceptance) and all references to Dealer are to Snap-on Credit as Dealer's Assignee with respect to subsequent payments for items acquired under any contract. To the extent that You have committed or engaged in the commission of an Event of Default, then in consideration of Seller's allowing you to enter into this ADD-ON RIDER, and in consideration of other good and valuable consideration, the sufficiency and receipt of which You hereby acknowledge, to the extent allowed by law You waive, forfeit, and agree to forever forego any and all claims and causes of action --past, present or future -- against Seller and its successors and assigns, including but not limited to Snap-on Credit LLC." You also acknowledge that You actively and with full understanding participated in negotiating the material terms, including but not limited to this Paragraph 4, this ADD-ON RIDER after full consultation with, and review by, Your counsel.**

**5. Grant of Security Interest.** As security for your obligations under this Agreement, or any other agreement with Dealer or Dealer's assignee, you hereby grant Dealer a purchase money security interest in each item of Property you purchase under this Agreement until that item is paid for. As further security for your obligations under this Agreement, in all states except where prohibited by applicable law for agreements of this type, you hereby grant Dealer a security interest in each other item of tools, goods and equipment previously purchased or hereafter acquired from a Snap-on Dealer, and any and all goods and equipment manufactured or distributed by Snap-on Incorporated or bearing Snap-on Incorporated trademarks or logos, together with all proceeds (including insurance proceeds), accessions, attachments, additions, substitutions and replacements to and of such items (the foregoing and the Property are collectively referred to as "Collateral"). If this Agreement is assigned to Snap-on Credit pursuant to Section 6 below, and if the Amount Financed includes a transfer of RA balance owed to Dealer, then Dealer hereby assigns to Snap-on Credit any purchase money security interest that Dealer may have in any merchandise reflected in the RA balance so transferred. In such case, Snap-on Credit shall continue to hold a purchase money security interest in such merchandise after such transfer. You agree not to remove any Collateral from the state where the original sale was made without the written consent of Dealer or Snap-on Credit, if this Agreement is assigned to Snap-on Credit. You agree not to sell, dispose of or encumber any Collateral until your entire balance due is paid in full. To the extent permitted by and subject to applicable law, you agree and hereby grant to Dealer and Snap-on Credit or its agent or assigns the power of attorney and right to sign on your behalf and file or record such financing statements or other documents as may be necessary to perfect or maintain the security interest granted by you under this Agreement.

**6. Assignment by Dealer.** (a) Dealer may assign this Agreement for value to **Snap-on Credit LLC, 950 Technology Way, Suite 301, Libertyville, IL 60048.** If Dealer assigns this Agreement to Snap-on Credit, then after such assignment (1) Snap-on Credit or its assigns shall have all the rights and remedies of Dealer under this Agreement and all of your obligations, agreements, representations and warranties shall be deemed to have been made to Snap-on Credit with the same effect as if Snap-on Credit were an original party to this Agreement; and (2) Dealer will not have any power or authority to exercise any such rights or remedies, give any consents under Section 5 or change or modify this Agreement or any related document in any way. (b) If this Agreement is assigned to Snap-on Credit, you agree to deliver your payments to Dealer or directly to Snap-on Credit. *The Dealer is not Snap-on Credit's agent for any purpose.* If you make payments to your Dealer, the Dealer will be acting as your agent. In that capacity, the Dealer has agreed with Snap-on Credit to remit payments under this Agreement to Snap-on Credit on a regular basis. You will be credited with payment on the date Snap-on Credit receives payment from the Dealer. Payments received by Snap-on Credit after 10:00 a.m. CST will be credited on the next business day. Snap-on Credit will credit you and waive additional finance charges and late charges on any installment regardless of when payment is received from the dealer *if you have proof of your timely payment to the Dealer* (such as a valid receipt or canceled check). Alternatively, you may make any payments (by debit, check or money order payable to Snap-on Credit, and not cash) directly to Snap-on Credit at the address provided to you by Snap-on Credit, in which case you will be credited with payment on the date Snap-on Credit receives the payment. Snap-on Credit may require you to make payments directly to it. Snap-on Credit's business days are Monday through Friday, excluding holidays.

**7. Property Insurance.** So long as Dealer or its assigns has a security interest in any Collateral, you will obtain and keep in force fire and other casualty Insurance on the Collateral in an amount and form and written by insurers satisfactory to Dealer, with loss payable to Dealer or Dealer's assignee. If you fail to do so, Dealer or its assigns may, at their option, purchase such insurance, in which event you must pay the cost thereof to Dealer or its assigns on demand. However, any failure by Dealer to obtain and keep in force such insurance, after your failure to do so, shall not release you from any obligations or liability under this Agreement or any prior agreements. *Any insurance procured by Dealer under this section will not include insurance for property damage to others.*

**8. Additional Charges.** To the extent permitted by and subject to applicable law, you agree to pay the additional charges listed below. Failure to impose a fee or charge in certain instances does not constitute a waiver or prohibit the Dealer or any assignee from insisting on strict compliance with this Agreement by you at any time. **(a) Security Interest Charges.** You will be assessed a Security Interest Charge to cover (1) fees and charges paid to public officials for determining the existence of or for perfecting, releasing or satisfying the security interest you granted under this Agreement, (2) the costs payable for any outside service retained to provide searches and filings for perfecting and verifying the security interest and (3) in certain states (depending on state rate limits and rate calculations) we may also charge an amount to recoup a portion of our production and management costs related to maintaining security

interest transactions, not to exceed the greater of $15.00 or the maximum amount allowed by law. **(b) Late Charges.** If you fail to make payments under this Agreement within 10 days after the date due, you may be assessed a Late Charge of the lesser of: $10.00 or the maximum permitted by applicable law. **(c) NSF Check Charges.** If your check is not honored by your bank because of non-sufficient funds, a closed account, or any other reason, you may be assessed an NSF Check Charge of the lesser of $25.00 or the maximum permitted by law. **(d) Legal Fees.** In addition to the full amount owed and any court costs, if any matter arising out of your default under this Agreement is referred to an attorney to collect the amount you owe or to repossess any Collateral, you agree to pay all costs and expenses (including all reasonable attorneys' fees and court costs) incurred by us in enforcing any of the terms of this Agreement or any of our rights against you. **(e) Extension fees.** In the event we provide you a contract term modification or payment extension at your request or as part of another type of payment arrangement, we reserve the right to charge a onetime extension fee of the lesser of $30.00 or the maximum amount allowed by law to offset a portion of our costs associated with such change. **(f) Electronic Payments.** If you choose to pay your payments via a phone payment or internet payment service we offer or designate, you agree to pay a fee for each such payment of the lesser of $10 or less, the maximum amount allowed by law. **(g) Other Considerations.** We reserve the right to charge additional fees as appropriate in the event the parties agree to other contract modifications.

**9.    Events of Default.** The occurrence of any one of the following events constitutes a default under this Agreement: (a) You do not pay at least the minimum payment due or you otherwise become delinquent on any other obligation to Dealer or to Snap-on Credit or its assigns, or if this Agreement is assigned, to such assignee; (b) you file or consent to the filing of bankruptcy or similar proceedings against you or you become insolvent, or your financial condition deteriorates significantly and it appears likely that you will not be able to repay Dealer for any reason; (c) you die, become imprisoned or are declared legally incompetent; (d) you at any time give Dealer information that is inaccurate, misleading or incomplete; or (e) you fail to comply with any terms or conditions of this Agreement.

**10.    Acceleration; Remedies.** Dealer, or if assigned, Dealer's assignee will have all the rights and remedies of a secured creditor under the Uniform Commercial Code and any other applicable laws. In addition, if any one of the events of default occurs, subject to any right you may have under applicable law to receive notice of and to cure such default, at Dealer's option Dealer may (a) declare the entire unpaid balance due under this Agreement immediately due and payable; and (b) repossess any Collateral in which Dealer still retains a security interest, and without limiting the foregoing, in the event this or any other transaction is assigned, any Collateral in which assignee still retains a security interest but only in the manner and to the extent permitted by applicable law. If Dealer resells any repossessed Collateral, Dealer agrees to pay you any surplus remaining (after deduction of the costs of repossession and sale and other costs, including reasonable attorneys' fees, to the extent permitted by law) and you agree to pay Dealer any deficiency in accordance with the Uniform Commercial Code and any other applicable laws. Dealer may accept late or partial payments or any payments marked as being payment in full or as being settlement for any dispute without prejudicing any of Dealer's rights under or in any way amending this Agreement. Dealer's failure or delay at any time to exercise any of Dealer's contract, legal or equitable rights shall not be deemed a waiver of these rights nor of the right to exercise Dealer's rights at any other time. If Snap-on Credit becomes the secured party under this Agreement, you agree that it is commercially reasonable for repossessed Collateral to be sold at public or private sales (in any state or county selected by Snap-on Credit) to dealers or others in lots or pieces (with or without the Collateral being physically present) at used tool prices. In the event you do not pay all amounts due under this contract and you are unreachable, or in the event of settlement or other events, IRS regulations may require Dealer or an assignee to file a 1099-C form for informational purposes showing the remaining unpaid amounts due under your original contract regardless of any dispute. The mere filing of such 1099-C does not itself constitute a forgiveness or adjustment of any amounts due. The term "Buyer" and "Dealer" as used in this Agreement also mean "debtor" and "secured party" respectively and include heirs, executors, or administrators, successors and permitted assigns of those parties.

**11.    Continuing Authority to Review.** You hereby authorize Dealer, or if assigned, Dealer's assignee, to obtain and review credit information about you from any credit reporting agency or any other source during the time this Agreement remains in effect or for six (6) months thereafter for purposes of increasing or modifying the amount of credit available to you, regardless of whether you submit a written application for same. .

**12.    Governing Law.** THIS AGREEMENT SHALL BE GOVERNED BY THE LAWS OF THE STATE OF ILLINOIS, THE ASSIGNEE'S STATE WITHOUT REGARD TO ITS CONFLICTS OF LAWS RULES OR PROVISIONS; PROVIDED, HOWEVER, IN THE EVENT THIS AGREEMENT OR ANY OF ITS PROVISIONS CANNOT BE ENFORCED PERSUANT TO ILLINOIS LAW, THEN THE LAWS OF THE STATE YOUR RESIDENCE SHALL GOVERN. If used in U.S. Territories or Commonwealths, this Agreement is not to be governed by the United Nations Convention on Contracts for the International Sale of Goods.

**13.    Jury Trial Waiver and Class Waiver.** YOU AND DEALER WAIVE ALL RIGHTS TO A TRIAL BY JURY.  YOU AGREE THAT YOU, THE BUYER, MAY ONLY BRING CLAIMS AGAINST DEALER OR ANY ASSIGNEE IN YOUR INDIVIDUAL CAPACITY AND NOT AS A PLAINTIFF OR CLASS MEMBER IN ANY PURPORTED CLASS OR REPRESENTATIVE PROCEEDING.

**14.    Transfer of Agreement.** Dealer reserves the right to sell or transfer this Agreement in whole or in part to another entity or person without prior notice to you. You, however, cannot transfer this Agreement or rights and obligations under this Agreement to any other entity or person.

**15.    Finance Charge Savings Clause.** – Notwithstanding any other provision in this Agreement, the aggregate finance charge rate utilized with respect to any of the obligations, including all charges or fees in connection therewith deemed includable in the finance charge shall not exceed the maximum lawful rate. If the finance charge under this Agreement at any time exceeds the maximum allowed by law, the outstanding amount of the Amount Financed shall bear finance charges at the maximum lawful rate until the total finance charges due and total amount financed are paid in full at such rate.  The parties intend to conform to any applicable laws limiting finance charges on this type of Agreement. Accordingly, if Dealer contracts for, charges, or receives any consideration which constitutes interest in excess of maximum allowed by law, then any such excess shall be cancelled automatically and, if previously paid, shall at such Lender's option be applied to the outstanding amount remaining due hereunder or be refunded to Buyer

**16.    Severability; Entire Agreement.** If any term, provision or section of this Agreement is held void, voidable, invalid or unenforceable under any statute or court decision, or any governmental rule or regulation, the remainder of the Agreement shall remain effective, and any such ineffectiveness shall not affect the validity or enforceability of this Agreement in any other jurisdiction. This Agreement, any previous Credit Sale Contract, Add-On Riders and, any written addenda or riders hereto signed by both parties constitutes the entire agreement between the parties regarding the subject matter of this Agreement.

===============================================================================================================

C96_1_1_EECFD82I_20140921.C96

**Notice to Maryland Residents.** Agreement is pursuant to Subtitle 10 (Credit Grantor Closed End Contract Provisions) of Md. Code Ann., Fin. Inst. §12-100 *et seq.*

**Notice to California Residents.** California Finance Lenders License No. 603-6880.  For California residents, NSF Fees are limited to a maximum of $15.00 and Late Charges are limited to a maximum of $10.00

**Notice to District of Columbia Residents.** Seller certifies that the information contained in the contract complies with the District of Columbia Municipal Regulations, Title 16, Chapter 3.

**Notice to Connecticut Residents.** Attorneys' fees, which are permitted under Sections 8 and 10 of this Agreement, may not exceed 15% of the amount due plus court costs, and may only be collected or sought from Connecticut Residents when the contract is referred to an attorney, not a salaried employee of the holder of the contract, for collection. Late charges may not exceed the lesser of 5% of the past due installment (whether weekly or monthly) or $10.00.

**Notice to South Dakota Residents.** Any concerns regarding improprieties may be reported to the South Dakota Div. of Banking, 1601 N. Harrison Avenue, Suite 1, Pierre, SD 57501 or call 605-773-3421.

THIS DOCUMENT CONSISTS OF THE FINANCIAL TERMS ON PAGE 1, THE ADDITIONAL TERMS IN SECTIONS 1 THROUGH 16, THIS PAGE, AND ANY ATTACHED APPENDIX A

IMPORTANT: READ BEFORE SIGNING. THE TERMS OF THIS AGREEMENT SHOULD BE READ CAREFULLY BECAUSE ONLY THOSE TERMS SET FORTHIN THIS AGREEMENT ARE ENFORCEABLE. NO OTHER TERMS OR ORAL PROMISES NOT CONTAINED IN THIS WRITTEN CONTRACT MAY BE LEGALLY ENFORCED. YOU MAY CHANGE THE TERMS OF THIS AGREEMENT ONLY BY ANOTHER WRITTEN AGREEMENT SIGNED BY YOU AND THE DEALER OR SNAP-ON TOOLS COMPANY LLC OR ITS AFFILIATE THROUGH THEIR SALES REPRESENATIVE (COLLECTIVELY REFERRED TO IN THIS AGREEMENT AS "DEALER") OR, IF ASSIGNED, WITH SNAP-ON CREDIT LLC ("SNAP-ON CREDIT") OR ITS ASSIGNS.

**BUYER ACKNOWLEDGES RECEIPT OF PRODUCT AND A COPY OF THIS AGREEMENT**

### NOTICE TO BUYER

DO NOT SIGN THIS CONTRACT (CREDIT SALE CONTRACT OR ADD-ON RIDER) BEFORE YOU READ IT OR IF IT CONTAINS ANY BLANK SPACES.

YOU ARE ENTITLED TO A COMPLETELY FILLED-IN COPY OF THE CONTRACT WHEN YOU SIGN IT.

UNDER THE LAW, YOU HAVE THE FOLLOWING RIGHTS, AMONG OTHERS:
   (a) TO PAY OFF IN ADVANCE THE FULL AMOUNT DUE AND OBTAIN A PARTIAL REFUND OF ANY UNEARNED
      FINANCE CHARGE;
   (b) TO REDEEM THE PROPERTY IF REPOSSESSED FOR A DEFAULT;
   (c) TO REQUIRE, UNDER CERTAIN CONDITIONS, RESALE OF THE PROPERTY IF REPOSSESSED.

| | |
|---|---|
| CIC Live Signature<br>KENNETH CASLER<br>03:44:10 PM 03-01-2017 (-05'00' GMT)<br>I, KENNETH CASLER, am signing to certify the authenticity of this document. | CIC Live Signature<br>RODNEY FAMA<br>03:44:19 PM 03-01-2017 (-05'00' GMT)<br>I, RODNEY FAMA, am signing this document to confirm that it has been reviewed. |
| DEALER (SECURED PARTY) | BUYER (DEBTOR) |
| KENNETH CASLER | RODNEY FAMA |
| 64 Central Ave. | 25 MANON BLVD. |
| Pompton Lakes, NJ  07442 | MONROE, NJ  08831 |

Dealer assigns for value all right, title and interest in this Agreement to **Snap-on Credit LLC**, subject to acceptance by Snap-on Credit LLC. By providing the information on the unpaid balance due under any prior Agreement, Credit Sale Contract or any Add-On Rider(s) above for this transaction, Snap-on Credit LLC consents to the rescheduling of payments under the Credit Sale Contract and any Add-On Rider(s) previously assigned to Snap-on Credit LLC.

Snap-on Credit LLC - 950 Technology Way, Suite 301 - Libertyville, IL 60048 - (877)777-8455

C96_1_1_EECFD82I_20140921.C96

**APPENDIX A**
**"Property Description"**

INVOICE DATE  03/01/2017                 INVOICE NUMBER   03011719421          DEBTOR NUMBER

Dealer                                   Buyer (Debtor)
**KENNETH CASLER**                       **RODNEY FAMA**

New Sale Subtotal        $    30.00      Total R/A Transfer  $  1429.60    Shipping/Handling $      0.00

Tax Applied              $     2.06      Total               $ 1,461.66    S/H Tax           $

Subtotal Including Tax   $    32.06

| Line | QTY | PRODUCT NO. SERIAL NO. | DESCRIPTION | EACH | COMMENTS | LC | LINE TOTAL |
|------|-----|------------------------|-------------|------|----------|----|-----------|
| 1 | 1 | SIM240 | 1/2DR 6PT 3/4" DP IMP SKT | 30.00 | 0.00 | 0 | 30.00 |
| 2 | 1 | EECT900 | MULTI-PROBE ULTRA | 320.99 | 0.00 | 7 | 320.99 |
| 3 | 1 | HBBD40 | DEAD/BLW 40OZ BPEEN SFT/GR HM | 110.00 | 0.00 | 7 | 110.00 |
| 4 | 2 | SOEXM10 | 12PT 10MM F/DR+ STD COMWR | 32.50 | 0.00 | 7 | 65.00 |
| 5 | 1 | SOEXM18 | 12PT 18MM F/DR+ STD COMWR | 46.00 | 0.00 | 7 | 46.00 |
| 6 | 1 | CT8850 14420459 | 18v Li-ION 1/2" DRIVE IMPACT | 699.95 | 0.00 | 7 | 699.95 |
| 7 | 1 | CT6818 15140102 | 1/2" 18v Ni-CAD IMPACT | 559.95 | 0.00 | 7 | 559.95 |

C96_1_1_EECFD82I_20140921.C96



RETAIL INSTALLMENT CONTRACT
**CREDIT SALE CONTRACT OR ADD-ON RIDER**

This Credit Sale Contract or Add-On Rider ("Credit Sale Contract" or "Agreement") provides the terms that the buyer named below (referred to as "you" "your," or "Buyer") agrees to purchase the tools, equipment and other merchandise listed under "Property Description" or on attached invoice or appendix from an authorized Snap-on Tools Company LLC Franchisee, Authorized Dealer or Snap-on sales representative ("Dealer"). **BUYER REPRESENTS AND WARRANTS THAT THE PROPERTY PURCHASED UNDER THIS AGREEMENT IS TO BE USED PRIMARILY FOR COMMERCIAL OR BUSINESS PURPOSES AND NOT PRIMARILY FOR PERSONAL, FAMILY OR HOUSEHOLD PURPOSES.**

SEE APPENDIX A, INVOICE NO. 01031718272 DATED 01/03/2017
FOR "PROPERTY DESCRIPTION"

Dealer Number: 41440
Contract Date: 01/03/2017
Debtor Number:

<u>**ITEMIZATION OF TOTAL CREDIT SALE PRICE**</u>
(Time Price Disclosure)

| | | |
|---|---|---|
| 1. **Total cash sale price** (including tax, if any): | | $ 586.74 |
| 2. Amount of down payment and/or trade-in | | |
|    a.  Down Payment | $ 0.00 | |
|    b.  Trade-in (Description of trade-in items | $ 0.00 | |
|       are on the attached invoice or Appendix A) | | |
|    c.  Total Down Payment (2a + 2b): | | $ 0.00 |
| 3. Unpaid balance of total cash sale price: | | $ 586.74 |
|    (Total cash sale price — total down payment) | | |
| 4. Security Interest Charge | | |
|    a.  Public officials and/or process costs: | $ 0.00 | |
|    b.  Florida Document Stamp Tax: | $ 0.00 | |
|       (Florida Residents Only) | | |
|    c.  Processing Fee: | $ 0.00 | |
|    d.  Total Security Interest Charge (4a+4b+4c) | | $ 0.00 |
| 5. Subtotal Principal Balance (new sale amount financed): | | $ 586.74 |
|    (Unpaid balance of total cash sale price + Total | | |
|    Security Interest Charge) | | |
| 6. Unpaid Balance: | | $ 4091.05 |
|    (Current net total amount due under prior Credit Sale Contracts, | | |
|    Add-on Rider(s), and/or prior Extended Credit Purchase | | |
|    Money Security Agreements) | | |
|    Beginning Date on 1ˢᵗ Credit Sale Contract 01/28/2013 | | |
| 7. Other Charges (specify): | | $ 0.00 |
| 8. New Amount Financed: | | $ 4677.79 |
|    (Subtotal Principal Balance + Unpaid Balance + | | |
|    Other charges) (Note: finance charges will not be charged | | |
|    on accrued but unpaid finance charges. See Section 2 below.) | | |
| 9. Amount of Finance Charge (estimated, time price differential): | | $ 1814.15 |
| 10. TOTAL OF PAYMENTS (estimated) | | $ 6491.94 |
|     (New Amount Financed + Amount of Finance Charge) | | |
| 11. TOTAL CREDIT SALE PRICE (estimated) | | $ 6491.94 |
|     (Total of Payments + Total Down Payment) | | |

<u>**YOUR PAYMENT SCHEDULE WILL BE:**</u>

**Number of Payments** 182

**Payments Due Each** WEEK

**Payment Amount** $ 35.67

**1ˢᵗ Payment Due Date** 01/10/2017

**ANNUAL PERCENTAGE RATE**    19.80%
The cost of your credit as a yearly rate

**Amount Financed**    $ 4677.79
(sum of 5, 6, and 7) The amount of credit
provided to you or on your behalf:

**FINANCE CHARGE**    $ 1814.15
The estimated dollar amount
the credit will cost you

**Total of Payments**    $ 6491.94
(sum of 8 and 9) The estimated amount
you will have paid after you make
all the payments on time

**Total Credit Sale Price**    $ 6491.94
(sum of 2c and 10)
The total estimated cost of
your purchase on credit

<u>Insurance:</u> Credit life insurance and credit disability insurance are <u>not</u> required to obtain credit. You may obtain property insurance from anyone you want who is acceptable to Dealer's assignee, Snap-on Credit LLC. Insurance, if any is included in this contract, does not provide coverage for personal liability or property damage caused to others.

<u>Security:</u> You are giving a security interest in (a) the goods or property purchased under this Agreement; and (b) if permitted by law all other goods or property bearing any Snap-on® trademark, or distributed by or through Snap-on Incorporated or an affiliate.

<u>Late charge:</u> If a payment is late, you will be charged $10.00 but no more than the maximum permitted under applicable law.

<u>NSF charge:</u> If you make a payment by check or debit and that payment is denied by your bank for insufficient funds or any other reason, then you will owe not only the payment but also an NSF charge of $25, but not more than the maximum amount permitted under applicable law.

<u>Prepayment:</u> If you pay off early, you will not pay a penalty and you may be entitled to a refund of part of the finance charge. Your finance charges are calculated based on your average daily outstanding balance due.

<u>Add-On Rider:</u> If you have an unpaid balance on any Prior Agreement, Credit Sale Contract or Add-On Rider(s), then this Agreement is also an Add-On Rider to the prior Agreement(s). See below for additional information about any Add-On Rider.

<u>SEE BELOW AND ON ADDITIONAL PAGES</u> for additional terms and information about nonpayment, default, repayment in full before the scheduled date, and prepayment refunds and penalties.

**IMPORTANT: READ BEFORE SIGNING. THE TERMS OF THIS AGREEMENT SHOULD BE READ CAREFULLY BECAUSE ONLY THOSE TERMS IN WRITING ARE ENFORCEABLE. NO OTHER TERMS OR ORAL PROMISES NOT CONTAINED IN THIS WRITTEN CONTRACT MAY BE LEGALLY ENFORCED. YOU MAY CHANGE THE TERMS OF THIS AGREEMENT ONLY BY ANOTHER WRITTEN AGREEMENT SIGNED BY YOU AND THE FRANCHISEE, DEALER OR SNAP-ON TOOLS COMPANY LLC OR ITS AFFILIATE THROUGH THEIR SALES REPRESENTATIVE (COLLECTIVELY REFERRED TO IN THIS AGREEMENT AS "DEALER") OR, IF ASSIGNED, WITH SNAP-ON CREDIT LLC ("SNAP-ON CREDIT") OR ITS ASSIGNS.**

C96_1_1_EECFD82I_20140921.C96

## ADDITIONAL TERMS

**1. Offer of Cash Sale or Payment Over Time.** Dealer has offered you a choice of buying the Property for a stated cash price payable immediately or buying the Property for a Total Credit Sale Price which permits you to purchase the Property now, but pay in installments over an extended period of time. The Total Credit Sale Price will be more or less, depending on when you pay and the amount you pay each time, and the Total Credit Sale Price is more than the cash sale price because it includes a finance charge to compensate the Dealer for waiting before collecting the full purchase price.

**2. Payment Terms.** *You agree to pay to Dealer or Dealer's assignee the Amount Financed plus finance charges applied to the outstanding balance thereof at the annual percentage rate set forth on page one during the time any balance under this Agreement remains unpaid.* You agree to make equal *weekly payments (or such other periodic payment schedule if specifically agreed in writing) (in cash, check or money order) as set forth under "Your payment schedule will be" on the first page of this Agreement until all amounts due under this Agreement are paid (provided that the final payment shall be in the amount of the unpaid balance of the Amount Financed plus accrued but unpaid finance charges).* You may prepay the balance of the Amount Financed without penalty at any time; and doing so will reduce the amount of finance charge you would otherwise be required to pay. Unless you prepay the entire outstanding balance of the Amount Financed, however, the amount you are required to pay each week will remain the same, with any adjustments being reflected in the last payment and in the number of payments. If you make an overpayment when you prepay the entire outstanding balance of the Amount Financed, we will not be required to refund amounts less than $1.00. If you pay the amount due under this Agreement late, the finance charge will continue to accrue monthly on the unpaid average daily balance. In that event, your last payment may be increased to pay the full balance due. Dealer may offer a deferred first payment due date; however, the estimated Finance Charge and the number and amount of payments on the first page of this Agreement are based on payments beginning immediately after the date of this Agreement. If you elect to defer your payments, you will not be charged late fees, but finance charges will continue to accrue on the unpaid balance, and you will owe additional finance charges that may not be reflected in the estimate on the first page. "Same As Cash" benefit: this phrase means that although finance charges apply and begin accrual at contract inception, provided you pay the entire Unpaid Balance above within ninety (90) days in good funds from the contract date and are not otherwise in default, the finance charge will be waived and any amounts you paid representing finance charges will be refunded and applied against your account or returned to you; some promotions may feature alternate Same as Cash periods. You and your Dealer may agree to transfer to the Amount Financed any balance you may owe Dealer as a result of prior purchases pursuant to your truck account or revolving account ("RA") credit that Dealer has extended to you. You represent, warrant and agree that: (a) you voluntarily entered into this contract with Dealer for the full amount of the Amount Financed plus estimated time finance charges accruing on it instead of paying in full on the sale date; (b) all information supplied and statements made by you in any application for credit before or at the same time as the execution of this Agreement are and will be correct, complete and genuine, (c) you only owe the dealer for any prior purchases being transferred from RA and have no other liens and encumbrances on the RA tools and equipment being pledged as security under this Agreement, and (d) any items used as a trade-in are free of all liens or other encumbrances, are fully paid for, and you possess good and marketable title to it. The Unpaid Balance under any prior Agreement, including accrued but unpaid finance charges, is used to calculate your payment amount; however, you will pay finance charges only on the outstanding principal balance (cash price) of the Amount Financed at the contract rate until paid in full.

**3. Allocation of Payments.** Your payments will be allocated first to any additional charges, costs and expenses, and then to any finance charge in the order it is incurred, and then to the payment of the cash price of each purchase in the order in which the purchase was made under prior agreements (Credit Sale Contract or Add-On Riders) first and then this Agreement, with the payments being applied to the oldest purchase first; lowest-priced same day purchases paid off first. Down payments and trade-ins will be applied to the cash price of all items purchased on the same day, credited based upon the lowest-priced purchases first.

**4.** If this is an ADD-ON RIDER: **You agree to purchase the additional Property listed in the "Property Description" referred to above, Appendix A, any attachment(s) and any invoice(s) and to pay for such Property as well as the Property purchased under the prior Agreement(s) according to the payment terms listed in this Agreement which modifies the prior agreement terms. If the prior Agreement(s) to which this Add-On Rider relates has/have been assigned to Snap-on Credit LLC ("Snap-on Credit"), then this Add-On Rider is also assigned to Snap-on Credit subject to its acceptance) and all references to Dealer are to Snap-on Credit as Dealer's Assignee with respect to subsequent payments for items acquired under any contract. To the extent that You have committed or engaged in the commission of an Event of Default, then in consideration of Seller's allowing you to enter into this ADD-ON RIDER, and in consideration of other good and valuable consideration, the sufficiency and receipt of which You hereby acknowledge, to the extent allowed by law You waive, forfeit, and agree to forever forego any and all claims and causes of action --past, present or future -- against Seller and its successors and assigns, including but not limited to Snap-on Credit LLC." You also acknowledge that You actively and with full understanding participated in negotiating the material terms, including but not limited to this Paragraph 4, this ADD-ON RIDER after full consultation with, and review by, Your counsel.**

**5. Grant of Security Interest.** As security for your obligations under this Agreement, or any other agreement with Dealer or Dealer's assignee, you hereby grant Dealer a purchase money security interest in each item of Property you purchase under this Agreement until that item is paid for. As further security for your obligations under this Agreement, in all states except where prohibited by applicable law for agreements of this type, you hereby grant Dealer a security interest in each other item of tools, goods and equipment previously purchased or hereafter acquired from a Snap-on Dealer, and any and all goods and equipment manufactured or distributed by Snap-on Incorporated or bearing Snap-on Incorporated trademarks or logos, together with all proceeds (including insurance proceeds), accessions, attachments, additions, substitutions and replacements to and of such items (the foregoing and the Property are collectively referred to as "Collateral"). If this Agreement is assigned to Snap-on Credit pursuant to Section 6 below, and if the Amount Financed includes a transfer of RA balance owed to Dealer, then Dealer hereby assigns to Snap-on Credit any purchase money security interest that Dealer may have in any merchandise reflected in the RA balance so transferred. In such case, Snap-on Credit shall continue to hold a purchase money security interest in such merchandise after such transfer. You agree not to remove any Collateral from the state where the original sale was made without the written consent of Dealer or Snap-on Credit, if this Agreement is assigned to Snap-on Credit. You agree not to sell, dispose of or encumber any Collateral until your entire balance due is paid in full. To the extent permitted by and subject to applicable law, you agree and hereby grant to Dealer and Snap-on Credit or its agent or assigns the power of attorney and right to sign on your behalf and file or record such financing statements or other documents as may be necessary to perfect or maintain the security interest granted by you under this Agreement.

**6. Assignment by Dealer.** (a) Dealer may assign this Agreement for value to Snap-on Credit LLC, 950 Technology Way, Suite 301, Libertyville, IL 60048. If Dealer assigns this Agreement to Snap-on Credit, then after such assignment (1) Snap-on Credit or its assigns shall have all the rights and remedies of Dealer under this Agreement and all of your obligations, agreements, representations and warranties shall be deemed to have been made to Snap-on Credit with the same effect as if Snap-on Credit were an original party to this Agreement; and (2) Dealer will not have any power or authority to exercise any such rights or remedies, give any consents under Section 5 or change or modify this Agreement or any related document in any way. (b) If this Agreement is assigned to Snap-on Credit, you agree to deliver your payments to Dealer or directly to Snap-on Credit. *The Dealer is not Snap-on Credit's agent for any purpose.* If you make payments to your Dealer, the Dealer will be acting as your agent. In that capacity, the Dealer has agreed with Snap-on Credit to remit payments under this Agreement to Snap-on Credit on a regular basis. You will be credited with payment on the date Snap-on Credit receives payment from the Dealer. Payments received by Snap-on Credit after 10:00 a.m. CST will be credited on the next business day. Snap-on Credit will credit you and waive additional finance charges and late charges on any installment regardless of when payment is received from the dealer *if you have proof of your timely payment to the Dealer* (such as a valid receipt or canceled check). Alternatively, you may make any payments (by debit, check or money order payable to Snap-on Credit, and not cash) directly to Snap-on Credit at the address provided to you by Snap-on Credit, in which case you will be credited with payment on the date Snap-on Credit receives the payment. Snap-on Credit may require you to make payments directly to it. Snap-on Credit's business days are Monday through Friday, excluding holidays.

**7. Property Insurance.** So long as Dealer or its assigns has a security interest in any Collateral, you will obtain and keep in force fire and other casualty Insurance on the Collateral in an amount and form and written by insurers satisfactory to Dealer, with loss payable to Dealer or Dealer's assignee. If you fail to do so, Dealer or its assigns may, at their option, purchase such insurance, in which event you must pay the cost thereof to Dealer or its assigns on demand. However, any failure by Dealer to obtain and keep in force such insurance, after your failure to do so, shall not release you from any obligations or liability under this Agreement or any prior agreements. *Any insurance procured by Dealer under this section will not include insurance for property damage to others.*

**8. Additional Charges.** To the extent permitted by and subject to applicable law, you agree to pay the additional charges listed below. Failure to impose a fee or charge in certain instances does not constitute a waiver or prohibit the Dealer or any assignee from insisting on strict compliance with this Agreement by you at any time. **(a) Security Interest Charges.** You will be assessed a Security Interest Charge to cover (1) fees and charges paid to public officials for determining the existence of or for perfecting, releasing or satisfying the security interest you granted under this Agreement, (2) the costs payable for any outside service retained to provide searches and filings for perfecting and verifying the security interest and (3) in certain states (depending on state rate limits and rate calculations) we may also charge an amount to recoup a portion of our production and management costs related to maintaining security

interest transactions, not to exceed the greater of $15.00 or the maximum amount allowed by law. **(b) Late Charges.** If you fail to make payments under this Agreement within 10 days after the date due, you may be assessed a Late Charge of the lesser of: $10.00 or the maximum permitted by applicable law. **(c) NSF Check Charges.** If your check is not honored by your bank because of non-sufficient funds, a closed account, or any other reason, you may be assessed an NSF Check Charge of the lesser of $25.00 or the maximum permitted by law. **(d) Legal Fees.** In addition to the full amount owed and any court costs, if any matter arising out of your default under this Agreement is referred to an attorney to collect the amount you owe or to repossess any Collateral, you agree to pay all costs and expenses (including all reasonable attorneys' fees and court costs) incurred by us in enforcing any of the terms of this Agreement or any of our rights against you. **(e) Extension fees.** In the event we provide you a contract term modification or payment extension at your request or as part of another type of payment arrangement, we reserve the right to charge a onetime extension fee of the lesser of $30.00 or the maximum amount allowed by law to offset a portion of our costs associated with such change. **(f) Electronic Payments.** If you choose to pay your payments via a phone payment or internet payment service we offer or designate, you agree to pay a fee for each such payment of the lesser of $10 or less, the maximum amount allowed by law.  **(g) Other Considerations.** We reserve the right to charge additional fees as appropriate in the event the parties agree to other contract modifications.

**9.    Events of Default.** The occurrence of any one of the following events constitutes a default under this Agreement: (a) You do not pay at least the minimum payment due or you otherwise become delinquent on any other obligation to Dealer or to Snap-on Credit or its assigns, or if this Agreement is assigned, to such assignee; (b) you file or consent to the filing of bankruptcy or similar proceedings against you or you become insolvent, or your financial condition deteriorates significantly and it appears likely that you will not be able to repay Dealer for any reason; (c) you die, become imprisoned or are declared legally incompetent; (d) you at any time give Dealer information that is inaccurate, misleading or incomplete; or (e) you fail to comply with any terms or conditions of this Agreement.

**10.    Acceleration; Remedies. Dealer, or if assigned, Dealer's assignee will have all the rights and remedies of a secured creditor under the Uniform Commercial Code and any other applicable laws. In addition, if any one of the events of default occurs, subject to any right you may have under applicable law to receive notice of and to cure such default, at Dealer's option Dealer may (a) declare the entire unpaid balance due under this Agreement immediately due and payable; and (b) repossess any Collateral in which Dealer still retains a security interest, and without limiting the foregoing, in the event this or any other transaction is assigned, any Collateral in which assignee still retains a security interest but only in the manner and to the extent permitted by applicable law. If Dealer resells any repossessed Collateral, Dealer agrees to pay you any surplus remaining (after deduction of the costs of repossession and sale and other costs, including reasonable attorneys' fees, to the extent permitted by law) and you agree to pay Dealer any deficiency in accordance with the Uniform Commercial Code and any other applicable laws. Dealer may accept late or partial payments or any payments marked as being payment in full or as being settlement for any dispute without prejudicing any of Dealer's rights under or in any way amending this Agreement. Dealer's failure or delay at any time to exercise any of Dealer's contract, legal or equitable rights shall not be deemed a waiver of these rights nor of the right to exercise Dealer's rights at any other time. If Snap-on Credit becomes the secured party under this Agreement, you agree that it is commercially reasonable for repossessed Collateral to be sold at public or private sales (in any state or county selected by Snap-on Credit) to dealers or others in lots or pieces (with or without the Collateral being physically present) at used tool prices. In the event you do not pay all amounts due under this contract and you are unreachable, or in the event of settlement or other events, IRS regulations may require Dealer or an assignee to file a 1099-C form for informational purposes showing the remaining unpaid amounts due under your original contract regardless of any dispute. The mere filing of such 1099-C does not itself constitute a forgiveness or adjustment of any amounts due. The term "Buyer" and "Dealer" as used in this Agreement also mean "debtor" and "secured party" respectively and include heirs, executors, or administrators, successors and permitted assigns of those parties.**

**11.    Continuing Authority to Review.** You hereby authorize Dealer, or if assigned, Dealer's assignee, to obtain and review credit information about you from any credit reporting agency or any other source during the time this Agreement remains in effect or for six (6) months thereafter for purposes of increasing or modifying the amount of credit available to you, regardless of whether you submit a written application for same. .

**12.    Governing Law.** THIS AGREEMENT SHALL BE GOVERNED BY THE LAWS OF THE STATE OF ILLINOIS, THE ASSIGNEE'S STATE WITHOUT REGARD TO ITS CONFLICTS OF LAWS RULES OR PROVISIONS; PROVIDED, HOWEVER, IN THE EVENT THIS AGREEMENT OR ANY OF ITS PROVISIONS CANNOT BE ENFORCED PERSUANT TO ILLINOIS LAW, THEN THE LAWS OF THE STATE YOUR RESIDENCE SHALL GOVERN. If used in U.S. Territories or Commonwealths, this Agreement is not to be governed by the United Nations Convention on Contracts for the International Sale of Goods.

**13.    Jury Trial Waiver and Class Waiver.** YOU AND DEALER WAIVE ALL RIGHTS TO A TRIAL BY JURY.  YOU AGREE THAT YOU, THE BUYER, MAY ONLY BRING CLAIMS AGAINST DEALER OR ANY ASSIGNEE IN YOUR INDIVIDUAL CAPACITY AND NOT AS A PLAINTIFF OR CLASS MEMBER IN ANY PURPORTED CLASS OR REPRESENTATIVE PROCEEDING.

**14.    Transfer of Agreement.** Dealer reserves the right to sell or transfer this Agreement in whole or in part to another entity or person without prior notice to you. You, however, cannot transfer this Agreement or rights and obligations under this Agreement to any other entity or person.

**15.    Finance Charge Savings Clause.** – Notwithstanding any other provision in this Agreement, the aggregate finance charge utilized with respect to any of the obligations, including all charges or fees in connection therewith deemed includable in the finance charge shall not exceed the maximum lawful rate. If the finance charge under this Agreement at any time exceeds the maximum allowed by law, the outstanding amount of the Amount Financed shall bear finance charges at the maximum lawful rate until the total finance charges due and total amount financed are paid in full at such rate.  The parties intend to conform to any applicable laws limiting finance charges on this type of Agreement. Accordingly, if Dealer contracts for, charges, or receives any consideration which constitutes finance charges in excess of maximum allowed by law, then any such excess shall be cancelled automatically and, if previously paid, shall at such Lender's option be applied to the outstanding amount remaining due hereunder or be refunded to Buyer

**16.    Severability; Entire Agreement.** If any term, provision or section of this Agreement is held void, voidable, invalid or unenforceable under any statute or court decision, or any governmental rule or regulation, the remainder of the Agreement shall remain effective, and any such ineffectiveness shall not affect the validity or enforceability of this Agreement in any other jurisdiction. This Agreement, any previous Credit Sale Contract, Add-On Riders and, any written addenda or riders hereto signed by both parties constitutes the entire agreement between the parties regarding the subject matter of this Agreement.
=================================================================================================

C96_1_1_EECFD82I_20140921.C96

**Notice to Maryland Residents.** Agreement is pursuant to Subtitle 10 (Credit Grantor Closed End Contract Provisions) of Md. Code Ann., Fin. Inst. §12-100 *et seq.*

**Notice to California Residents.** California Finance Lenders License No. 603-6880.  For California residents, NSF Fees are limited to a maximum of $15.00 and Late Charges are limited to a maximum of $10.00

**Notice to District of Columbia Residents.** Seller certifies that the information contained in the contract complies with the District of Columbia Municipal Regulations, Title 16, Chapter 3.

**Notice to Connecticut Residents.** Attorneys' fees, which are permitted under Sections 8 and 10 of this Agreement, may not exceed 15% of the amount due plus court costs, and may only be collected or sought from Connecticut Residents when the contract is referred to an attorney, not a salaried employee of the holder of the contract, for collection. Late charges may not exceed the lesser of 5% of the past due installment (whether weekly or monthly) or $10.00.

**Notice to South Dakota Residents.** Any concerns regarding improprieties may be reported to the South Dakota Div. of Banking, 1601 N. Harrison Avenue, Suite 1, Pierre, SD 57501 or call 605-773-3421.

THIS DOCUMENT CONSISTS OF THE FINANCIAL TERMS ON PAGE 1, THE ADDITIONAL TERMS IN SECTIONS 1 THROUGH 16, THIS PAGE, AND ANY ATTACHED APPENDIX A

**IMPORTANT: READ BEFORE SIGNING. THE TERMS OF THIS AGREEMENT SHOULD BE READ CAREFULLY BECAUSE ONLY THOSE TERMS SET FORTHIN THIS AGREEMENT ARE ENFORCEABLE. NO OTHER TERMS OR ORAL PROMISES NOT CONTAINED IN THIS WRITTEN CONTRACT MAY BE LEGALLY ENFORCED. YOU MAY CHANGE THE TERMS OF THIS AGREEMENT ONLY BY ANOTHER WRITTEN AGREEMENT SIGNED BY YOU AND THE DEALER OR SNAP-ON TOOLS COMPANY LLC OR ITS AFFILIATE THROUGH THEIR SALES REPRESENATIVE (COLLECTIVELY REFERRED TO IN THIS AGREEMENT AS "DEALER") OR, IF ASSIGNED, WITH SNAP-ON CREDIT LLC ("SNAP-ON CREDIT") OR ITS ASSIGNS.**

## BUYER ACKNOWLEDGES RECEIPT OF PRODUCT AND A COPY OF THIS AGREEMENT

### NOTICE TO BUYER

DO NOT SIGN THIS CONTRACT (CREDIT SALE CONTRACT OR ADD-ON RIDER) BEFORE YOU READ IT OR IF IT CONTAINS ANY BLANK SPACES.

YOU ARE ENTITLED TO A COMPLETELY FILLED-IN COPY OF THE CONTRACT WHEN YOU SIGN IT.

UNDER THE LAW, YOU HAVE THE FOLLOWING RIGHTS, AMONG OTHERS:
   (a) TO PAY OFF IN ADVANCE THE FULL AMOUNT DUE AND OBTAIN A PARTIAL REFUND OF ANY UNEARNED
       FINANCE CHARGE;
   (b) TO REDEEM THE PROPERTY IF REPOSSESSED FOR A DEFAULT;
   (c) TO REQUIRE, UNDER CERTAIN CONDITIONS, RESALE OF THE PROPERTY IF REPOSSESSED.

CIC Live Signature
KENNETH CASLER
01:10:33 PM 01-03-2017 (-05'00' PDT)
I, KENNETH CASLER, am signing to certify the authenticity of this document.

CIC Live Signature
RODNEY FAMA
01:10:43 PM 01-03-2017 (-05'00' GMT)
I, RODNEY FAMA, am signing this document to confirm that it has been reviewed.

DEALER (SECURED PARTY)

**KENNETH CASLER**

64 Central Ave.

Pompton Lakes, NJ  07442

BUYER (DEBTOR)

**RODNEY FAMA**

25 MANON BLVD.

MONROE, NJ  08831

Dealer assigns for value all right, title and interest in this Agreement to **Snap-on Credit LLC**, subject to acceptance by Snap-on Credit LLC. By providing the information on the unpaid balance due under any prior Agreement, Credit Sale Contract or any Add-On Rider(s) above for this transaction, Snap-on Credit LLC consents to the rescheduling of payments under the Credit Sale Contract and any Add-On Rider(s) previously assigned to Snap-on Credit LLC.
Snap-on Credit LLC - 950 Technology Way, Suite 301 - Libertyville, IL 60048 - (877)777-8455

C96_1_1_EECFD82I_20140921.C96

**APPENDIX A**
**"Property Description"**

INVOICE DATE  01/03/2017                    INVOICE NUMBER  01031718272           DEBTOR NUMBER

| | | | |
|---|---|---|---|
| Dealer | | Buyer (Debtor) | |
| KENNETH CASLER | | RODNEY FAMA | |
| New Sale Subtotal | $   549.00 | Total R/A Transfer  $   0.00 | Shipping/Handling  $   0.00 |
| Tax Applied | $   37.74 | Total    $   586.74 | S/H Tax    $ |
| Subtotal Including Tax | $   586.74 | | |

| Line | QTY | PRODUCT NO. SERIAL NO. | DESCRIPTION | EACH | COMMENTS | LC | LINE TOTAL |
|---|---|---|---|---|---|---|---|
| 1 | 1 | EESP318U2 16.4-3530325355483532343734 39 | 16.4 SOLUS ULTRA LOY. SCANBAY | 549.00 | 0.00 | 0 | 549.00 |



RETAIL INSTALLMENT CONTRACT
**CREDIT SALE CONTRACT OR ADD-ON RIDER**

This Credit Sale Contract or Add-On Rider ("Credit Sale Contract" or "Agreement") provides the terms that the buyer named below (referred to as "you" "your," or "Buyer") agrees to purchase the tools, equipment and other merchandise listed under "Property Description" or on attached invoice or appendix from an authorized Snap-on Tools Company LLC Franchisee, Authorized Dealer or Snap-on sales representative ("Dealer"). **BUYER REPRESENTS AND WARRANTS THAT THE PROPERTY PURCHASED UNDER THIS AGREEMENT IS TO BE USED PRIMARILY FOR COMMERCIAL OR BUSINESS PURPOSES AND NOT PRIMARILY FOR PERSONAL, FAMILY OR HOUSEHOLD PURPOSES.**

SEE APPENDIX A, INVOICE NO. 04071613120 DATED 04/07/2016
FOR "PROPERTY DESCRIPTION"

Dealer Number: 41440
Contract Date:  04/07/2016
Debtor Number:

## ITEMIZATION OF TOTAL CREDIT SALE PRICE
(Time Price Disclosure)

| | | |
|---|---|---|
| 1. **Total cash sale price** (including tax, if any): | | $1295.70 |
| 2. Amount of down payment and/or trade-in | | |
| a. Down Payment | $0.00 | |
| b. Trade-in (Description of trade-in items are on the attached invoice or Appendix A) | $0.00 | |
| c. Total Down Payment (2a + 2b): | | $0.00 |
| 3. Unpaid balance of total cash sale price: (Total sale price – total down payment) | | $1295.70 |
| 4. Security Interest Charge | | |
| a. Public officials and/or process costs: | $56.00 | |
| b. Florida Document Stamp Tax: (Florida Residents Only) | $0.00 | |
| c. Processing Fee: | $0.00 | |
| d. Total Security Interest Charge (4a+4b+4c): | | $56.00 |
| 5. Subtotal Principal Balance (new sale amount financed): (Unpaid balance of total cash sale price + Total Security Interest Charge) | | $1351.70 |
| 6. Unpaid Balance: (Current net total amount due under prior Credit Sale Contracts, Add-on Rider(s), and/or prior Extended Credit Purchase Money Security Agreements) Beginning Date on 1st Credit Sale Contract 01/28/2013 | | $3756.25 |
| 7. Other Charges (specify): | | $0.00 |
| 8. New Amount Financed: (Subtotal Principal Balance + Unpaid Balance + Other charges) (Note: finance charges will not be charged on accrued but unpaid finance charges. See Section 2 below.) | | $5107.95 |
| 9. Amount of Finance Charge (estimated, time price differential): | | $2294.77 |
| 10. TOTAL OF PAYMENTS (estimated) (New Amount Financed + Amount of Finance Charge) | | $7402.72 |
| 11. TOTAL CREDIT SALE PRICE (estimated) (Total of Payments + Total Down Payment) | | $7402.72 |

## YOUR PAYMENT SCHEDULE WILL BE:

**Number of Payments** 208

**Payments Due Each**   WEEK

**Payment Amount**     $35.59

**1st Payment Due Date** 04/14/2016

**ANNUAL PERCENTAGE RATE**     19.80%
The cost of your credit as a yearly rate

**Amount Financed**     $5107.95
(sum of 5, 6, and 7) The amount of credit provided to you or on your behalf:

**FINANCE CHARGE**     $2294.77
The estimated dollar amount the credit will cost you

**Total of Payments**     $7402.72
(sum of 8 and 9) The estimated amount you will have paid after you make all the payments on time

**Total Credit Sale Price**     $7402.72
(sum of 2c and 10)
The total estimated cost of your purchase on credit

**Insurance:** Credit life insurance and credit disability insurance are <u>not</u> required to obtain credit. You may obtain property insurance from anyone you want who is acceptable to Dealer's assignee, Snap-on Credit LLC. Insurance, if any is included in this contract, does not provide coverage for personal liability or property damage caused to others.

**Security:** You are giving a security interest in (a) the goods or property purchased under this Agreement; and (b) if permitted by law all other goods or property bearing any Snap-on® trademark, or distributed by or through Snap-on Incorporated or an affiliate.

**Late charge:** If a payment is late, you will be charged $10.00 but no more than the maximum amount permitted under applicable law.

**NSF charge:** If you make a payment by check or debit and that payment is denied by your bank for insufficient funds or any other reason, then you will owe not only the payment but also an NSF charge of $25, but not more than the maximum amount permitted under applicable law.

**Prepayment:** If you pay off early, you will not pay a penalty and you may be entitled to a refund of part of the finance charge. Your finance charges are calculated based on your average daily outstanding balance due.

**Add-On Rider:** If you have an unpaid balance on any Prior Agreement, Credit Sale Contract or Add-On Rider(s), then this Agreement is also an Add-On Rider to the prior Agreement(s). See below for additional information about any Add-On Rider.

**SEE BELOW AND ON ADDITIONAL PAGES** for additional terms and information about nonpayment, default, repayment in full before the scheduled date, and prepayment refunds and penalties.

**IMPORTANT: READ BEFORE SIGNING. THE TERMS OF THIS AGREEMENT SHOULD BE READ CAREFULLY BECAUSE ONLY THOSE TERMS IN WRITING ARE ENFORCEABLE. NO OTHER TERMS OR ORAL PROMISES NOT CONTAINED IN THIS WRITTEN CONTRACT MAY BE LEGALLY ENFORCED. YOU MAY CHANGE THE TERMS OF THIS AGREEMENT ONLY BY ANOTHER WRITTEN AGREEMENT SIGNED BY YOU AND THE FRANCHISEE, DEALER OR SNAP-ON TOOLS COMPANY LLC OR ITS AFFILIATE THROUGH THEIR SALES REPRESENATIVE (COLLECTIVELY REFERRED TO IN THIS AGREEMENT AS "DEALER") OR, IF ASSIGNED, WITH SNAP-ON CREDIT LLC ("SNAP-ON CREDIT") OR ITS ASSIGNS.**

## ADDITIONAL TERMS

**1. Offer of Cash Sale or Payment Over Time.** Dealer has offered you a choice of buying the Property for a stated cash price payable immediately or buying the Property for a Total Credit Sale Price which permits you to purchase the Property now, but pay in installments over an extended period of time. The Total Credit Sale Price will be more or less, depending on when you pay and the amount you pay each time, and the Total Credit Sale Price is more than the cash sale price because it includes a finance charge to compensate the Dealer for waiting before collecting the full purchase price.

**2. Payment Terms. You agree to pay to Dealer or Dealer's assignee the Amount Financed plus finance charges applied to the outstanding balance thereof at the annual percentage rate set forth on page one during the time any balance under this Agreement remains unpaid. You agree to make equal weekly payments (or such other periodic payment schedule if specifically agreed in writing) (in cash, check or money order) as set forth under "Your payment schedule will be" on the first page of this Agreement until all amounts due under this Agreement are paid (provided that the final payment shall be in the amount of the unpaid balance of the Amount Financed plus accrued but unpaid finance charges).** You may prepay the balance of the Amount Financed without penalty at any time; and doing so will reduce the amount of finance charge you would otherwise be required to pay. Unless you prepay the entire outstanding balance of the Amount Financed, however, the amount you are required to pay each week will remain the same, with any adjustments being reflected in the last payment and the number of payments. If you make an overpayment when you prepay the entire outstanding balance of the Amount Financed, we will not be required to refund amounts less than $1.00. If you pay the amount due under this Agreement late, the finance charge will continue to accrue monthly on the unpaid average daily balance. In that event, your last payment may be increased to pay the full balance due. Dealer may offer a deferred first payment due date; however, the estimated Finance Charge and the number and amount of payments on the first page of this Agreement are based on payments beginning immediately after the date of this Agreement. If you elect to defer your payments, you will not be charged late fees, but finance charges will continue to accrue on the unpaid balance, and you will owe additional finance charges that may not be reflected in the estimate on the first page. "Same As Cash" benefit: this phrase means that although finance charges apply and begin accrual at contract inception, provided you pay the entire Unpaid Balance above within ninety (90) days in good funds from the contract date and are not otherwise in default, the finance charge will be waived and any amounts you paid representing finance charges will be refunded and applied against your account or returned to you; some promotions may feature alternate Same as Cash periods. You and your Dealer may agree to transfer to the Amount Financed any balance you may owe Dealer as a result of prior purchases pursuant to your truck account or revolving account ("RA") credit that Dealer has extended to you. You represent, warrant and agree that: (a) you voluntarily entered into this contract with Dealer for the full amount of the Amount Financed plus estimated time finance charges accruing on it instead of paying in full on the sale date; (b) all information supplied and statements made by you in any application for credit before or at the same time as the execution of this Agreement are and will be correct, complete and genuine, (c) you only owe the dealer for any prior purchases being transferred from RA and have no other liens and encumbrances on the RA tools and equipment being pledged as security under this Agreement, and (d) any items used as a trade-in are free of all liens or other encumbrances, are fully paid for, and you possess good and marketable title to it. The Unpaid Balance under any prior Agreement, including accrued but unpaid finance charges, is used to calculate your payment amount; however, you will pay finance charges only on the outstanding principal balance (cash price) of the Amount Financed at the contract rate until paid in full.

**3. Allocation of Payments.** Your payments will be allocated first to any additional charges, costs and expenses, and then to any finance charge in the order it is incurred, and then to the payment of the cash price of each purchase in the order in which the purchase was made under prior agreements (Credit Sale Contract or Add-On Riders) first and then this Agreement, with the payments being applied to the oldest purchase first; lowest-priced same day purchases paid off first. Down payments and trade-ins will be applied to the cash price of all items purchased on the same day, credited based upon the lowest-priced purchases first.

**4.** If this is an ADD-ON RIDER: **You agree to purchase the additional Property listed in the "Property Description" referred to above, Appendix A, any attachment(s) and any invoice(s) and to pay for such Property as well as the Property purchased under the prior Agreement(s) according to the payment terms listed in this Agreement which modifies the prior agreement terms. If the prior Agreement(s) to which this Add-On Rider relates has/have been assigned to Snap-on Credit LLC ("Snap-on Credit"), then this Add-On Rider is also assigned to Snap-on Credit subject to its acceptance) and all references to Dealer are to Snap-on Credit as Dealer's Assignee with respect to subsequent payments for items acquired under any contract. To the extent that You have committed or engaged in the commission of an Event of Default, then in consideration of Seller's allowing you to enter into this ADD-ON RIDER, and in consideration of other good and valuable consideration, the sufficiency and receipt of which You hereby acknowledge, to the extent allowed by law You waive, forfeit, and agree to forever forego any and all claims and causes of action --past, present or future -- against Seller and its successors and assigns, including but not limited to Snap-on Credit LLC." You also acknowledge that You actively and with full understanding participated in negotiating the material terms, including but not limited to this Paragraph 4, this ADD-ON RIDER after full consultation with, and review by, Your counsel.**

**5. Grant of Security Interest.** As security for your obligations under this Agreement, or any other agreement with Dealer or Dealer's assignee, you hereby grant Dealer a purchase money security interest in each item of Property you purchase under this Agreement until that item is paid for. As further security for your obligations under this Agreement, in all states except where prohibited by applicable law for agreements of this type, you hereby grant Dealer a security interest in each other item of tools, goods and equipment previously purchased or hereafter acquired from a Snap-on Dealer, and any and all goods and equipment manufactured or distributed by Snap-on Incorporated or bearing Snap-on Incorporated trademarks or logos, together with all proceeds (including insurance proceeds), accessions, attachments, additions, substitutions and replacements to and of such items (the foregoing and the Property are collectively referred to as "Collateral"). If this Agreement is assigned to Snap-on Credit pursuant to Section 6 below, and if the Amount Financed includes a transfer of RA balance owed to Dealer, then Dealer hereby assigns to Snap-on Credit any purchase money security interest that Dealer may have in any merchandise reflected in the RA balance so transferred. In such case, Snap-on Credit shall continue to hold a purchase money security interest in such merchandise after such transfer. You agree not to remove any Collateral from the state where the original sale was made without the written consent of Dealer or Snap-on Credit, if this Agreement is assigned to Snap-on Credit. You agree not to sell, dispose of or encumber any Collateral until your entire balance due is paid in full. To the extent permitted by and subject to applicable law, you agree and hereby grant to Dealer and Snap-on Credit or its agent or assigns the power of attorney and right to sign on your behalf and file or record such financing statements or other documents as may be necessary to perfect or maintain the security interest granted by you under this Agreement.

**6. Assignment by Dealer.** (a) Dealer may assign this Agreement for value to **Snap-on Credit LLC, 950 Technology Way, Suite 301, Libertyville, IL 60048.** If Dealer assigns this Agreement to Snap-on Credit, then after such assignment (1) Snap-on Credit or its assigns shall have all the rights and remedies of Dealer under this Agreement and all of your obligations, agreements, representations and warranties shall be deemed to have been made to Snap-on Credit with the same effect as if Snap-on Credit were an original party to this Agreement; and (2) Dealer will not have any power or authority to exercise any such rights or remedies, give any consents under Section 5 or change or modify this Agreement or any related document in any way. (b) If this Agreement is assigned to Snap-on Credit, you agree to deliver your payments to Dealer or directly to Snap-on Credit. *The Dealer is not Snap-on Credit's agent for any purpose.* If you make payments to your Dealer, the Dealer will be acting as your agent. In that capacity, the Dealer has agreed with Snap-on Credit to remit payments under this Agreement to Snap-on Credit on a regular basis. You will be credited with payment on the date Snap-on Credit receives payment from the Dealer. Payments received by Snap-on Credit after 10:00 a.m. CST will be credited on the next business day. Snap-on Credit will credit you and waive additional finance charges and late charges on any installment regardless of when payment is received from the dealer *if you have proof of your timely payment to the Dealer* (such as a valid receipt or canceled check). Alternatively, you may make any payments (by debit, check or money order payable to Snap-on Credit, and not cash) directly to Snap-on Credit at the address provided to you by Snap-on Credit, in which case you will be credited with payment on the date Snap-on Credit receives the payment. Snap-on Credit may require you to make payments directly to it. Snap-on Credit's business days are Monday through Friday, excluding holidays.

**7. Property Insurance.** So long as Dealer or its assigns has a security interest in any Collateral, you will obtain and keep in force fire and other casualty Insurance on the Collateral in an amount and form and written by insurers satisfactory to Dealer, with loss payable to Dealer or Dealer's assignee. If you fail to do so, Dealer or its assigns may, at their option, purchase such insurance, in which event you must pay the cost thereof to Dealer or its assigns on demand. However, any failure by Dealer to obtain and keep in force such insurance, after your failure to do so, shall not release you from any obligations or liability under this Agreement or any prior agreements. *Any insurance procured by Dealer under this section will not include insurance for property damage to others.*

**8. Additional Charges.** To the extent permitted by and subject to applicable law, you agree to pay the additional charges listed below. Failure to impose a fee or charge in certain instances does not constitute a waiver or prohibit the Dealer or any assignee from insisting on strict compliance with this Agreement by you at any time. **(a) Security Interest Charges.** You will be assessed a Security Interest Charge to cover (1) fees and charges paid to public officials for determining the existence of or for perfecting, releasing or satisfying the security interest you granted under this Agreement, (2) the costs payable for any outside service retained to provide searches and filings for perfecting and verifying the security interest and (3) in certain states (depending on state rate limits and rate calculations) we may also charge an amount to recoup a portion of our production and management costs related to maintaining security

C96_1_1_EECFD82I_20140921.C96

interest transactions, not to exceed the greater of $15.00 or the maximum amount allowed by law. **(b) Late Charges.** If you fail to make payments under this Agreement within 10 days after the date due, you may be assessed a Late Charge of the lesser of: $10.00 or the maximum permitted by applicable law. **(c) NSF Check Charges.** If your check is not honored by your bank because of non-sufficient funds, a closed account, or any other reason, you may be assessed an NSF Check Charge of the lesser of $25.00 or the maximum permitted by law. **(d) Legal Fees.** In addition to the full amount owed and any court costs, if any matter arising out of your default under this Agreement is referred to an attorney to collect the amount you owe or to repossess any Collateral, you agree to pay all costs and expenses (including all reasonable attorneys' fees and court costs) incurred by us in enforcing any of the terms of this Agreement or any of our rights against you. **(e) Extension fees.** In the event we provide you a contract term modification or payment extension at your request or as part of another type of payment arrangement, we reserve the right to charge a onetime extension fee of the lesser of $30.00 or the maximum amount allowed by law to offset a portion of our costs associated with such change. **(f) Electronic Payments.** If you choose to pay your payments via a phone payment or internet payment service we offer or designate, you agree to pay a fee for each such payment of the lesser of $10 or less, the maximum amount allowed by law.  **(g) Other Considerations.** We reserve the right to charge additional fees as appropriate in the event the parties agree to other contract modifications.

**9.    Events of Default.** The occurrence of any one of the following events constitutes a default under this Agreement: (a) You do not pay at least the minimum payment due or you otherwise become delinquent on any other obligation to Dealer or to Snap-on Credit or its assigns, or if this Agreement is assigned, to such assignee; (b) you file or consent to the filing of bankruptcy or similar proceedings against you or you become insolvent, or your financial condition deteriorates significantly and it appears likely that you will not be able to repay Dealer for any reason; (c) you die, become imprisoned or are declared legally incompetent; (d) you at any time give Dealer information that is inaccurate, misleading or incomplete; or (e) you fail to comply with any terms or conditions of this Agreement.

**10.    Acceleration; Remedies.** Dealer, or if assigned, Dealer's assignee will have all the rights and remedies of a secured creditor under the Uniform Commercial Code and any other applicable laws. In addition, if any one of the events of default occurs, subject to any right you may have under applicable law to receive notice of and to cure such default, at Dealer's option Dealer may (a) declare the entire unpaid balance due under this Agreement immediately due and payable; and (b) repossess any Collateral in which Dealer still retains a security interest, and without limiting the foregoing, in the event this or any other transaction is assigned, any Collateral in which assignee still retains a security interest but only in the manner and to the extent permitted by applicable law. If Dealer resells any repossessed Collateral, Dealer agrees to pay you any surplus remaining (after deduction of the costs of repossession and sale and other costs, including reasonable attorneys' fees, to the extent permitted by law) and you agree to pay Dealer any deficiency in accordance with the Uniform Commercial Code and any other applicable laws. Dealer may accept late or partial payments or any payments marked as being payment in full or as being settlement for any dispute without prejudicing any of Dealer's rights under or in any way amending this Agreement. Dealer's failure or delay at any time to exercise any of Dealer's contract, legal or equitable rights shall not be deemed a waiver of these rights nor of the right to exercise Dealer's rights at any other time. If Snap-on Credit becomes the secured party under this Agreement, you agree that it is commercially reasonable for repossessed Collateral to be sold at public or private sales (in any state or county selected by Snap-on Credit) to dealers or others in lots or pieces (with or without the Collateral being physically present) at used tool prices. In the event you do not pay all amounts due under this contract and you are unreachable, or in the event of settlement or other events, IRS regulations may require Dealer or an assignee to file a 1099-C form for informational purposes showing the remaining unpaid amounts due under your original contract regardless of any dispute. The mere filing of such 1099-C does not itself constitute a forgiveness or adjustment of any amounts due. The term "Buyer" and "Dealer" as used in this Agreement also mean "debtor" and "secured party" respectively and include heirs, executors, or administrators, successors and permitted assigns of those parties.

**11.    Continuing Authority to Review.** You hereby authorize Dealer, or if assigned, Dealer's assignee, to obtain and review credit information about you from any credit reporting agency or any other source during the time this Agreement remains in effect or for six (6) months thereafter for purposes of increasing or modifying the amount of credit available to you, regardless of whether you submit a written application for same. .

**12.    Governing Law.** THIS AGREEMENT SHALL BE GOVERNED BY THE LAWS OF THE STATE OF ILLINOIS, THE ASSIGNEE'S STATE WITHOUT REGARD TO ITS CONFLICTS OF LAWS RULES OR PROVISIONS; PROVIDED, HOWEVER, IN THE EVENT THIS AGREEMENT OR ANY OF ITS PROVISIONS CANNOT BE ENFORCED PERSUANT TO ILLINOIS LAW, THEN THE LAWS OF THE STATE YOUR RESIDENCE SHALL GOVERN. If used in U.S. Territories or Commonwealths, this Agreement is not to be governed by the United Nations Convention on Contracts for the International Sale of Goods.

**13.    Jury Trial Waiver and Class Waiver.** YOU AND DEALER WAIVE ALL RIGHTS TO A TRIAL BY JURY. YOU AGREE THAT YOU, THE BUYER, MAY ONLY BRING CLAIMS AGAINST DEALER OR ANY ASSIGNEE IN YOUR INDIVIDUAL CAPACITY AND NOT AS A PLAINTIFF OR CLASS MEMBER IN ANY PURPORTED CLASS OR REPRESENTATIVE PROCEEDING.

**14.    Transfer of Agreement.** Dealer reserves the right to sell or transfer this Agreement in whole or in part to another entity or person without prior notice to you. You, however, cannot transfer this Agreement or rights and obligations under this Agreement to any other entity or person.

**15.    Finance Charge Savings Clause.** – Notwithstanding any other provision in this Agreement, the aggregate finance charge rate utilized with respect to any of the obligations, including all charges or fees in connection therewith deemed includable in the finance charge shall not exceed the maximum lawful rate. If the finance charge under this Agreement at any time exceeds the maximum allowed by law, the outstanding amount of the Amount Financed shall bear finance charges at the maximum lawful rate until the total finance charges due and total amount financed are paid in full at such rate. The parties intend to conform to any applicable laws limiting finance charges on this type of Agreement. Accordingly, if Dealer contracts for, charges, or receives any consideration which constitutes interest in excess of maximum allowed by law, then any such excess shall be cancelled automatically and, if previously paid, shall at such Lender's option be applied to the outstanding amount remaining due hereunder or be refunded to Buyer

**16.    Severability; Entire Agreement.** If any term, provision or section of this Agreement is held void, voidable, invalid or unenforceable under any statute or court decision, or any governmental rule or regulation, the remainder of the Agreement shall remain effective, and any such ineffectiveness shall not affect the validity or enforceability of this Agreement in any other jurisdiction. This Agreement, any previous Credit Sale Contract, Add-On Riders and, any written addenda or riders hereto signed by both parties constitutes the entire agreement between the parties regarding the subject matter of this Agreement.

==================================================================================================================

C96_1_1_EECFD82I_20140921.C96

**Notice to Maryland Residents.** Agreement is pursuant to Subtitle 10 (Credit Grantor Closed End Contract Provisions) of Md. Code Ann., Fin. Inst. §12-100 *et seq.*

**Notice to California Residents.** California Finance Lenders License No. 603-6880. For California residents, NSF Fees are limited to a maximum of $15.00 and Late Charges are limited to a maximum of $10.00

**Notice to District of Columbia Residents.** Seller certifies that the information contained in the contract complies with the District of Columbia Municipal Regulations, Title 16, Chapter 3.

**Notice to Connecticut Residents.** Attorneys' fees, which are permitted under Sections 8 and 10 of this Agreement, may not exceed 15% of the amount due plus court costs, and may only be collected or sought from Connecticut Residents when the contract is referred to an attorney, not a salaried employee of the holder of the contract, for collection. Late charges may not exceed the lesser of 5% of the past due installment (whether weekly or monthly) or $10.00.

**Notice to South Dakota Residents.** Any concerns regarding improprieties may be reported to the South Dakota Div. of Banking, 1601 N. Harrison Avenue, Suite 1, Pierre, SD 57501 or call 605-773-3421.

THIS DOCUMENT CONSISTS OF THE FINANCIAL TERMS ON PAGE 1, THE ADDITIONAL TERMS IN SECTIONS 1 THROUGH 16, THIS PAGE, AND ANY ATTACHED APPENDIX A

**IMPORTANT: READ BEFORE SIGNING. THE TERMS OF THIS AGREEMENT SHOULD BE READ CAREFULLY BECAUSE ONLY THOSE TERMS SET FORTH IN THIS AGREEMENT ARE ENFORCEABLE. NO OTHER TERMS OR ORAL PROMISES NOT CONTAINED IN THIS WRITTEN CONTRACT MAY BE LEGALLY ENFORCED. YOU MAY CHANGE THE TERMS OF THIS AGREEMENT ONLY BY ANOTHER WRITTEN AGREEMENT SIGNED BY YOU AND THE DEALER OR SNAP-ON TOOLS COMPANY LLC OR ITS AFFILIATE THROUGH THEIR SALES REPRESENTATIVE (COLLECTIVELY REFERRED TO IN THIS AGREEMENT AS "DEALER") OR, IF ASSIGNED, WITH SNAP-ON CREDIT LLC ("SNAP-ON CREDIT") OR ITS ASSIGNS.**

## BUYER ACKNOWLEDGES RECEIPT OF PRODUCT AND A COPY OF THIS AGREEMENT

### NOTICE TO BUYER

DO NOT SIGN THIS CONTRACT (CREDIT SALE CONTRACT OR ADD-ON RIDER) BEFORE YOU READ IT OR IF IT CONTAINS ANY BLANK SPACES.

YOU ARE ENTITLED TO A COMPLETELY FILLED-IN COPY OF THE CONTRACT WHEN YOU SIGN IT.

UNDER THE LAW, YOU HAVE THE FOLLOWING RIGHTS, AMONG OTHERS:
  (a) TO PAY OFF IN ADVANCE THE FULL AMOUNT DUE AND OBTAIN A PARTIAL REFUND OF ANY UNEARNED FINANCE CHARGE;
  (b) TO REDEEM THE PROPERTY IF REPOSSESSED FOR A DEFAULT;
  (c) TO REQUIRE, UNDER CERTAIN CONDITIONS, RESALE OF THE PROPERTY IF REPOSSESSED.

CIC Live Signature
KENNETH CASLER
04:08:42 PM 04-07-2016 (-04'00' GMT)
I, KENNETH CASLER, am signing to certify the authenticity of this document.

CIC Live Signature
RODNEY FAMA
04:08:50 PM 04-07-2016 (-04'00' GMT)
I, RODNEY FAMA, am signing this document to confirm that it has been reviewed.

DEALER (SECURED PARTY)

**KENNETH CASLER**

404 Dawes Highway

Pompton Lakes, NJ  07442

BUYER (DEBTOR)

**RODNEY FAMA**

25 MANON BLVD.

MONROE, NJ  08831

Dealer assigns for value all right, title and interest in this Agreement to **Snap-on Credit LLC**, subject to acceptance by Snap-on Credit LLC. By providing the information on the unpaid balance due under any prior Agreement, Credit Sale Contract or any Add-On Rider(s) above for this transaction, Snap-on Credit LLC consents to the rescheduling of payments under the Credit Sale Contract and any Add-On Rider(s) previously assigned to Snap-on Credit LLC.

Snap-on Credit LLC - 950 Technology Way, Suite 301 - Libertyville, IL 60048 - (877)777-8455

C96_1_1_EECFD82I_20140921.C96

**APPENDIX A**
**"Property Description"**

INVOICE DATE  04/07/2016                    INVOICE NUMBER  04071613120            DEBTOR NUMBER

Dealer                                        Buyer (Debtor)
**KENNETH CASLER**                            **RODNEY FAMA**

New Sale Subtotal        $    510.00     Total R/A Transfer   $    750.00     Shipping/Handling  $       0.00

Tax Applied              $     35.70     Total                $ 1,295.70     S/H Tax            $

Subtotal Including Tax   $    545.70

| Line | QTY | PRODUCT NO. SERIAL NO. | DESCRIPTION | EACH | COMMENTS | LC | LINE TOTAL |
|------|-----|------------------------|-------------|------|----------|----|-----------|
| 1 | 1 | PT280THUGA pt280thug | CRUD THUG | 530.00 | 20.00 | 1 | 510.00 |
| 2 | 1 | EESP318U1 16.2-35303253554835323437343 9 | 16.2 SOLUS ULTRA FULL SCANBAY | 999.00 | 0.00 | 7 | 999.00 |



RETAIL INSTALLMENT CONTRACT
**CREDIT SALE CONTRACT OR ADD-ON RIDER**

This Credit Sale Contract or Add-On Rider ("Credit Sale Contract" or "Agreement") provides the terms that the buyer named below (referred to as "you" "your," or "Buyer") agrees to purchase the tools, equipment and other merchandise listed under "Property Description" or on attached invoice or appendix from an authorized Snap-on Tools Company LLC Franchisee, Authorized Dealer or Snap-on sales representative ("Dealer"). **BUYER REPRESENTS AND WARRANTS THAT THE PROPERTY PURCHASED UNDER THIS AGREEMENT IS TO BE USED PRIMARILY FOR COMMERCIAL OR BUSINESS PURPOSES AND NOT PRIMARILY FOR PERSONAL, FAMILY OR HOUSEHOLD PURPOSES**.

SEE APPENDIX A, INVOICE NO. 1022143498 DATED 10/22/2014
FOR "PROPERTY DESCRIPTION"

Dealer Number: 41440
Contract Date:  10/22/2014
Debtor Number:

## ITEMIZATION OF TOTAL CREDIT SALE PRICE
(Time Price Disclosure)

| | | |
|---|---|---|
| 1. **Total cash sale price** (including tax, if any): | | $3447.23 |
| 2. Amount of down payment and/or trade-in | | |
|    a. Down Payment | $0.00 | |
|    b. Trade-in (Description of trade-in items are on the attached invoice or Appendix A) | $300.00 | |
|    c. Total Down Payment (2a + 2b): | | $300.00 |
| 3. Unpaid balance of total cash sale price: | | $3147.23 |
|    (Total cash sale price — total down payment) | | |
| 4. Security Interest Charge | | |
|    a. Public officials and/or process costs: | $56.00 | |
|    b. Florida Document Stamp Tax: | $0.00 | |
|       (Florida Residents Only) | | |
|    c. Processing Fee: | $0.00 | |
|    d. Total Security Interest Charge (4a+4b+4c) | | $56.00 |
| 5. Subtotal Principal Balance (new sale amount financed) | | $3203.23 |
|    (Unpaid balance of total cash sale price + Total Security Interest Charge) | | |
| 6. Unpaid Balance: | | $1904.72 |
|    (Current net total amount due under prior Credit Sale Contracts, Add-on Rider(s), and/or prior Extended Credit Purchase Money Security Agreements) Beginning Date on 1st Credit Sale Contract 01/28/2013 | | |
| 7. Other Charges (specify): | | $0.00 |
| 8. New Amount Financed: | | $5107.95 |
|    (Subtotal Principal Balance + Unpaid Balance + Other charges) (Note: finance charges will not be charged on accrued but unpaid finance charges. See Section 2 below.) | | |
| 9. Amount of Finance Charge (estimated, time price differential): | | $2294.77 |
| 10. TOTAL OF PAYMENTS (estimated) | | $7402.72 |
|    (New Amount Financed + Amount of Finance Charge) | | |
| 11. TOTAL CREDIT SALE PRICE (estimated) | | $7702.72 |
|    (Total of Payments + Total Down Payment) | | |

## YOUR PAYMENT SCHEDULE WILL BE:

**Number of Payments** 208

**Payments Due Each**  WEEK

**Payment Amount**   $35.59

**1st Payment Due Date** 10/29/2014

**ANNUAL PERCENTAGE RATE**   19.80%
The cost of your credit as a yearly rate

**Amount Financed**   $5107.95
(sum of 5, 6, and 7) The amount of credit provided to you or on your behalf:

**FINANCE CHARGE**   $2294.77
The estimated dollar amount the credit will cost you

**Total of Payments**   $7402.72
(sum of 8 and 9) The estimated amount you will have paid after you make all the payments on time

**Total Credit Sale Price**   $7702.72
(sum of 2c and 10)
The total estimated cost of your purchase on credit

**Insurance:** Credit life insurance and credit disability insurance are **not** required to obtain credit. You may obtain property insurance from anyone you want who is acceptable to Dealer's assignee, Snap-on Credit LLC. Insurance, if any is included in this contract, does not provide coverage for personal liability or property damage caused to others.

**Security:** You are giving a security interest in (a) the goods or property purchased under this Agreement; and (b) if permitted by law all other goods or property bearing any Snap-on® trademark, or distributed by or through Snap-on Incorporated or an affiliate.

**Late charge:** If a payment is late, you will be charged $10.00 or if less, the maximum amount permitted under applicable law.

**NSF charge:** If you make a payment by check or debit and that payment is denied by your bank for insufficient funds or any other reason, then you will owe not only the payment but also an NSF charge of $25, but not more than the maximum amount permitted under applicable law.

**Prepayment:** If you pay off early, you will not pay a penalty and you may be entitled to a refund of part of the finance charge. Your finance charges are calculated based on your average daily outstanding balance due.

**Add-On Rider:** If you have an unpaid balance on any Prior Agreement, Credit Sale Contract or Add-On Rider(s), then this Agreement is also an Add-On Rider to the prior Agreement(s). See below for additional information about any Add-On Rider.

**SEE BELOW AND ON ADDITIONAL PAGES** for additional terms and information about nonpayment, default, and repayment in full before the scheduled date, and prepayment refunds and penalties.

**IMPORTANT: READ BEFORE SIGNING. THE TERMS OF THIS AGREEMENT SHOULD BE READ CAREFULLY BECAUSE ONLY THOSE TERMS IN WRITING ARE ENFORCEABLE. NO OTHER TERMS OR ORAL PROMISES NOT CONTAINED IN THIS WRITTEN CONTRACT MAY BE LEGALLY ENFORCED. YOU MAY CHANGE THE TERMS OF THIS AGREEMENT ONLY BY ANOTHER WRITTEN AGREEMENT SIGNED BY YOU AND THE FRANCHISEE, DEALER OR SNAP-ON TOOLS COMPANY LLC OR ITS AFFILIATE THROUGH THEIR SALES REPRESENTATIVE (COLLECTIVELY REFERRED TO IN THIS AGREEMENT AS "DEALER") OR, IF ASSIGNED, WITH SNAP-ON CREDIT LLC ("SNAP-ON CREDIT") OR ITS ASSIGNS.**

## ADDITIONAL TERMS

**1. Offer of Cash Sale or Payment Over Time.** Dealer has offered you a choice of buying the Property for a stated cash price payable immediately or buying the Property for a Total Credit Sale Price which permits you to purchase the Property now, but pay in installments over an extended period of time. The Total Credit Sale Price will be more or less, depending on when you pay and the amount you pay each time, and the Total Credit Sale Price is more than the cash sale price because it includes a finance charge to compensate the Dealer for waiting before collecting the full purchase price.

**2. Payment Terms.** *You agree to pay to Dealer or Dealer's assignee the Amount Financed plus finance charges applied to the outstanding balance thereof at the annual percentage rate set forth on page one during the time any balance under this Agreement remains unpaid. You agree to make equal weekly payments (or such other periodic payment schedule if specifically agreed in writing) (in cash, check or money order) as set forth under "Your payment schedule will be" on the first page of this Agreement until all amounts due under this Agreement are paid (provided that the final payment shall be in the amount of the unpaid balance of the Amount Financed plus accrued but unpaid finance charges).* You may prepay the balance of the Amount Financed without penalty at any time; and doing so will reduce the amount of finance charge you would otherwise be required to pay. Unless you prepay the entire outstanding balance of the Amount Financed, however, the amount you are required to pay each week will remain the same, with any adjustments being reflected in the last payment and in the number of payments. If you make an overpayment when you prepay the entire outstanding balance of the Amount Financed, we will not be required to refund amounts less than $1.00. If you pay the amount due under this Agreement late, the finance charge will continue to accrue monthly on the unpaid average daily balance. In that event, your last payment may be increased to pay the full balance due. Dealer may offer a deferred first payment due date; however, the estimated Finance Charge and the number and amount of payments on the first page of this Agreement are based on payments beginning immediately after the date of this Agreement. If you elect to defer your payments, you will not be charged late fees, but finance charges will continue to accrue on the unpaid balance, and you will owe additional finance charges that may not be reflected in the estimate on the first page. "Same As Cash" benefit: this phrase means that although finance charges apply and begin accrual at contract inception, provided you pay the entire Unpaid Balance above within ninety (90) days in good funds from the contract date and are not otherwise in default, the finance charge will be waived and any amounts you paid representing finance charges will be refunded and applied against your account or returned to you; some promotions may feature alternate Same as Cash periods. You and your Dealer may agree to transfer to the Amount Financed any balance you may owe Dealer as a result of prior purchases pursuant to your truck account or revolving account ("RA") credit that Dealer has extended to you. You represent, warrant and agree that: (a) you voluntarily entered into this contract with Dealer for the full amount of the Amount Financed plus estimated time finance charges accruing on it instead of paying in full on the sale date; (b) all information supplied and statements made by you in any application for credit before or at the same time as the execution of this Agreement are and will be correct, complete and genuine, (c) you only owe the dealer for any prior purchases being transferred from RA and have no other liens and encumbrances on the RA tools and equipment being pledged as security under this Agreement, and (d) any items used as a trade-in are free of all liens or other encumbrances, are fully paid for, and you possess good and marketable title to it. The Unpaid Balance under any prior Agreement, including accrued but unpaid finance charges, is used to calculate your payment amount; however, you will pay finance charges only on the outstanding principal balance (cash price) of the Amount Financed at the contract rate until paid in full.

**3. Allocation of Payments.** Your payments will be allocated first to any additional charges, costs and expenses, and then to any finance charge in the order it is incurred, and then to the payment of the cash price of each purchase in the order in which the purchase was made under prior agreements (Credit Sale Contract or Add-On Riders) first and then this Agreement, with the payments being applied to the oldest purchase first; lowest-priced same day purchases paid off first. Down payments and trade-ins will be applied to the cash price of all items purchased on the same day, credited based upon the lowest-priced purchases first.

**4.** If this is an ADD-ON RIDER: **You agree to purchase the additional Property listed in the "Property Description" referred to above, Appendix A, any attachment(s) and any invoice(s) and to pay for such Property as well as the Property purchased under the prior Agreement(s) according to the payment terms listed in this Agreement which modifies the prior agreement terms. If the prior Agreement(s) to which this Add-On Rider relates has/have been assigned to Snap-on Credit LLC ("Snap-on Credit"), then this Add-On Rider is also assigned to Snap-on Credit subject to its acceptance** and all references to Dealer are to Snap-on Credit as Dealer's Assignee with respect to subsequent payments for items acquired under any contract.

**5. Grant of Security Interest.** As security for your obligations under this Agreement, or any other agreement with Dealer or Dealer's assignee, you hereby grant Dealer a purchase money security interest in each item of Property you purchase under this Agreement until that item is paid for. As further security for your obligations under this Agreement, in all states except where prohibited by applicable law for agreements of this type, you hereby grant Dealer a security interest in each other item of tools, goods and equipment previously purchased or hereafter acquired from a Snap-on Dealer, and any and all goods and equipment manufactured or distributed by Snap-on Incorporated or bearing Snap-on Incorporated trademarks or logos, together with all proceeds (including insurance proceeds), accessions, attachments, additions, substitutions and replacements to and of such items (the foregoing and the Property are collectively referred to as "Collateral"). If this Agreement is assigned to Snap-on Credit pursuant to Section 6 below, and if the Amount Financed includes a transfer of RA balance owed to Dealer, then Dealer hereby assigns to Snap-on Credit any purchase money security interest that Dealer may have in any merchandise reflected in the RA balance so transferred. In such case, Snap-on Credit shall continue to hold a purchase money security interest in such merchandise after such transfer. You agree not to remove any Collateral from the state where the original sale was made without the written consent of Dealer or Snap-on Credit, if this Agreement is assigned to Snap-on Credit. You agree not to sell, dispose of or encumber any Collateral until your entire balance due is paid in full. To the extent permitted by and subject to applicable law, you agree and hereby grant to Dealer and Snap-on Credit or its agent or assigns the power of attorney and right to sign on your behalf and file or record such financing statements or other documents as may be necessary to perfect or maintain the security interest granted by you under this Agreement.

**6. Assignment by Dealer.** (a) Dealer may assign this Agreement for value to **Snap-on Credit LLC, 950 Technology Way, Suite 301, Libertyville, IL 60048.** If Dealer assigns this Agreement to Snap-on Credit, then after such assignment (1) Snap-on Credit or its assigns shall have all the rights and remedies of Dealer under this Agreement and all of your obligations, agreements, representations and warranties shall be deemed to have been made to Snap-on Credit with the same effect as if Snap-on Credit were an original party to this Agreement; and (2) Dealer will not have any power or authority to exercise any such rights or remedies, give any consents under Section 5 or change or modify this Agreement or any related document in any way. (b) If this Agreement is assigned to Snap-on Credit, you agree to deliver your payments to Dealer or directly to Snap-on Credit. *The Dealer is not Snap-on Credit's agent for any purpose.* If you make payments to your Dealer, the Dealer will be acting as your agent. In that capacity, the Dealer has agreed with Snap-on Credit to remit payments under this Agreement to Snap-on Credit on a regular basis. You will be credited with payment on the date Snap-on Credit receives payment from the Dealer. Payments received by Snap-on Credit after 10:00 a.m. CST will be credited on the next business day. Snap-on Credit will credit you and waive additional finance charges and late charges on any installment regardless of when payment is received from the dealer *if you have proof of your timely payment to the Dealer* (such as a valid receipt or canceled check). Alternatively, you may make any payments (by debit, check or money order payable to Snap-on Credit, and not cash) directly to Snap-on Credit at the address provided to you by Snap-on Credit, in which case you will be credited with payment on the date Snap-on Credit receives the payment. Snap-on Credit may require you to make payments directly to it. Snap-on Credit's business days are Monday through Friday, excluding holidays.

**7. Property Insurance.** So long as Dealer or its assigns has a security interest in any Collateral, you will obtain and keep in force fire and other casualty Insurance on the Collateral in an amount and form written by insurers satisfactory to Dealer, with loss payable to Dealer or Dealer's assignee. If you fail to do so, Dealer or its assigns may, at their option, purchase such insurance, in which event you must pay the cost thereof to Dealer or its assigns on demand. However, any failure by Dealer to obtain and keep in force such insurance, after your failure to do so, shall not release you from any obligations or liability under this Agreement or any prior agreements. *Any insurance procured by Dealer under this section will not include insurance for property damage to others.*

**8. Additional Charges.** To the extent permitted by and subject to applicable law, you agree to pay the additional charges listed below. If a fee is not assessed, Dealer does not waive the right to insist on strict compliance with this Agreement by you at any time. **(a) Security Interest Charges.** You will be assessed a Security Interest Charge to cover (1) fees and charges paid to public officials for determining the existence of or for perfecting, releasing or satisfying the security interest you granted under this Agreement, (2) the costs payable for any outside service retained to provide searches and filings for

perfecting and verifying the security interest and (3) in certain states (depending on state rate limits and rate calculations) we may also charge an amount to recoup a portion of our production and management costs related to maintaining security interest transactions, not to exceed the greater of $15.00 or the maximum amount allowed by law. **(b) Late Charges.** If you fail to make payments under this Agreement within 10 days after the date due, you may be assessed a Late Charge of the lesser of: $10.00 or the maximum permitted by applicable law. **(c) NSF Check Charges.** If your check is not paid by your bank because of non-sufficient funds, a closed account, or any other reason, you may be assessed an NSF Check Charge of the lesser of $25.00 or the maximum permitted by law. **(d) Legal Fees.** In addition to the full amount owed and any court costs, if any matter arising out of your default under this Agreement is referred to an attorney to collect the amount you owe or to repossess any Collateral, you agree to pay all costs and expenses (including all actual and reasonable attorneys' fees and costs) incurred by us in enforcing any of the terms of this Agreement or any of our rights against you. **(e) Extension fees.** In the event we provide you a contract term modification or payment extension at your request or as part of another type of payment arrangement, we reserve the right to charge a one time extension fee of the lesser of $30.00 or the maximum amount allowed by law to offset a portion of our costs associated with such change. **(f) Electronic Payments.** If you choose to pay your payments via a phone payment or internet payment service we offer or designate, you agree to pay a fee for each such payment of the lesser of $10 or the maximum amount allowed by law  **(g) Other Considerations.** We reserve the right to charge additional fees as appropriate in the event the parties agree to other contract modifications.

9.    **Events of Default.** The occurrence of any one of the following events constitutes a default under this Agreement: (a) You do not pay at least the minimum payments due or you otherwise become delinquent on any other obligation to Dealer or to Snap-on Credit or its assigns, or if this Agreement is assigned, to such assignee; (b) you file or consent to the filing of bankruptcy or similar proceedings against you or you become insolvent, or your financial condition deteriorates significantly and it appears likely that you will not be able to repay Dealer for any reason; (c) you die, become imprisoned or are declared legally incompetent; (d) you at any time give Dealer information that is inaccurate, misleading or incomplete; or (e) you fail to comply with any terms or conditions of this Agreement.

10.    **Acceleration; Remedies.** Dealer, or if assigned, Dealer's assignee will have all the rights and remedies of a secured creditor under the Uniform Commercial Code and any other applicable laws. In addition, if any one of the events of default occurs, subject to any right you may have under applicable law to receive notice of and to cure such default, at Dealer's option Dealer may (a) declare the entire unpaid balance due under this Agreement immediately due and payable; and (b) repossess any Collateral in which Dealer still retains a security interest, and without limiting the foregoing, in the event this or any other transaction is assigned, any Collateral in which assignee still retains a security interest but only in the manner and to the extent permitted by applicable law. If Dealer resells any repossessed Collateral, Dealer agrees to pay you any surplus remaining (after deduction of the costs of repossession and sale and other costs, including reasonable attorneys' fees, to the extent permitted by law) and you agree to pay Dealer any deficiency in accordance with the Uniform Commercial Code. Dealer may accept late or partial payments or any payments marked as being payment in full or as being settlement for any dispute _without prejudicing any of Dealer's rights under or in any way amending this Agreement._ Dealer's failure or delay at any time to exercise any of Dealer's contract, legal or equitable rights shall not be deemed a waiver of these rights nor of the right to exercise Dealer's rights at any other time. If Snap-on Credit becomes the secured party under this Agreement, you agree that it is commercially reasonable for repossessed Collateral to be sold at public or private sales (in any state or county selected by Snap-on Credit) to dealers or others in lots or pieces (with or without the Collateral being physically present) at used tool prices. In the event you do not pay all amounts due under this contract and you are unreachable, or in the event of settlement or other events, IRS regulations may require Dealer to file a 1099-C form for informational purposes showing the remaining unpaid amounts due under your original contract regardless of any dispute. The mere filing of such 1099-C does not itself constitute a forgiveness or adjustment of any amounts due. The term "Buyer" and "Dealer" as used in this Agreement also mean "debtor" and "secured party" respectively and include heirs, executors, or administrators, successors and permitted assigns of those parties.

11.    **Governing Law.** THIS AGREEMENT SHALL BE GOVERNED BY THE LAWS OF THE STATE OF ILLINOIS, THE ASSIGNEE'S STATE; PROVIDED, HOWEVER, IN THE EVENT THIS AGREEMENT OR ANY OF ITS PROVISIONS CANNOT BE ENFORCED UNDER ILLINOIS LAW, THEN THE LAWS OF THE STATE OR OTHER LOCALITY OF YOUR RESIDENCE SHALL GOVERN. If used in U.S. Territories or Commonwealths, this Agreement is not be governed by the United Nations Convention on Contracts for the International Sale of Goods.

12.    **Jury Trial Waiver and Class Waiver.** YOU AND DEALER WAIVE ALL RIGHTS TO A TRIAL BY JURY.  YOU AGREE THAT YOU, THE BUYER, MAY ONLY BRING CLAIMS AGAINST DEALER OR ANY ASSIGNEE IN ITS INDIVIDUAL CAPACITY AND NOT AS A PLAINTIFF OR CLASS MEMBER IN ANY PURPORTED CLASS OR REPRESENTATIVE PROCEEDING.

13.    **Transfer of Agreement.** Dealer reserves the right to sell or transfer this Agreement in whole or in part to another entity or person without prior notice to you. You, however, cannot transfer this Agreement or rights and obligations under this Agreement to any other entity or person.

14.    **Finance Charge Savings Clause.** – Notwithstanding any other provision in this Agreement, the aggregate finance charge rate utilized with respect to any of the obligations, including all charges or fees in connection therewith deemed includable in the finance charge shall not exceed the maximum lawful rate. If the finance charge under this Agreement at any time exceeds the maximum allowed by law, the outstanding amount of the Amount Financed shall bear finance charges at the maximum lawful rate until the total finance charges due and total amount financed are paid in full at such rate.  The parties intend to conform to any applicable laws limiting finance charges on this type of Agreement. Accordingly, if Dealer contracts for, charges, or receives any consideration which constitutes interest in excess of maximum allowed by law, then any such excess shall be cancelled automatically and, if previously paid, shall at such Lender's option be applied to the outstanding amount remaining due hereunder or be refunded to Buyer

15.    **Severability; Entire Agreement.** If any term, provision or section of this Agreement is held void, voidable, invalid or unenforceable under any statute or court decision, or any governmental rule or regulation, the remainder of the Agreement shall remain effective, and any such ineffectiveness shall not affect the validity or enforceability of this Agreement in any other jurisdiction. This Agreement, any previous Credit Sale Contract, Add-On Riders and, any written addenda or riders hereto signed by both parties constitutes the entire agreement between the parties regarding the subject matter of this Agreement.


**THE REST OF THIS PAGE IS INTENTIONALLY LEFT BLANK**

C96_1_1_EECFD82H_20131208.C96

**Notice to Maryland Residents.** Agreement is pursuant to Subtitle 10 (Credit Grantor Closed End Contract Provisions) of Md. Code Ann., Fin. Inst. §12-100 *et seq.*

**Notice to California Residents.** California Finance Lenders License No. 603-6880.  For California residents, NSF Fees are limited to a maximum of $15.00 and Late Charges are limited to a maximum of $10.00

**Notice to District of Columbia Residents.** Seller certifies that the information contained in the contract complies with the District of Columbia Municipal Regulations, Title 16, Chapter 3.

**Notice to Connecticut Residents.** Attorneys' fees, which are permitted under Sections 8 and 10 of this Agreement, may not exceed 15% of the amount due plus court costs, and may only be collected or sought from Connecticut Residents when the contract is referred to an attorney, not a salaried employee of the holder of the contract, for collection. Late charges may not exceed the lesser of 5% of the past due installment (whether weekly or monthly) or $10.00.

**Notice to South Dakota Residents.** Any concerns regarding improprieties may be reported to the South Dakota Div. of Banking, 1601 N. Harrison Avenue, Suite 1, Pierre, SD 57501 or call 605-773-3421.

THIS DOCUMENT CONSISTS OF THE FINANCIAL TERMS ON PAGE 1, THE ADDITIONAL TERMS IN SECTIONS 1 THROUGH 15, THIS PAGE, AND ANY ATTACHED APPENDIX A

**IMPORTANT: READ BEFORE SIGNING. THE TERMS OF THIS AGREEMENT SHOULD BE READ CAREFULLY BECAUSE ONLY THOSE TERMS IN WRITING ARE ENFORCEABLE. NO OTHER TERMS OR ORAL PROMISES NOT CONTAINED IN THIS WRITTEN CONTRACT MAY BE LEGALLY ENFORCED. YOU MAY CHANGE THE TERMS OF THIS AGREEMENT ONLY BY ANOTHER WRITTEN AGREEMENT SIGNED BY YOU AND THE DEALER OR SNAP-ON TOOLS COMPANY LLC OR ITS AFFILIATE THROUGH THEIR SALES REPRESENATIVE (COLLECTIVELY REFERRED TO IN THIS AGREEMENT AS "DEALER") OR, IF ASSIGNED, WITH SNAP-ON CREDIT LLC ("SNAP-ON CREDIT") OR ITS ASSIGNS.**

## BUYER ACKNOWLEDGES RECEIPT OF PRODUCT AND A COPY OF THIS AGREEMENT

### NOTICE TO BUYER

DO NOT SIGN THIS CONTRACT (CREDIT SALE CONTRACT OR ADD-ON RIDER) BEFORE YOU READ IT OR IF IT CONTAINS ANY BLANK SPACES.

YOU ARE ENTITLED TO A COMPLETELY FILLED-IN COPY OF THE CONTRACT WHEN YOU SIGN IT.

UNDER THE LAW, YOU HAVE THE FOLLOWING RIGHTS, AMONG OTHERS:
  (a) TO PAY OFF IN ADVANCE THE FULL AMOUNT DUE AND OBTAIN A PARTIAL REFUND OF ANY UNEARNED
       FINANCE CHARGE;
  (b) TO REDEEM THE PROPERTY IF REPOSSESSED FOR A DEFAULT;
  (c) TO REQUIRE, UNDER CERTAIN CONDITIONS, RESALE OF THE PROPERTY IF REPOSSESSED.

| CIC Live Signature | CIC Live Signature |
|---|---|
| KENNETH CASLER | RODNEY FAMA |
| 08:43:15 AM 10-22-2014 (-04:00 GMT) | 08:43:22 AM 10-22-2014 (-04'00' GMT) |
| I, KENNETH CASLER, am signing to certify the authenticity of this document. | I, RODNEY FAMA, am signing this document to confirm that it has been reviewed. |

**DEALER (SECURED PARTY)**

KENNETH CASLER

58 North Watchung Ave.

HAWTHORNE, NJ 07506

**BUYER (DEBTOR)**

RODNEY FAMA

25 MANON BLVD.

MONROE, NJ 08831

Dealer assigns for value all right, title and interest in this Agreement to **Snap-on Credit LLC**, subject to acceptance by Snap-on Credit LLC. By providing the information on the unpaid balance due under any prior Agreement, Credit Sale Contract or any Add-On Rider(s) above for this transaction, Snap-on Credit LLC consents to the rescheduling of payments under the Credit Sale Contract and any Add-On Rider(s) previously assigned to Snap-on Credit LLC.

Snap-on Credit LLC - 950 Technology Way, Suite 301 - Libertyville, IL 60048 - (877)777-8455

C96_1_1_EECFD82H_20131208.C96

# APPENDIX A
## "Property Description"

INVOICE DATE   10/22/2014                  INVOICE NUMBER 1022143498        DEBTOR NUMBER

Dealer                                     Buyer (Debtor)
**KENNETH CASLER**                         **RODNEY FAMA**

Invoice Subtotal      $      559.70        Total R/A Transfer $   2527.35       Shipping/Handling $      0.00

Tax Applied           $       60.18        Invoice Total      $    559.70       S/H Tax          $

Total Including Tax   $      619.88

| Line | QTY | PRODUCT NO. SERIAL NO. | DESCRIPTION | EACH | COMMENTS | LC | LINE TOTAL |
|---|---|---|---|---|---|---|---|
| 1 | 1 | PL400B | PLIER SET | 159.75 | 20.00 | 10 | 139.75 |
| 2 | 1 | CT8850 ct8850 | 18v Li-ION 1/2" DRIVE IMPACT | 719.95 | 0.00 | 0 | 719.95 |
| 3 | 1 | EESP318U1 14.4-3530325355483532343373439 | SOLUS ULTRA UPGRADE 14.4 | 999.00 | 0.00 | 7 | 999.00 |
| 4 | 1 | 313TWYA | S/HEX SET | 144.00 | 0.00 | 7 | 144.00 |
| 5 | 1 | 309SIMYA | 1/2IN 6PT DP FRA IMP SKT SET | 131.00 | 0.00 | 7 | 131.00 |
| 6 | 1 | 110TMSY72PK | ON PK 110TMSY AND TLL72 TS72 | 169.90 | 0.00 | 7 | 169.90 |
| 7 | 1 | SGDX40BG | 4PC GRN SOFT GRIP SCRDRVR SET | 0.00 | 0.00 | 7 | 0.00 |
| 8 | 1 | SGDX80BG | GREEN 8PC SOFT GRIP SCRDR SET | 157.95 | 0.00 | 7 | 157.95 |
| 9 | 1 | UIM325 | 3-1/4"DI.MIRROR | 19.85 | 0.00 | 7 | 19.85 |
| 10 | 1 | TF72 | 72 TOOTH FLEX HANDLE RATCHET | 49.95 | 0.00 | 7 | 49.95 |
| 11 | 1 | 311IMYA | 1/2IN 6PT SHAL FRAC IMP SKT ST | 101.00 | 0.00 | 7 | 101.00 |
| 12 | 1 | SGDX80BG | GREEN 8PC SOFT GRIP SCRDR SET | 157.95 | 0.00 | 7 | 157.95 |
| 13 | 1 | 110TMSY72PK | ON PK 110TMSY AND TLL72 TS72 | 167.90 | 0.00 | 7 | 167.90 |
| 14 | 1 | TF72 | 72 TOOTH FLEX HANDLE RATCHET | 50.95 | 0.00 | 7 | 50.95 |
| 15 | 1 | 309SIMYA | 1/2IN 6PT DP FRA IMP SKT SET | 131.00 | 0.00 | 7 | 131.00 |
| 16 | 1 | 311IMYA | 1/2IN 6PT SHAL FRAC IMP SKT ST | 101.00 | 0.00 | 7 | 101.00 |
| 17 | 1 | 313TWYA | S/HEX SET | 145.00 | 0.00 | 7 | 145.00 |
| 18 | 1 | RA ACCOUNT | Ra Account | 135.00 | 0.00 | 7 | 135.00 |
| 19 | -1 | ECREBATE300 | EC INSTANT REBATE 300 | 300.00 | 0.00 | 8 | -300.00 |

# *Snap-on Credit*

### RETAIL INSTALLMENT CONTRACT
### CREDIT SALE CONTRACT OR ADD-ON RIDER

This Credit Sale Contract or Add-on Rider ("Credit Sale Contract" or "Agreement") provides the terms that the buyer named below (referred to as "you" "your," or "Buyer") agrees to purchase the tools, equipment and other merchandise listed under "Property Description" or on attached invoice or appendix from an authorized Snap-on Tools Company LLC Franchisee, Authorized Dealer or Snap-on sales representative ("Dealer"). **BUYER REPRESENTS AND WARRANTS THAT THE PROPERTY PURCHASED UNDER THIS AGREEMENT IS TO BE USED PRIMARILY FOR COMMERCIAL OR BUSINESS PURPOSES AND NOT PRIMARILY FOR PERSONAL, FAMILY OR HOUSEHOLD PURPOSES.**

SEE APPENDIX A, INVOICE NO. 32308      DATED 01/28/2013
FOR "PROPERTY DESCRIPTION"

Dealer Number:   41440
Contract Date:    01/28/2013
Debtor Number:

## ITEMIZATION OF TOTAL CREDIT SALE PRICE
(Time Price Disclosure)

1. **Total cash sale price** (including tax, if any):        $ 4104.65
2. Amount of down payment and/or trade-in
   a. Down Payment                                    $ 0.00
   b. Trade-in (Description of trade-in items          $ 900.00
      are on the attached invoice or Appendix A)
   c. Total Down Payment (2a + 2b):                              $ 900.00
3. Unpaid balance of total cash sale price:                       $ 3204.65
   (Total cash sale price – total down payment)
4. Security Interest Charge
   a. Public officials and/or process costs:          $ 55.00
   b. Florida Document Stamp Tax:                     $ 0.00
      (Florida Residents Only)
   c. Processing Fee:                                $ 0.00
   d. Total Security Interest Charge (4a+4b+4c)                   $ 55.00
5. Subtotal Principal Balance (new amount financed):             $ 3259.65
   (Unpaid balance of total cash sale price + Total
   Security Interest Charge)
6. Unpaid Balance:                                             $ 0.00
   (Payoff of prior Credit Sale Contracts, Add-on Rider(s),
   and prior Extended Credit Purchase Money
   Security Agreements)
   Beginning Date on 1st Credit Sale Contract
7. Other Charges (specify):                                     $ 0.00
8. New Amount Financed:                                        $ 3259.65
   (Subtotal Principal Balance + Unpaid Balance +
   Other charges) (Note: finance charges will not be charged
   on accrued but unpaid finance charges. See Section 2 below.)
9. Amount of Finance Charge (estimated):                        $ 1069.35
10. TOTAL OF PAYMENTS (estimated)                              $ 4329.00
    (New Amount Financed + Amount of Finance Charge)
11. TOTAL CREDIT SALE PRICE (estimated)                        $ 5229.00
    (Total of Payments + Total Down Payment)

### YOUR PAYMENT SCHEDULE WILL BE:

**Number of Payments** 156

**Payments Due Each**  WEEK

**Payment Amount**            $ 27.75

**1st Payment Due Date** 02/05/2013

**ANNUAL PERCENTAGE RATE**    19.800%
The cost of your credit as a yearly rate

**Amount Financed**              $ 3259.65
(sum of 5, 6, and 7) The amount of credit
provided to you or on your behalf:

**FINANCE CHARGE**           $ 1069.35
The estimated dollar amount
the credit will cost you

**Total of Payments**            $ 4329.00
(sum of 8 and 9) The estimated amount
you will have paid after you make
all the payments on time

**Total Credit Sale Price**      $ 5229.00
(sum of 2c and 10)
The total estimated cost of
your purchase on credit

**Insurance:** Credit life insurance and credit disability insurance are <u>not</u> required to obtain credit. You may obtain property insurance from anyone **you want who is acceptable to Dealer's assignee, Snap-on Credit LLC.** Insurance, if any is included in this contract, does not provide coverage for personal liability or property damage caused to others.

**Security:** You are giving a security interest in (a) the goods or property being purchased under this Agreement and any prior Agreement; and (b) if permitted by law all other goods or property bearing any Snap-on® trademark, or distributed by or through Snap-on Incorporated or an affiliate.

**Late charge:** If a payment is late, you will be charged $10.00 or if less, the maximum amount permitted under applicable law.

**NSF charge:** If you make a payment by check or debit and that payment is denied by your bank for insufficient funds or any other reason, then you will owe not only the payment but also an NSF charge of $25, but not more than the maximum amount permitted under applicable law.

**Prepayment:** If you pay off early, you will not pay a penalty and you may be entitled to a refund of part of the finance charge. Your finance charges are calculated based on your average daily outstanding balance due.

**Add-On Rider:** If you have an unpaid balance on any Prior Agreement, Credit Sale Contract or Add-on Rider(s), then this Agreement is also an Add-On Rider to the prior Agreement(s). See below for additional information about any Add-On Rider.

**SEE BELOW AND ON ADDITIONAL PAGES** for additional terms and information about nonpayment, default, and repayment in full before the scheduled date, and prepayment refunds and penalties.

**IMPORTANT: READ BEFORE SIGNING. THE TERMS OF THIS AGREEMENT SHOULD BE READ CAREFULLY BECAUSE ONLY THOSE TERMS IN WRITING ARE ENFORCEABLE. NO OTHER TERMS OR ORAL PROMISES NOT CONTAINED IN THIS WRITTEN CONTRACT MAY BE LEGALLY ENFORCED. YOU MAY CHANGE THE TERMS OF THIS AGREEMENT ONLY BY ANOTHER WRITTEN AGREEMENT SIGNED BY YOU AND THE FRANCHISEE, DEALER OR SNAP-ON TOOLS COMPANY LLC OR ITS AFFILIATE THROUGH ITS SALES REPRESENATIVE (COLLECTIVELY REFERRED TO IN THIS AGREEMENT AS "DEALER") OR, IF ASSIGNED, WITH SNAP-ON CREDIT LLC ("SNAP-ON CREDIT") OR ITS ASSIGNS.**

## ADDITIONAL TERMS

1.  **Offer of Cash Sale or Payment Over Time.** Dealer has offered you a choice of buying the Property for a stated cash price payable immediately or buying the Property for a Total Credit Sale Price which permits you to purchase the Property now, but pay in installments over an extended period of time. The Total Credit Sale Price will be more or less, depending on when you pay and the amount you pay each time, and the Total Credit Sale Price is more than the cash sale price because it includes a finance charge to compensate the Dealer for waiting before collecting the full purchase price.

2.  **Payment Terms.** *You agree to pay to Dealer or Dealer's assignee the Amount Financed plus finance charges applied to the outstanding balance thereof at the annual percentage rate set forth on page one during the time any balance under this Agreement remains unpaid. You agree to make equal weekly payments (or such other periodic payment schedule if specifically agreed in writing) (in cash, check or money order) as set forth under "Your payment schedule will be" on the first page of this Agreement until all amounts due under this Agreement are paid (provided that the final payment shall be in the amount of the unpaid balance of the Amount Financed plus accrued but unpaid finance charges).* You may prepay the balance of the Amount Financed without penalty at any time; and doing so will reduce the amount of finance charge you would otherwise be required to pay. Unless you prepay the entire outstanding balance of the Amount Financed, however, the amount you are required to pay each week will remain the same, with any adjustments being reflected in the last payment and in the number of payments. If you make an overpayment when you prepay the entire outstanding balance of the Amount Financed, we will not be required to refund amounts less than $1.00. If you pay the amount due under this Agreement late, the finance charge will continue to accrue monthly on the unpaid average daily balance. In that event, your last payment may be increased to pay the full balance due. Dealer may offer a deferred first payment due date; however, the estimated Finance Charge and the number and amount of payments on the first page of this Agreement are based on payments beginning immediately after the date of this Agreement. If you elect to defer your payments, you will not be charged late fees, but finance charges will continue to accrue on the unpaid balance, and you will owe additional finance charges that may not be reflected in the estimate on the first page. You and your Dealer may agree to transfer to the Amount Financed any balance you may owe Dealer as a result of prior purchases pursuant to your truck account or revolving account ("RA") credit that Dealer has extended to you. You represent, warrant and agree that: (a) you are justly indebted to Dealer for the full amount of the Amount Financed plus finance charges accruing on it; (b) all information supplied and statements made by you in any application for credit before or at the same time as the execution of this Agreement are and will be correct, complete and genuine, (c) you only owe the dealer for any prior purchases being transferred from RA and have no other liens and encumbrances on the RA tools and equipment being pledged as security under this Agreement, and (d) any items used as a trade-in are free of all liens or other encumbrances, are fully paid for, and you possess good and marketable title to it. The Unpaid Balance under any prior Agreement, including accrued but unpaid finance charges, is used to calculate your payment amount; however, you will pay finance charges only on the outstanding principal balance (cash price) of the Amount Financed.

3.  **Allocation of Payments.** Your payments will be allocated first to any additional charges, costs and expenses, and then to any finance charge in the order it is incurred, and then to the payment of the cash price of each purchase in the order in which the purchase was made under prior agreements (Credit Sale Contract or Add-On Riders) first and then this Agreement, with the payments being applied to the oldest purchase first; lowest-priced same day purchases paid off first. Down payments and trade-ins will be applied to the cash price of all items purchased on the same day, credited based upon the lowest-priced purchases first.

4.  If this is an ADD-ON RIDER: **You agree to purchase the additional Property listed in the "Property Description" referred to above, Appendix A, any attachment(s) and any invoice(s) and to pay for such Property as well as the Property purchased under the prior Agreement(s) according to the payment terms listed in** this **Agreement. If the prior Agreement(s) to which this Add-On Rider relates has/have been assigned to Snap-on Credit LLC ("Snap-on Credit"), then this Add-On Rider is also assigned to Snap-on Credit and all references to Dealer are to Snap-on Credit as Dealer's Assignee.**

5.  **Grant of Security Interest.** As security for your obligations under this Agreement, or any other agreement with Dealer or Dealer's assignee, you hereby grant Dealer a purchase money security interest in each item of Property you purchase under this Agreement until that item is paid for. As further security for your obligations under this Agreement, in all states except where prohibited by applicable law for agreements of this type, you hereby grant Dealer a security interest in each other item of tools, goods and equipment previously purchased or hereafter acquired from a Snap-on Dealer, and any and all goods and equipment manufactured or distributed by Snap-on Incorporated or bearing Snap-on Incorporated trademarks or logos, together with all proceeds (including insurance proceeds), accessions, attachments, additions, substitutions and replacements to and of such items (the foregoing and the Property are collectively referred to as "Collateral"). If this Agreement is assigned to Snap-on Credit pursuant to Section 6 below, and if the Amount Financed includes a transfer of RA balance owed to Dealer, then Dealer hereby assigns to Snap-on Credit any purchase money security interest that Dealer may have in any merchandise reflected in the RA balance so transferred. In such case, Snap-on Credit shall continue to hold a purchase money security interest in such merchandise after such transfer. You agree not to remove any Collateral from the state where the original sale was made without the written consent of Dealer or Snap-on Credit, if this Agreement is assigned to Snap-on Credit. You agree not to sell, dispose of or encumber any Collateral until your entire balance due is paid in full. To the extent permitted by and subject to applicable law, you agree and hereby grant to Dealer and Snap-on Credit or its agent or assigns the power of attorney and right to sign on your behalf and file or record such financing statements or other documents as may be necessary to perfect or maintain the security interest granted by you under this Agreement.

6.  **Assignment by Dealer.** (a) Dealer may assign this Agreement for value to **Snap-on Credit LLC, 950 Technology Way, Suite 301, Libertyville, IL 60048.** If Dealer assigns this Agreement to Snap-on Credit, then after such assignment (1) Snap-on Credit or its assigns shall have all the rights and remedies of Dealer under this Agreement and all of your obligations, agreements, representations and warranties shall be deemed to have been made to Snap-on Credit with the same effect as if Snap-on Credit were an original party to this Agreement; and (2) Dealer will not have any power or authority to exercise any such rights or remedies, give any consents under Section 5 or change or modify this Agreement or any related document in any way. (b) If this Agreement is assigned to Snap-on Credit, you agree to deliver your payments to Dealer or directly to Snap-on Credit. *The Dealer is not Snap-on Credit's agent for any purpose.* If you make payments to your Dealer, the Dealer will be acting as your agent. In that capacity, the Dealer has agreed with Snap-on Credit to remit payments under this Agreement to Snap-on Credit on a regular basis. You will be credited with payment on the date Snap-on Credit receives payment from the Dealer. Payments received by Snap-on Credit after 10:00 a.m. CST will be credited on the next business day. Snap-on Credit will credit you and waive additional finance charges and late charges on any installment regardless of when payment is received from the dealer *if you have proof of your timely payment to the Dealer* (such as a valid receipt or canceled check). Alternatively, you may make any payments (by debit, check or money order payable to Snap-on Credit, and not cash) directly to Snap-on Credit at the address provided to you by Snap-on Credit, in which case you will be credited with payment on the date Snap-on Credit receives the payment. Snap-on Credit may require you to make payments directly to it. Snap-on Credit's business days are Monday through Friday, excluding holidays.

7.  **Property Insurance.** So long as Dealer or its assigns has a security interest in any Collateral, you will obtain and keep in force fire and other casualty Insurance on the Collateral in an amount and form written by insurers satisfactory to Dealer, with loss payable to Dealer or Dealer's assignee. If you fail to do so, Dealer or its assigns may, at their option, purchase such insurance, in which event you must pay the cost thereof to Dealer or its assigns on demand. However, any failure by Dealer to obtain and keep in force such insurance, after your failure to do so, shall not release you from any obligations or liability under this Agreement or any prior agreements. *Any insurance procured by Dealer under this section will not include insurance for property damage to others.*

8.  **Additional Charges.** To the extent permitted and subject to applicable law, you agree to pay the additional charges listed below. If a fee is not assessed, Dealer does not waive the right to insist on strict compliance with this Agreement by you at any time. *(a) Security Interest Charges.* You will be assessed a Security Interest Charge to cover (1) fees and charges paid to public officials for determining the existence of or for perfecting, releasing or satisfying the security interest you granted under this Agreement, (2) the costs payable for any outside service retained to provide searches and filings for perfecting and verifying the security interest and (3) in certain states (depending on state rate limits and rate calculations) we may also charge an amount to recoup a portion of our production and management costs related to maintaining security interest transactions, not to exceed $15.00. *(b) Late Charges.* If you fail to make payments under this Agreement within 10 days after the date due, you may be assessed a Late Charge of the lesser of: $10.00 or the maximum permitted by applicable law. *(c) NSF Check Charges.* If your check is not paid by your bank because of non-sufficient funds, a closed account, or any other reason, you may be assessed an NSF Check Charge of the lesser of $25.00 or the maximum permitted by law. *(d) Legal Fees.* In addition to the full amount owed and any court costs, if any matter arising out of your default under this Agreement is referred to an attorney to collect the amount you owe or to repossess any Collateral, you agree to pay all costs and expenses (including all actual and reasonable attorneys' fees and costs) incurred by us in enforcing any of the terms of this Agreement or any of our rights against you. *(e) Extension fees.* In the event we provide you a contract term modification or payment extension at your request or as part of another type of payment arrangement, we reserve the right to charge a one time extension fee of the lesser of $30.00 or the maximum amount allowed by law to offset a portion of our costs associated with such change. *(f) Other Considerations.* We reserve the right to charge additional fees as appropriate in the event the parties agree to other contract modifications.

C96_1_1_EECFD82E_20110228.C96

9.   **Events of Default.** The occurrence of any one of the following events constitutes a default under this Agreement: (a) You do not pay at least the minimum payments due or you otherwise become delinquent on any other obligation to Dealer or to Snap-on Credit or its assigns, or if this Agreement is assigned, to such assignee; (b) you file or consent to the filing of bankruptcy or similar proceedings against you or you become insolvent, or your financial condition deteriorates significantly and it appears likely that you will not be able to repay Dealer for any reason; (c) you die, become imprisoned or are declared legally incompetent; (d) you at any time give Dealer information that is inaccurate, misleading or incomplete; or (e) you fail to comply with any terms or conditions of this Agreement.

10.   **Acceleration; Remedies.** Dealer, or if assigned, Dealer's assignee will have all the rights and remedies of a secured creditor under the Uniform Commercial Code and any other applicable laws. In addition, if any one of the events of default occurs, subject to any right you may have under applicable law to receive notice of and to cure such default, at Dealer's option Dealer may (a) declare the entire unpaid balance due under this Agreement immediately due and payable; and (b) repossess any Collateral in which Dealer still retains a security interest, and without limiting the foregoing, in the event this or any other transaction is assigned, any Collateral in which assignee still retains a security interest but only in the manner and to the extent permitted by applicable law. If Dealer resells any repossessed Collateral, Dealer agrees to pay you any surplus remaining (after deduction of the costs of repossession and sale and other costs, including reasonable attorneys' fees, to the extent permitted by law) and you agree to pay Dealer any deficiency in accordance with the Uniform Commercial Code. Dealer may accept late or partial payments or any payments marked as being payment in full or as being settlement for any dispute without prejudicing any of Dealer's rights under or in any way amending this Agreement. Dealer's failure or delay at any time to exercise any of Dealer's contract, legal or equitable rights shall not be deemed a waiver of these rights nor of the right to exercise Dealer's rights at any other time. If Snap-on Credit becomes the secured party under this Agreement, you agree that it is commercially reasonable for repossessed Collateral to be sold at public or private sales (in any state or county selected by Snap-on Credit) to dealers or others in lots or pieces (with or without the Collateral being physically present) at used tool prices. In the event you do not pay all amounts due under this contract and you are unreachable, or in the event of settlement or other events, IRS regulations may require Dealer to file a 1099-C form for informational purposes showing the remaining unpaid amounts due under your original contract regardless of any dispute. The mere filing of such 1099-C does not itself constitute a forgiveness or adjustment of any amounts due. The term "Buyer" and "Dealer" as used in this Agreement also mean "debtor" and "secured party" respectively and include heirs, executors, or administrators, successors and permitted assigns of those parties.

11.   **Governing Law.** THIS AGREEMENT SHALL BE GOVERNED BY THE LAWS OF THE STATE OF ILLINOIS, THE ASSIGNEE'S STATE; PROVIDED, HOWEVER, IN THE EVENT THIS AGREEMENT OR ANY OF ITS PROVISIONS CANNOT BE ENFORCED UNDER ILLINOIS LAW, THEN THE LAWS OF THE STATE OR OTHER LOCALITY WHERE YOU RESIDE SHALL GOVERN. YOU AND DEALER WAIVE ALL RIGHTS TO A TRIAL BY JURY. If used in U.S. Territories or Commonwealths, this Agreement is not be governed by the United Nations Convention on Contracts for the International Sale of Goods.

12.   **Transfer of Agreement.** Dealer reserves the right to sell or transfer this Agreement in whole or in part to another entity or person without prior notice to you. You, however, cannot transfer this Agreement or rights and obligations under this Agreement to any other entity or person.

13.   **Severability; Entire Agreement.** If any term, provision or section of this Agreement is held void, voidable, invalid or unenforceable under any statute or court decision, or any governmental rule or regulation, the remainder of the Agreement shall remain effective, and any such ineffectiveness shall not affect the validity or enforceability of this Agreement in any other jurisdiction. This Agreement, any previous Credit Sale Contract, Add-On Riders and, any written addenda or riders hereto signed by both parties constitutes the entire agreement between the parties regarding the subject matter of this Agreement.

**Notice to Maryland Residents.** Agreement is pursuant to Subtitle 10 (Credit Grantor Closed End Contract Provisions) of Md. Code Ann., Fin. Inst. §12-100 *et seq.*

**Notice to California Residents.** California Finance Lenders License No. 603-6880.

**Notice to District of Columbia Residents.** Seller certifies that the information contained in the contract complies with the District of Columbia Municipal Regulations, Title 16, Chapter 3.

**Notice to Connecticut Residents.** Attorneys' fees, which are permitted under Sections 8 and 10 of this Agreement, may not exceed 15% of the amount due plus court costs, and may only be collected or sought from Connecticut Residents when the contract is referred to an attorney, not a salaried employee of the holder of the contract, for collection. Late charges may not exceed the lesser of 5% of the past due installment (whether weekly or monthly) or $10.00.

**Notice to South Dakota Residents.** Any concerns regarding improprieties may be reported to the South Dakota Div. of Banking, 217 ½ W. Missouri Ave., Pierre, South Dakota, 57501 or call 605-773-3421.

**IMPORTANT: READ BEFORE SIGNING. THE TERMS OF THIS AGREEMENT SHOULD BE READ CAREFULLY BECAUSE ONLY THOSE TERMS IN WRITING ARE ENFORCEABLE. NO OTHER TERMS OR ORAL PROMISES NOT CONTAINED IN THIS WRITTEN CONTRACT MAY BE LEGALLY ENFORCED. YOU MAY CHANGE THE TERMS OF THIS AGREEMENT ONLY BY ANOTHER WRITTEN AGREEMENT SIGNED BY YOU AND THE DEALER OR SNAP-ON TOOLS COMPANY LLC OR ITS AFFILIATE THROUGH THEIR SALES REPRESENATIVE (COLLECTIVELY REFERRED TO IN THIS AGREEMENT AS "DEALER") OR, IF ASSIGNED, WITH SNAP-ON CREDIT LLC ("SNAP-ON CREDIT") OR ITS ASSIGNS.**

## BUYER ACKNOWLEDGES RECEIPT OF PRODUCT AND A COPY OF THIS AGREEMENT

### NOTICE TO BUYER

DO NOT SIGN THIS CONTRACT (CREDIT SALE CONTRACT OR ADD-ON RIDER) BEFORE YOU READ IT OR IF IT CONTAINS ANY BLANK SPACES. YOU ARE ENTITLED TO A COMPLETELY FILLED-IN COPY OF THE CONTRACT WHEN YOU SIGN IT. YOU HAVE THE FOLLOWING RIGHTS, AMONG OTHERS:

(a) TO PAY OFF IN ADVANCE THE FULL AMOUNT DUE AND OBTAIN A PARTIAL REFUND OF ANY UNEARNED FINANCE CHARGE;
(b) TO RENDER THE PROPERTY IF REPOSSESSED FOR A DEFAULT;
(c) TO REQUIRE, UNDER CERTAIN CONDITIONS, RESALE OF THE PROPERTY IF REPOSSESSED.

CIC Live Signature
KENNETH CASLER
08:33:20 AM 01-29-2016 (-05:00 GMT)
I, KENNETH CASLER, am signing to certify the authenticity of this document.

CIC Live Signature
RODNEY FAMA
08:33:30 AM 01-29-2016 (-05:00 GMT)
I, RODNEY FAMA, am signing this document to confirm that it has been received.

DEALER (SECURED PARTY)

**KENNETH CASLER**

**58 NORTH WATCHUNG DRIVE**

**HAWTHORNE, NJ  07506**

BUYER (DEBTOR)

**RODNEY FAMA**

**25 MANON BLVD.**

**MONROE, NJ  08831**

Dealer assigns for value all right, title and interest in this Agreement to **Snap-on Credit LLC**, subject to acceptance by Snap-on Credit LLC. By providing the information on the unpaid balance due under any prior Agreement, Credit Sale Contract or any Add-On Rider(s) above for this transaction, Snap-on Credit LLC consents to the rescheduling of payments under the Credit Sale Contract and any Add-On Rider(s) previously assigned to Snap-on Credit LLC.

### APPENDIX A
**"Property Description"**

INVOICE DATE   01/28/2013                    INVOICE NUMBER   32308                    DEBTOR NUMBER

Dealer                                       Buyer (Debtor)
**KENNETH CASLER**                           **RODNEY FAMA**

Invoice Subtotal      $   2995.00            Total R/A Transfer $   0.00              Shipping/Handling $   0.00

Tax Applied           $    209.65            Invoice Total      $   2995.00           S/H Tax           $   0.00

Total Including Tax $   3204.65

| Line | QTY | PRODUCT NO. SERIAL NO. | DESCRIPTION | EACH | COMMENTS | LC | LINE TOTAL |
|------|-----|-----------------------|-------------|------|----------|----|------------|
| 1 | 1 | EESC318 502suh-524749 | SOLUS ULTRA | 3895.00 | 0.00 | 0 | 3895.00 |
| 2 | -1 | CUSTOMERLOYA | | 600.00 | 0.00 | 8 | -600.00 |
| 3 | -1 | ECREBATE300 | | 300.00 | 0.00 | 8 | -300.00 |

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS

**A. NAME & PHONE OF CONTACT AT FILER (optional)**
Lien Solutions                    8003313282

**B. E-MAIL CONTACT AT FILER (optional)**
uccfilingreturn@wolterskluwer.com

**C. SEND ACKNOWLEDGMENT TO:  (Name and Address)**

Lien Solutions
P.O. Box 29071
Glendale, CA 91209-9071
US

State of New Jersey
Department of the Treasury
Division of Revenue & Enterprise Services
UCC Section
Filed

Filing Number:53105912

11/26/18 9:27:27

**THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY**

1. **DEBTOR'S NAME:**  Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| OR 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| FAMA | RODNEY | | | |
| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 25 MANOR BLVD | MONROE | NJ | 08831-8762 | US |

2. **DEBTOR'S NAME:**  Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| OR 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

3. **SECURED PARTY'S NAME** (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| Snap-on Credit LLC | | | | |
| OR 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 950 TECHNOLOGY WAY, SUITE 301 | LIBERTYVILLE | IL | 60048-5339 | US |

4. **COLLATERAL:** This financing statement covers the following collateral:
Purchase Money Security Interest in all tools and equipment purchased under any credit sale, installment sale, or similar contact from a Snap-on franchisee or other sales representative, or from Snap-on Tools Company LLC or from any affiliate thereof. In addition to the purchase money security interest granted in the collateral listed on the referenced contract, the collateral shall also include: all items of tools and equipment of Debtor, whether now owned and acquired from or hereafter acquired from a Snap-on franchisee or other sales representative; and any and all goods and equipment manufactured or distributed by Snap-on Tools Company LLC and any of its affiliates; or tools and equipment bearing the Snap-on Trademarks or logos; together with all proceeds (including insurance proceeds or claims), accessions, attachments, additions, substitutions, and replacements to and of such items (all the foregoing "Collateral").

5. Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions) ☐ being administered by a Decedent's Personal Representative

6a. Check only if applicable and check only one box:
☐ Public-Finance Transaction  ☐ Manufactured-Home Transaction  ☐ A Debtor is a Transmitting Utility

6b. Check only if applicable and check only one box:
☐ Agricultural Lien  ☐ Non-UCC Filing

7. **ALTERNATIVE DESIGNATION** (if applicable):  ☐ Lessee/Lessor  ☐ Consignee/Consignor  ☐ Seller/Buyer  ☐ Bailee/Bailor  ☐ Licensee/Licensor

8. OPTIONAL FILER REFERENCE DATA:
67479471

4/8/2020


United States Bankruptcy Court
402 East State Street
Trenton, NJ 08608

Re: Nathan Batts
Bankruptcy No.: 19-09151

To Whom It May Concern:

Enclosed please find the original Reaffirmation Agreement between the above referenced debtor and Snap-on Credit LLC.

Thank you for your prompt attention to this matter.

Sincerely,

/s/Heather Petro

Heather Petro – Legal Assistant
Snap-on Credit LLC

Encl: Agreement(s)